IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ELMER CAMPBELL, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION NO. C-1-01-527 |
| ) | |
| v. ) | JUDGE: BECKWITH |
| ) | MAGISTRATE JUDGE: HOGAN |
| INTERNATIONAL PAPER, ) | |
| SUN CAPITAL PARTNERS, INC., ) | |
| SMART PAPERS, LLC ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DEFENDANT SUN CAPITAL PARTNERS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Sun Capital Partners, Inc. ("Sun Capital Partners"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.2, hereby submits this Memorandum of Law in support of its Motion for Summary Judgment as to all of Plaintiffs' claims.

**INTRODUCTION**

Sun Capital Partners, a named Defendant in this lawsuit, is a private investment firm headquartered in Boca Raton, Florida. Sun Capital Partners has over 225 affiliated companies, some of which make investments and acquisitions. Affiliates of Sun Capital Partners have invested in diverse industries such as paper and packaging, filmed entertainment, food and beverages, automotive parts, consumer products, financial services, healthcare, media and communications, building products, telecommunications, technology, retailing and catalogs, and manufacturing. (SCP Exhibit 1(Couch Decl.)

¶ 5.)[1]

     One of the affiliates of Sun Capital Partners is Smart Papers, LLC ("Smart Papers"). Smart Papers owns and operates the Hamilton B Street Paper Mill in Hamilton, Ohio (the "Hamilton Mill"). Smart Papers employs hundreds of employees who manufacture premium paper products at the Hamilton Mill. Smart Papers has its own local management and Human Resources staff, who make all day-to-day employment decisions at the Hamilton Mill. Sun Capital Partners does not control or participate in the day-to-day operations or management of Smart Papers, exercises no control over Smart Papers' labor and employee relations, and does not make any day-to-day labor and employment decisions on behalf of Smart Papers. (SCP Exh. 1, ¶¶ 6-7.)

     On February 28, 2002, Sun Capital Partners filed a Motion to Dismiss Plaintiffs' Third Amended Complaint arguing that it is not a proper defendant in this case because, among other things, Plaintiffs never applied for employment with Sun Capital Partners, and therefore, it was impossible for Sun Capital Partners to have subjected Plaintiffs to any adverse employment action. Nevertheless, the Court gave Plaintiffs an opportunity to seek discovery as to whether there is a "single employer," "joint venture," and/or "agency" relationship between Sun Capital Partners and Smart Papers. (See March 25, 2003 Order at 8, DKT # 64.) The Court stated that although Plaintiffs' Third Amended Complaint is "not a model of clarity," its allegations, liberally construed and considered true for purposes of a motion to dismiss, suggest that "Sun Capital and Smart Papers are intertwined and/or that Sun Capital exercised control over the employment decisions of Smart Papers." (Id. at 8-9.) The Court noted, however, that "whether or not these

---

[1]     SPC Exh. refers to Sun Capital Partners' Exhibits attached to this Memorandum.

allegations can be proved" was a different question and not the issue on a motion to dismiss.  (Id. at 9.)

We are now at the summary judgment stage of this litigation, and the posture of this case is completely different.  Discovery has concluded.  Plaintiffs were given a full and fair opportunity to explore whether there is a single employer, joint employer, or agency relationship between Sun Capital Partners and Smart Papers, and "whether Sun Capital exercised control over the employment decisions of Smart Papers."  As set forth below, Sun Capital Partners respectfully submits that there is no credible evidence of any such relationship and that summary judgment should be granted to Sun Capital Partners as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

1.  Sun Capital Partners is a private investment firm headquartered in Boca Raton, Florida, with offices in New York City and Los Angeles.  Sun Capital Partners has over 225 affiliated companies, and certain of these affiliates make investments and acquisitions.  Generally, certain of these affiliates acquire and invest in companies that are underperforming, in bankruptcy, and/or experiencing other operational or financial challenges, with the expectation that the companies can be turned around to become economically viable stand-alone entities.  (SCP Exh. 1, ¶ 5.)

2.  Sun Premium Paper Partners, L.P. ("Sun Premium Paper Partners") is the Sun Capital Partners' affiliate that owns Smart Papers.  Sun Premium Paper Partners consists of over 30 partners (both individuals and entities) who own 100 percent of Sun Premium Paper Partners, which in turn own 100 percent of Smart Papers.  Sun Premium Paper Partners is a passive investment partnership.  Although it wholly owns Smart Papers, Sun

Premium Paper Partners has no employees and does not exercise any day-to-day control over the operation, management, or labor or employee relations of Smart Papers. (SCP Exh. 1, ¶ 6.)

3. Sun Capital Partners and Smart Papers have separate offices, employees, employee benefits, accounts, payroll, and employment policies. Sun Capital Partners plays no role in the day-to-day operation or management of Smart Papers, exercises no control over Smart Papers' labor and employee relations, and does not make any day-to-day employment decisions on behalf of Smart Papers. (SCP Exh. 1, ¶ 7.)

4. There is no interrelation of operations between Sun Capital Partners and Smart Papers. There are no common offices, no common record keeping, no shared bank accounts, no common payroll and accounting, no common equipment, and no interchange of equipment between Sun Capital Partners and Smart Papers. Sun Capital Partners is a private investment firm (with approximately 35 employees) with offices in Boca Raton, Florida (headquarters), New York City, and Los Angeles. In contrast, Smart Papers is a company that was formed on or about December 12, 2000 to acquire, own, and operate a paper mill in Hamilton, Ohio – the Hamilton B Street Mill. Smart Papers operates the Hamilton B Street Mill in Hamilton, Ohio and does not have any offices in Boca Raton, Florida. Smart Papers produces premium specialty paper, and employs several hundred employees in Hamilton, Ohio. Smart Papers is an independent affiliate of Sun Capital Partners and operates in a separate location, with separate employees, and in an entirely separate industry. Sun Capital Partners and Smart Papers are separate legal entities and, among other things, file separate tax returns. (SCP Exh. 1, ¶ 8.)

5. This is no centralized control of labor relations and personnel between Sun Capital Partners and Smart Papers. As noted above, Sun Capital Partners employs approximately 35 employees performing investment-related services in Boca Raton, New York City, and Los Angeles, and Smart Papers employs hundreds of employees performing paper manufacturing services in Hamilton, Ohio. Among other things, Smart Papers determined – and continues to determine – how many employees to hire at the Hamilton B Street Mill, whom should be offered jobs, what functions they will perform, and what their terms and conditions of employment shall be. Sun Capital Partners does not have or exercise any role in the day-to-day labor relations or employment policies of Smart Papers. Sun Capital Partners played no role in the decisions to hire or not hire any of the plaintiffs in this litigation, or whether to place them into certain positions. Those decisions were made exclusively by Smart Papers in Hamilton, Ohio. (SCP Exh. 1, ¶ 9.)

6. Smart Papers has separate independent management located in Hamilton, Ohio, including Chief Executive Officer Timothy Needham, Chief Operations Officer Daniel Maheu, Chief Financial Officer Bruce Silberman, and Vice President of Human Resources and General Counsel Milton Lewis. None of these individuals works for Sun Capital Partners. Smart Papers' management in Hamilton, Ohio, determined – and continues to determine – among other things, what products to produce, what level of production is appropriate, what equipment to purchase, how much and what type of inventory to maintain, which functions to perform in-house and which to subcontract, staffing levels, whether new hires, terminations, disciplines or layoffs are necessary, and all day-to-day operational, business, and employment decisions. (SCP Exh. 1, ¶ 10.)

7. Notwithstanding the above, four officers of Sun Capital Partners are on the Board of Managers of Smart Papers – namely, Marc Leder and Rodger Krouse (who own 100% of Sun Capital), Steve Liff (Principal and Vice President of Sun Capital Partners), and Clarence E. ("Bud") Terry (Managing Director of Sun Capital Partners). Messrs. Leder, Krouse, Liff, and Terry are also on the Board of several of the over 225 other companies affiliated with Sun Capital. These four non-employee members of the Board of Managers of Smart Papers perform the traditional functions of a Board of Directors such as financial review and policy oversight, but do not control or participate in the day-to-day operations or management of Smart Papers, and have no role in day-to-day labor and employment decisions. (SCP Exh. 1, ¶ 11.)

8. On or about January 11, 2001, Smart Papers entered into an Employment Agreement with Mary Rita Weissman to serve as Smart Papers' Acting Director of Human Resources. Ms. Weissman was hired to develop and implement plans for interviewing, evaluating, and hiring the initial workforce for Smart Papers at the Hamilton B Street Mill. Neither Mr. Liff nor any employee of Sun Capital Partners had any role in the decisions to hire or not hire any of the employees of Smart Papers, including the plaintiffs in this litigation. (SCP Exh. 1, ¶ 13.)

9. Smart Papers purchased the Hamilton B Street Mill on February 9, 2001. Shortly after the Closing, Smart Papers provided letters to former employees of International Paper, either offering or not offering them a job with Smart Papers. Although the letters were provided under Mr. Terry's name in his capacity as Chief Executive Officer of Smart Papers, Mr. Terry had no role in preparing the letters and was not involved in any way with the decisions to hire or not hire any of the employees of

Smart Papers. All the hiring decisions were made as a result of recommendations by Mary Rita Weissman (Acting Director of Human Resources for Smart Papers) to Dan Maheu. In addition, after the sale of the Hamilton Mill to Smart Papers, Mr. Terry played no role in the day-to-day operations or management of Smart Papers, including but not limited to labor and employee relations. On or about February 26, 2001 Smart Papers hired Timothy Needham as its CEO, and Mr. Terry's brief tenure as temporary CEO came to an end. (SCP Exh. 1, ¶ 15.)

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is an effective tool used "to secure the just, speedy and inexpensive determination of [an] action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). It is not "a disfavored procedural shortcut[.]" Id. "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and one on which that party will bear the burden of proof at trial." Id. at 322. In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party. Creech v. Ohio Casualty Ins. Corp., 944 F. Supp. 1347, 1352 (S.D. Ohio 1996). But, "[t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Id.

Summary judgment should be granted "where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A fact is considered material if, when applied to the substantive law, it affects the

outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party." Black v. Columbus Pub. Schools, 124 F. Supp.2d 550, 561 (S.D. Ohio 2000).

## ARGUMENT

I. **SUN CAPITAL PARTNERS DOES NOT HAVE A SINGLE EMPLOYER, JOINT ENTERPRISE, OR AGENCY RELATIONSHIP WITH SMART PAPERS**

Sun Capital Partners is not a proper Defendant in this case because Plaintiffs cannot establish a single employer, joint employer or agency relationship between Sun Capital Partners and Smart Papers, and Sun Capital Partners did not make any of the employment decisions at issue in this case.

   A. **SUN CAPITAL PARTNERS AND SMART PAPERS ARE NOT SINGLE EMPLOYERS**

To determine whether two or more companies should be regarded as a single/integrated employer, courts examine the following four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations and personnel, and (4) common ownership and financial control. See Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993-94 (6th Cir. 1997); Armbruster v. Quinn, 711 F.2d 1332, 1337-38 (6th Cir. 1983). No single factor is conclusive, and all the factors need not be met. Armbruster, 711 F.2d at 1337-38. Nevertheless, control over labor relations is the central concern. Id.

In this case, Plaintiffs cannot demonstrate a single employer relationship between Sun Capital Partners and Smart Papers. There is no interrelation of operations between

Sun Capital Partners and Smart Papers. Sun Capital Partners and Smart Papers have always operated in separate locations. Sun Capital Partners' headquarters are located in Boca Raton, Florida with offices in New York City and Los Angeles. (Statement of Facts "SOF" ¶ 4.) To the contrary, Smart Papers is located in Hamilton, Ohio. (Id.) See Angel Perez-Huerta v. Piedmont Health Care Corp., 1981 WL 292 at *7 (S.D.S.C. Aug. 13, 1981) (unpublished opinion attached hereto as SCP Exh. 2) (no interrelation of operations, where, among other things, two entities operated in separate physical locations and facilities.)

Sun Capital Partners and Smart Papers have completely different missions and purposes. See Angel Perez-Huerta, 1981 WL 292 at *5. Sun Capital Partners is a private investment firm with approximately 35 office workers. (SOF ¶¶ 4 & 5.) In contrast, Smart Papers is a paper manufacturing company with hundreds of production workers employed at the Hamilton B Street Paper Mill. (Id.)

There are no common offices, no common employees, no common record keeping, no shared bank accounts, no common payroll and accounting, no common equipment, and no interchange of equipment between Sun Capital Partners and Smart Papers. (SOF ¶ 4.); See Swallows, 128 F.3d 994 (insufficient evidence of interrelation of operations when two entities kept their own records and maintained separate bank accounts and offices.)

Smart Papers has independent management located in Hamilton, Ohio, consisting of Chief Executive Officer Timothy Needham, Chief Operations Officer Daniel Maheu, Chief Financial Officer Bruce Silberman, and Vice President of Human Resources and General Counsel Milton Lewis. (SOF ¶ 6.) None of these individuals works for Sun

Capital Partners.[2]  Smart Papers' management in Hamilton, Ohio, determined – and continues to determine – among other things, what products to produce, what level of production is appropriate, what equipment to purchase, how much and what type of inventory to maintain, which functions to perform in-house and which to subcontract, staffing levels, whether new hires, terminations, disciplines or layoffs are necessary, and all day-to-day operational, business, and employment decisions. (SOF ¶ 6.)

There is no centralized control of labor and employee relations between Sun Capital Partners and Smart Papers.  At all times relevant, Smart Papers determined – and continues to determine – how many employees to hire at the Hamilton Mill, whom should be offered jobs, what functions they will perform, and what their terms and conditions of employment shall be. (SOF ¶ 5.)  Sun Capital Partners does not have or exercise any role in the day-to-day labor relations or employment policies of Smart Papers, and does not have or exercise any role in hiring, firing, disciplining or determining the terms and conditions of employment for Smart Papers' employees.  (Id.) See e.g., Swallows, 128 F.3d at 995 (no common control of labor relations where only one entity "had the power to hire and fire employees.")

Sun Capital Partners played no role in the decisions to hire or not hire any of the plaintiffs in this litigation, or whether to place them into certain positions.  Those

---

[2]  Although four officers of Sun Capital Partners are on the Board of Managers of Smart Papers, they are on the Board of several of the 225 other companies affiliated with Sun Capital Partners.  These four non-employee members of the Board of Managers of Smart Papers perform traditional functions of a Board of Directors such as financial review and policy oversight, but do not control or participate in the day-to-day operations or management of Smart Papers, and have no role in day-to-day labor and employment decisions. (SOF ¶ 7.)  See Angel Perez-Huerta, 1981 WL 292 at *6 (no common management where CEO of defendant company had total responsibilities and control over operations except for the normal approval required by the board of directors.)

decisions were made exclusively by Smart Papers in Hamilton, Ohio. (SOF ¶ 5.) See e.g., Swallows, 128 F.3d at 995 (no evidence that defendant "controlled the decision to fire plaintiffs, or made any other final decision with regard to their employment") (citing, Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)) ("the critical question is '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination.'"))

Plaintiffs cannot establish the "common ownership and financial control" prong of the single employer test. The Sixth Circuit interprets this prong as an "inquiry into the legitimacy of the entities. If neither of these entities is a sham then the fourth test is not met." See EEOC v. Wooster Brush Co. Employees Relief Ass'n, 727 F.2d 566 (6th Cir. 1984). See also, Bielawski v. AMI, Inc., 870 F.Supp. 771, 775 (N.D. Ohio 1994) (no common ownership and financial control because two entities could not be considered "sham" even though individual who owned real estate management company also served as a general partner in some of the partnerships owning other companies.) Sun Capital Partners and Smart Papers each is its own separate legal identity and are separate entities for tax purposes. (SOF ¶ 8.) See Wooster Brush Co. Employees Relief Ass'n, 727 F.2d at 573 and n. 2; Bielawski, 870 F.Supp. at 775 (no common ownership where each entity retained separate legal identity.)

To the extent Plaintiffs argue that Messrs. Leder and Krouse own Sun Capital Partners and have a controlling interest in Sun Premium Paper Partners (the Sun Capital affiliate that owns Smart Papers), this is not enough to establish that the two entities are single employers. See e.g., Wilmot v. Forest City Auto Parts, 2000 WL 804616 at *3 (Ohio Ct. App. June 22, 2000) (unpublished opinion attached hereto as SPC Exh. 3) (no

single employer finding even though officers and directors of one company are also corporate offices and directors of other company's board, where there is no indication that first company was involved in hiring or firing of employees of second company.) Additionally, to the extent Plaintiffs argue that members of Sun Capital Partners are on the Board of Managers of Smart Papers, this too is not enough to establish that the two entities are single employers. Id.

To the extent Plaintiffs argue that Messrs. Liff and Terry were active in the formation and establishment of Smart Papers, this too is not enough to establish that the two entities are single employers. See Angel Perez-Huerta, 1981 WL 292 at *8 (no evidence of common management or centralized control of labor relations where two entities temporarily used same address and offices because these instances involved "only a relatively short period of time during the defendant's inception and start-up period.")

Finally, even if the Court were to find that there was "common ownership and financial control" between Sun Capital Partners and Smart Papers, the record evidence establishes that Sun Capital Partners had no role, and continues to have no role, in the day-to-day operations and labor relations of Smart Papers, and did not have or exercise any role making any of the employment decisions at issue in this case, including the decisions of whether or not to hire the Plaintiffs. See Angel Perez-Huerta, 1981 WL 292 at *7 ("Even in cases where there is common ownership or financial control . . . courts have refused to treat them as one employer where there is no 'actual' exercise of centralized control over labor relations matters.") (citing Hassell v. Harmon Foods, Inc., 454 F.2d 199 (6th Cir. 1972).); see also, Armbruster, 711 F.2d at 1337 (control over the elements of labor relations is the central concern.) Accordingly, Sun Capital Partners and

Smart Papers are not single employers and Plaintiffs cannot establish otherwise.

### B.  SUN CAPITAL PARTNERS AND SMART PAPERS ARE NOT JOINT EMPLOYERS

Plaintiffs cannot establish that Sun Capital Partners and Smart Papers are joint employers because they have no evidence to prove that Sun Capital Partners has "control over [Smart Papers] employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." Swallows, 128 F.3d at 993. The concept of "joint employers" is that two business entities are in fact separate but that they share or co-determine "those matters governing the essential terms and conditions of employment." Id. at n. 4.[3/] As the Sixth Circuit has stated, whether a joint employer relationship exists depends upon such factors as "the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, [and] issuance of operating instructions." See NLRB v. Centra, Inc., 954 F.2d 366, 370, n.2 (6th Cir. 1992) (citations omitted.)

As detailed above, Sun Capital Partners exercises no control over the day-to-day labor and employment decisions of Smart Papers. Smart Papers has its own Human Resources Department and used the Weissman Group as its Human Resources Department in hiring the initial workforce at the Hamilton B Street Mill. Moreover, Sun Capital does not supervise the day-to-day activities of Smart Papers' employee, has not promulgated any work rules for the Hamilton Mill, and does not exercise control over the hiring, firing, work assignments, or disciplining of the Smart Papers' workforce.

---

3/  The Sixth Circuit recognizes that the concepts of "single employer" and "joint employer" are often confused and are used interchangeably in courts' analyses. Swallows, 128 F.3d at 993, n.3.

Accordingly, Sun Capital Partners and Smart Papers are not joint employers and Plaintiffs cannot establish otherwise.

### C. SUN CAPITAL PARTNERS AND SMART PAPERS ARE NOT AGENTS OF ONE ANOTHER

Based on the same reasons as set forth above, Plaintiffs cannot establish that Sun Capital Partners and Smart Papers are agents of one another. "An agent is one who consents to act on behalf of another and subject to the other's control." Swallows, 128 F.3d at 996 (citing Restatement (Second) of Agency §1 (1958).) To be an agent within the meaning of the ADEA, one must be an agent with respect to employment practices. Id. It is clear that Smart Papers has not delegated its employment decisions to Sun Capital Partners, and therefore, Sun Capital Partners can not be construed as Smart Papers' agent. See e.g., Satterfield v. Tennessee, 295 F.3d 611, 617 (6th Cir. 2002) (an agent of an employer may be identified as an employer for the purposes of Civil Rights Act if the employer delegated employment decisions to the agent); Swallows, 128 F.3d at 996 (no evidence that employer delegated authority to make employment decisions on its behalf); York v. Tennessee Crushed Stone Ass'n, 684 F.2d 360, 362 (6th Cir. 1982) (an agent is generally a supervisory or managerial employee to whom employment decisions have been delegated by the employer.) Accordingly, Sun Capital Partners and Smart Papers are not agents of one another and Plaintiffs cannot establish otherwise.

### II. IN THE ALTERNATIVE, SUN CAPITAL DID NOT DISCRIMINATE AGAINST OR DEFAME THE PLAINTIFFS.

It is the position of Sun Capital Partners that it is not a proper defendant in this lawsuit and that summary judgment should be granted to it as a matter of law as to Plaintiffs' Fifth

Amended Complaint in its entirety.  In the alternative, should this Court find that Sun Capital Partners and Smart Papers somehow are single employers, joint employers or agents of one another—which they are not—Sun Capital Partners submits that it did not discriminate against or defame any of the Plaintiffs.  Among other things, none of the Plaintiffs have alleged in their complaint, or produced in discovery, any specific conduct or adverse employment action that Sun Capital Partners allegedly took against them.  To the extent Plaintiffs argue that Sun Capital Partners is jointly responsible for all of the conduct of Smart Papers, Sun Capital hereby adopts and incorporates by reference herein Smart Papers' Motion For Summary Judgment and Memorandum of Law in Support Thereof.

## CONCLUSION

For all of the foregoing reasons, Sun Capital Partners respectfully submits that its Motion for Summary Judgment should be granted in its entirety.

Respectfully Submitted,

<u>s/ Robert J. Hollingsworth by Stanley F.
Lechner per telephone authorization</u>

| | |
|---|---|
| Robert J. Hollingsworth (0024559) | |
| Trial Attorney | Stanley F. Lechner |
| CORS & BASSETT, LLC | Margery Sinder Friedman |
| 537 East Pete Rose Way | Laine S. Posel |
| Suite 400 | Of Counsel |
| Cincinnati, Ohio 45202 | MORGAN, LEWIS & BOCKIUS, LLP |
| Telephone: 513.852.8200 | 1111 Pennsylvania Avenue, N.W. |
| Facsimile:  513.852.8222 | Washington, DC  20004 |
| | Telephone:  202.739.3000 |
| | Facsimile:   202.739.3001 |
| | |
| | Counsel for Defendant |
| Dated:  September 30, 2003 | Sun Capital Partners, Inc. |

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Defendant Sun Capital Partners' Motion for Summary Judgment and Memorandum of Law in Support of Its Motion For Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randolph H. Freking, Esq.
George M. Reul, Jr., Esq.
Freking & Betz
215 East 9th Street, 5th Floor
Cincinnati, OH  45202

and I hereby certify that I have sent this document by First Class Mail, postage prepaid, on this 30th day of September, 2003, to the following non CM/ECF participants:

Counsel for Defendant International Paper Company:

W. Carter Younger, Esq.
Vincent Miraglia, Esq.
McGuire Woods LLP
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036

Michael A. Roberts, Esq.
Graydon Head & Ritchey LLP
1900 53rd Center
511 Walnut Street
Cincinnati, OH  45202

                                                          s/_____Laine S. Posel_____
                                                            Laine S. Posel