1981 WL 292                                                                                                                Page 1
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

United States District Court; D. South Carolina, Greenville Division.

**Dr. Angel Perez-Huerta, Plaintiff**
**v.**
**Piedmont Health Care Corporation, Defendant.**

**Civil Action No. 77-1208-3**

August 13, 1981

ANDERSON, Jr., D.J.

CATOE, JR., Magistrate.

*1 At this Court's direction, United States Magistrate William M. Catoe, Jr., filed a report and recommendation as to the defendant's motion for summary judgment in this case on August 13, 1981. The plaintiff has filed numerous exceptions to that report.

The record indicates that the plaintiff, proceeding *pro se,* filed this action alleging that the defendant unlawfully discriminated against him by refusing to hire him. The plaintiff is a physician who was born and educated in Mexico but is not licensed to practice medicine in the United States.

The plaintiff's first exception to the Magistrate's report is that the referral of his motions to a United States Magistrate is discriminatory and denies him due process. Clearly, 28 U.S.C. § 636(b) grants the District Court the authority to designate a Magistrate to hear and determine any pre trial motion. If the motion is for summary judgment, as in this case, the Court may designate the Magistrate to conduct hearings and submit proposed findings of fact.

The referral to the Magistrate in no way prejudiced the plaintiff's case. In this case, it served to benefit the *pro se* plaintiff as well as the Court. The final determination of the motion for summary judgment is made by the District Court after the plaintiff has been granted the opportunity to submit exceptions to the Magistrate's report. In this case, the Magistrate granted the plaintiff twenty (20) additional days to file his exceptions. The plaintiff has shown no prejudice by the referral of his case to the Magistrate and, therefore, his first exception is without merit.

The plaintiff's second exception is that the Magistrate erred in finding that he did not comply with Judge Perry's order of October 4, 1979, which granted him the right to petition the Court within twenty days for a supplemental hearing on the defendant's motion for summary judgment, stating in the petition the person or persons he wished to testify at the hearing. The plaintiff states that he would have submitted affidavits from Theo Walker Mitchell dated January 16, 1981, and Harold O. Hatcher dated May 18, 1979. This Court has reviewed the two affidavits and finds them to be totally irrelevant as to the motion for summary judgment.

The record clearly establishes that the plaintiff failed to comply with Judge Perry's order. The plaintiff contends that he requested the supplemental hearing in his motion of November 7, 1979, but that motion is entitled "Motion to Request Reconsideration of Court Order of October 31, 1979." In that motion, the plaintiff states:

In addition to hearing of the above cited Motions Plaintiff requests time to present new material to the Court.

The plaintiff contends that this paragraph complies with Judge Perry's order. The Court disagrees. The plaintiff does not identify the new material in the November 7, 1979, motion nor does he identify the new material in this motion. The plaintiff has not complied with Judge Perry's order and has failed to identify the alleged new material that would justify a supplemental hearing in this case. Therefore, the plaintiff's second exception is found to be without merit.

*2 The Court has thoroughly reviewed the remainder of the plaintiff's exceptions and finds them to be without merit.

After reviewing the entire record, this Court concludes that the Magistrate's finding as to the definition of "calendar year" is the only reasonable conclusion that could be reached. The Court also concludes that the Magistrate's findings as to the personnel count are correct and unrefuted by the evidence in the record.

Therefore, after reviewing all the exceptions filed by the plaintiff, this Court adopts the report and recommendation of the Magistrate filed August 13, 1981, and the defendant's motion for summary judgment is granted.

It is so Ordered.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1981 WL 292                                                                                                             Page 2
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

**Judgment**

This action came on for (hearing) before the Court, Honorable G. Ross Anderson, Jr., United States District Judge, presiding, and the issues having been duly (heard) and a decision having been duly rendered,

It is Ordered and Adjudged that summary judgment be entered for the defendant and the action is hereby dismissed.

**Report and Recommendation of Magistrate**

CATOE, JR., Magistrate: The plaintiff, proceeding *pro se,* brings this action claiming unlawful discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The defendant has moved to dismiss the complaint, asserting that the Court lacks jurisdiction over the subject matter.

The first issue to be addressed is the plaintiff's allegation that the Magistrate has no authority to make a recommendation on the defendant's motion for summary judgment. By Order of the Honorable Robert W. Hemphill, Senior United States District Judge, filed May 24, 1979, this Magistrate was designated to conduct evidentiary hearings in all pretrial motions filed by this *pro se* plaintiff in the above-entitled action and to submit proposed findings of fact and recommendations for disposition of said motions pursuant to Title 28, United States Code, Section 636(b)(1)(B). Judge Hemphill's Order is incorporated herein by reference.

Title 28, U.S.C. § 636(b)(1)(B) provides that:
. . . a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitioners challenging conditions of confinement. [FN1]

> FN1 Title 28, U.S.C. § 636(b)(1)(A) provides that ". . . a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for *summary judgment,* to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (a) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." (Emphasis added.)

**\*3** Pursuant to the Order of the Court, a hearing was held on the defendant's motion for summary judgment on May 24, 1979. [FN2] The plaintiff was present and testified at the hearing. In light of the fact that the plaintiff was proceeding *pro se* and to ensure absolute fairness, by Order filed October 4, 1979, the plaintiff was given an explanation of the summary judgment procedure and a copy of pertinent extracts of Rules 12 and 56 of the Federal Rules of Civil Procedure. In that Order, the plaintiff was granted twenty (20) days to file any additional material in opposition to the defendant's motion for summary judgment and further advised that if he failed to respond adequately the motion for summary judgment might be granted, thereby ending the case. The Order filed October 4, 1979, is incorporated herein by reference. [FN3]

> FN2 Transcripts of two excerpts of the hearing are included in the record. For purposes of this Report, the transcript filed with the Court on June 7, 1979, will be referred to as "Tr. 1", and the transcript filed August 29, 1979, will be referred to as "Tr. 2".

> FN3 Pursuant to 28 U.S.C. § 636(b)(1)(A), and Judge Hemphill's Order of May 24, 1979, the Magistrate was also authorized to rule on all pretrial motions in this case. By Orders filed March 16, March 19, and October 4, 1979, this Magistrate ruled on the plaintiff's motions for discovery. As the plaintiff's motions for discovery were alleged by the plaintiff to be directly related to his opposition to the defendant's motion for summary judgment, a final Order on the motion for summary judgment could not be granted until a final determination of the

Case 1:01-cv-00527-SSB-TSH     Document 103-4     Filed 09/30/2003     Page 3 of 8

1981 WL 292                                                                                          Page 3
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

plaintiff's objections to the Magistrate's Order was resolved in the District Court pursuant to § 636(b)(1)(C). By Order filed October 31, 1979, and incorporated herein by reference, the Honorable Matthew J. Perry, U.S. District Judge, affirmed the Orders of the Magistrate.

The Order of this Court filed October 4, 1979, also gave the plaintiff the right to petition the Court within twenty (20) days for a supplemental hearing as to the defendant's motion for summary judgment, stating the person or persons he wished to testify at the hearing. The record reflects that the plaintiff elected not to petition for a supplemental hearing. [FN4]

> FN4 At the hearing, the plaintiff objected to the proceedings because he was "surprised" and did not have the material to rebut the witness. However, the record indicates that the plaintiff had previously taken the deposition of the defendant's only witness, Martin Hadelman (Tr.1, p.3).

### Issues Presented

The crucial issue before the Court is whether the defendant is an "employer" covered by 42 U.S.C. § 2000e *et seq.,* giving the Court jurisdiction of this lawsuit. The answer to the jurisdictional question requires the resolution of two issues: (1) the meaning of "current or preceding calendar year" as that term is used in Title VII of the Civil Rights Act of 1964, as amended; (2) whether the defendant and the South Carolina Appalachian Health Council (SCAHC) are "joint employers" for the purposes of this lawsuit.

### The "Calendar Year" Issue

*4 The phrase "current or preceding calendar year" is not specifically defined in 42 U.S.C. 2000e. It is also noted that the 1972 amendments to Title VII effective March 24, 1973, reduced the requisite number of employees from 25 to 15.

The record reflects that the plaintiff filed an administrative charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC) in November, 1972, alleging that the last act of discrimination occurred on September 27, 1972. In support of the defendant's motion for summary judgment, the defendant submitted the affidavit of Martin A. Hadelman showing the number of employees on the defendant's payroll for each month of the calendar years 1971 and 1972. The plaintiff has not disputed the veracity of Mr. Hadelman's affidavit. Relying on this affidavit, the defendant moved the Court for summary judgment on the ground that it did not have the requisite number of employees (25) in the time period relevant to the lawsuit, 1971 or 1972, to be considered an "employer" under Title VII.

The plaintiff opposes the defendant's motion for summary judgment on the ground that the defendant has misinterpreted the statutory term "current or preceding calendar year," and thereby has misstated the relevant time period for determining if the defendant was an "employer" covered by Title VII. Relying on the cases of *Slack v. Havens,* [10 EPD P 10,343] 522 F.2d 1091, 11 FEP Cases 27 (9th Cir. 1975), and *Utley v. Marks,* [4 EPD P 7793] 4 FEP Cases 634 (S.D. GA. 1972), the plaintiff claims that the "calendar year" in the instant case runs from September 27, 1972 (the date of the last act of discrimination) to September 27, 1973. The defendant contends that the plaintiff's position is unsupported in law or in reason, and that a "calendar year" in Title VII cases runs from January 1 to December 31, inclusive.

An "employer" under Title VII in 1971 and 1972 was defined as a person who:
> . . . has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . .

42 U.S.C. § 2000e(b).

The commonly accepted meaning of the term "calendar year" for both attorneys and laymen is decidedly against the plaintiff's position. Black's Law Dictionary (Revised Fourth Edition, p. 255) defined "calendar year" as "the period from January 1 to December 31 inclusive". Webster's Third New International Dictionary (Unabridged Edition) likewise defines "calendar year" as "a period of a year beginning and ending with the dates which are conventionally accepted as marking the beginning and end of a numbered year".

The plaintiff erroneously relies of *Slack v. Havens,* [10 EPD P 10,343] 7 FEP Cases 885 (S.D.CA. 1973) to support his position. In that case, the Court held that:
> The term "calendar year" is not defined in the Civil Rights Act. However, it is commonly accepted to

Case 1:01-cv-00527-SSB-TSH    Document 103-4    Filed 09/30/2003    Page 4 of 8

1981 WL 292                                                                                                           Page 4
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

mean "three hundred and sixty-five days save leap year; from January 1st through December 31st inclusive." 86 C.J.S. Time § 9, p. 835-836; *United States v. Bussey,* 51 F.Supp. 996, 999 (S.D.Cal.C.D. 1943). It is similarly defined in the Internal Revenue Code of 1954, 26 U.S.C. § 441(d). The term "current year" is defined in Black's Law Dictionary (Fourth Edition) at p. 459; "ordinarily a calendar year in which the event under discussion took place." In the context of the instant case, then, the language "in the current . . . calendar year" means "in the period January 1 to December 31, inclusive, 1968." Read in this light, defendant Industries was clearly covered by Title VII since it concededly employed 50 or more persons throughout the period January 1 through December 31, 1968.

**\*5** The lower Court opinion was affirmed by the Court of Appeals for the Ninth Circuit. *Slack v. Havens, supra*.

After reviewing the case law and both parties' memoranda, it is clear that the only definition of "calendar year" is "the period from January 1 through December 31". It is also clear that this is a legal issue and not an issue of fact.

### The Joint Employer Issue

The burden of proving the jurisdiction of federal courts is on the party asserting such jurisdiction. See *Bowman v. White,* 388 F.2d 756 (4th Cir. 1968), *cert. denied,* 393 U.S. 891. Unless the Court accepts the plaintiff's interpretation of the term "calendar year", the plaintiff must demonstrate by objective facts that the SCAHC and the defendant are joint employers in order to support his assertion of the Court's jurisdiction over this suit. The record indicates that the plaintiff has not shown the crucial elements necessary for a finding that the defendant and the SCAHC are joint employers. To the contrary, the defendant has shown, in support of this motion, that the relevant facts support a totally different finding, *i.e.,* that the defendant and the SCAHC are *not* joint employers.

It is true that nominally separate entities may be treated as one entity for jurisdictional purposes under Title VII. The Court in *Baker v. Stuart Broadcasting Co.,* [14 EPD P 7775] 560 F.2d 389, 15 FEP Cases 394 (8th Cir. 1977) held that there are four factors relevant to deciding this issue: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. Of these four factors, the most important (indeed the critical) factor to finding that separate employers are to be treated as one, is the third factor, *i.e.,* centralized control of labor relations. "[T]he cases which have held integration to be appropriate have all placed heavy emphasis on the existence of centralized labor policy and control." *EEOC v. Cuzzens of Georgia,* 15 FEP Cases 1807, 1808 (N.D.Ga. 1977). *See also Williams v. New Orleans Steamship Assn.,* [4 EPD P 7705] 341 F.Supp. 613, 4 FEP Cases 666 (E.D.La. 1972). Each of these factors and the relevant evidence will be addressed separately.

The affidavits and testimony in the record establish that the defendant and the SCAHC have totally different missions and purposes. The defendant is a private, nonprofit eleemosynary institution that was founded for the purpose of delivering a comprehensive prepaid medical care plan to people in the piedmont area of South Carolina. It employs physicians, nurses, and other medically trained professionals to deliver direct health care to individuals. In common parlance, the defendant is known as a health maintenance organization.

On the other hand, the SCAHC is a health planning organization. It does not employ physicians, nurses, or any other trained professionals for the purpose of giving medical treatment to individuals. The SCAHC attempts to coordinate and plan for the health needs of the piedmont area of South Carolina on an area-wide basis. A major part of its operation is to review applications for federal funds from medical institutions in the piedmont area for the Governor of South Carolina. The SCAHC comments on and makes recommendations on these applications to the Governor and to the Appalachian Regional Commission (ARC), located in Washington, D.C. The ARC's mission is statutorily defined by Congress (see 40 U.S.C. App. § 1 *et seq*.). The SCAHC also provides technical assistance to applicants in planning and developing their applications for federal funds.

**\*6** The plaintiff has also failed to show that these two organizations share common management. To the contrary, during 1971 and 1972 Martin A. Hadelman was the chief executive officer of the defendant, and Robert A. Johnson was the chief executive officer of the SCAHC. Mr. Hadelman had total responsibility and control over the defendant's operations except for the normal approval required by the board of directors. Furthermore, except for a brief period during these organizations' existence of

Case 1:01-cv-00527-SSB-TSH   Document 103-4   Filed 09/30/2003   Page 5 of 8

1981 WL 292                                                                                                                                        Page 5
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

approximately one year, the two organizations have never had common members on their respective boards of directors at the same time. [FN5] This single brief period during which the two organizations shared one member of their boards of directors does not amount to the "common management" required to consolidate these organizations into one. *See EEOC v. Cuzzens of Georgia, supra.* It is also significant that the single board member's tenure on the respective boards was not until approximately four years after the plaintiff claims the defendant discriminated against him. The affidavits submitted by the defendant in support of its motion for summary judgment establish that neither the SCAHC nor any of its staff have ever exercised any control, direct or indirect, over the defendant's affairs.

> FN5 In 1976, Dr. Thomas Devenny, a member of the defendant's board, was also a member of the SCAHC's board, but only pursuant to the requirements of federal law [P.L. 93-641](#).

Centralized control of labor relations of both organizations is absolutely essential to a finding that these two organizations are one employer. *[EEOC v. Cuzzens of Georgia, supra](#); Williams v. New Orleans Steamship Co., supra*. The defendant's affidavits and testimony totally rebut the plaintiff's unsupported contention that the SCAHC had any organizational control over the defendant, including any control over the vital area of personnel matters.

Mr. Hadelman's uncontradicted testimony established that in selecting the administrative personnel for the defendant in 1972, he screened applicants, interviewed them, and selected them alone without any contact with Mr. Robert Johnson or any other official at SCAHC. Similarly, for medically-related positions, Mr. Hadelman and the defendant's medical director, Dr. Terrell Carver, screened applicants, interviewed them, and selected them jointly without any contact with Robert Johnson or any other official of SCAHC. Finally, in promulgating the defendant's personnel policies concerning hiring standards, pay levels, fringe benefits, promotions, discipline, assignments, transfers, and terminations, Mr. Hadelman and Dr. Carver worked either jointly or singly without any contact with Robert Johnson or any other official of SCAHC. All of this evidence was uncontradicted by any evidence presented by the plaintiff's affidavits or evidence during the hearing held on May 24, 1979.

The plaintiff raises two points: (1) that the defendant's address on its Certificate of Incorporation is the same as the SCAHC's address; and (2) that the plaintiff met with the defendant's officials at the SCAHC's offices in late 1971 and early 1972 apparently to interview for a position with the defendant.

**\*7** The record reflects that the defendant was organized in October, 1971. At its inception, the defendant did not have its own physical facilities and address. As explained in the defendant's affidavits, the SCAHC's address was stated on the defendant's Certificate of Incorporation solely for incorporation purposes. Until about February, 1972, the defendant's medical facilities and other offices were not ready for occupancy. Thus, the defendant's board of trustees was allowed to conduct interviews of applicants on a limited basis in the SCAHC's board room facilities, and to use the same facilities for its board meetings. This use of the SCAHC's board room facilities has on other occasions been extended to other civic organizations. The defendant's affidavits fully explain these facts and further explain that these two organizations have (except for this very brief period of a couple of months and for this limited purpose of interviewing applicants for its top management and medical positions) always operated in separate physical locations and facilities.

As noted previously, each of the defendant's affidavits expressly denies that the SCAHC or any of its staff, including Dr. Johnson, had any authority to make recommendations regarding the defendant's employment decisions (Tr.2, p.75).

The plaintiff claims that the SCAHC has financial control over the defendant. Outlined in the affidavits of Mr. Hadelman and Mr. Johnson is the only financial relationship between these two organizations. Consistent with the operation of both organizations, this relationship consists solely of the SCAHC's review of and comment on the defendant's applications for federal funds. The SCAHC itself has no control over the disbursement of such funds and no other financial control over the defendant. The defendant is only one of many health-related organizations whose applications for federal funds have been reviewed by the SCAHC.

Even in cases where there is common ownership or financial control, such as a single owner of several

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1981 WL 292                                                                                                   Page 6
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

chain stores or a parent-subsidiary corporate relationship between two entities, courts have refused to treat them as one employer where there is no "actual" exercise of centralized control over labor relations matters. *Hassell v. Harmon Foods, Inc.,* [4 EPD P 7622] 454 F.2d 199, 4 FEP Cases 263 (6th Cir. 1972); *Lottice v. Ingersoll-Rand Co.,* 14 FEP Cases 708 (N.D. Calif. 1977); *EEOC v. Cuzzens of Georgia, supra*; *Workman v. Ravenna Arsenal, Inc.,* [5 EPD P 8651] 6 FEP Cases 149 (N.D. Ohio 1973).

The plaintiff cannot rely on his conclusionary allegation that the defendant and the SCAHC should be considered "joint employers" for the purposes of this lawsuit to defeat the defendant's motion for summary judgment. *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185 (2nd Cir. 1978), *cert. denied,* 99 S.Ct. 181 (1978). The defendant has met its burden on this motion by showing that it is entitled to judgment as a matter of law on the "joint employer" issue. Specifically, the defendant has presented uncontradicted evidence in affidavits and testimony that it should not be considered a "joint employer" with the SCAHC by proving there was no (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, or (4) common ownership or financial control.

**\*8** The plaintiff offers no admissible evidence (other than his allegations) to contradict Mr. Hadelman's testimony and the defendant's affidavits. [FN6] The plaintiff's only evidence on the "joint employer" issue involved (a) the defendant's temporary use of the SCAHC's address on its Certificate of Incorporation, and (b) the plaintiff's interview with the defendant's officials in the SCAHC's offices in late 1971 and early 1972. This evidence is insufficient to raise a genuine issue with regard to the existence of either common management or centralized control of labor relations. It is uncontradicted that both of these factual instances involved only a relatively short period of time during the defendant's inception and start-up period. Furthermore, the uncontradicted evidence of Mr. Hadelman and the defendant's affidavits show that the SCAHC officials have never been involved in the defendant's employment screening, interviewing and hiring of both administrative and medically-related personnel; also, the SCAHC officials were never involved in promulgating any of the defendant's personnel policies such as pay, fringe benefits, promotions, discipline, etc. Therefore, in light of all the evidence, there is no genuine issue for trial on the joint employer issue and the defendant is entitled to judgment on this issue as a matter of law.

FN6 The plaintiff offered various documents into evidence, including but not limited to newspaper articles, which were not admissible as required by Rule 56(e). The defendant raised timely objections to admissibility of these items.

**Personnel Count**

Having resolved the issues of the calendar year and whether the defendant and the SCAHC are joint employers, the only remaining issue is whether the defendant employed 25 employees at any time for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

The defendant, through Mr. Hadelman, has introduced Defendant's Exhibit A (Tr.2, p.84), which lists only 23 employees for the period January 1, 1972, through December 31, 1972. The plaintiff alleges that the following persons should also be considered "employees" during this period:
  (1) Paul B. Anthony
  (2) An executive secretary
  (3) Servicemaster
  (4) janitorial services
  (5) Dr. George Maksim
  (6) Dr. G. Holmes
  (7) Dr. Fasil Zaman
  (8) Numerous medical specialists in the Greenville area.

As to Anthony, the defendant contends that he was a health care consultant only from October, 1971, to February, 1972, and not an employee (Tr.2, p.24-54). [FN7] The plaintiff offered no evidence to substantiate this allegation. The record reflects that Anthony was hired as a consultant to put the corporation together. It has been generally held that, consistent with common law agency principles, independent contractors are not employees for Title VII purposes. Anthony was not authorized to hire or fire personnel (Tr.2, p.26). He advised the defendant's Board of Directors and the Board carried out the administrative duties (Tr.2, p.83). The record clearly establishes that Anthony was a consultant only and not an employee. [FN8] He was paid a consulting fee on a per hour basis plus mileage (Tr.2, p.22) and received no fringe benefits. No taxes, insurance or Social Security were paid by the defendant for Anthony (Tr.2, pp. 65-66).

Case 1:01-cv-00527-SSB-TSH    Document 103-4    Filed 09/30/2003    Page 7 of 8

1981 WL 292                                                                                                                                Page 7
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

FN7 It is not refuted by the plaintiff that Anthony worked for the defendant only from October, 1971, to February, 1972, as Hadelman testified (Tr.2, p. 25). Therefore, Anthony would not qualify as one of the required 25 employees because he was not employed for a period of twenty or more calendar weeks during 1971 or during the period January 1, 1972, through December 31, 1972, when the defendant employed at least 24 other employees. The first of the 23 employees hired by the defendant was hired on February 7, 1972.

FN8 The traditional common law test for distinguishing between employees and independent contractors is the right to control reserved by the person for whom the work is being done, not only as to the result accomplished by the work but also as to the details and means by which the result is accomplished. *Smith v. Dutra Trucking,* [13 EPD P 11,460] 410 F.Supp. 813 (N.D. Calif. 1976).

**\*9** The testimony at the hearing in this case irrefutably establishes that the executive secretary the plaintiff refers to was Shirley Askew, whom the defendant admits was an employee in the calendar year 1972 (Tr.2, p.38). Ms. Askew was the first employee hired by the defendant in 1972.

The record also irrefutably establishes that Servicemaster was a contractual janitorial service which supplied janitorial services to the defendant (Tr.2, pp.37, 62, 64). The defendant had no authority over Servicemaster's personnel; therefore, neither Servicemaster nor "janitorial services" could be considered an employee under the Act.

As to Dr. George Maksim, the record reflects that Dr. Maksim accepted the defendant's offer of employment by letter at his earliest convenience on November 19, 1972, but did not actually begin working until January 1, 1973. He was not paid for any services for the year 1972 but was paid moving expenses in 1972. His employment records reflect his date of hire as January 1, 1973, at an annual salary of $35,000.

As to Dr. Fasil Q. Zaman, the record reveals that he accepted the defendant's offer of employment on November 19, 1972, but did not actually begin working with the defendant until after January 1, 1973.

As to G. Holmes, the defendant admits that he was a parttime employee in 1972.

As to the plaintiff's claim that numerous medical specialists in the Greenville area "worked" as employees of the defendant corporation, the record is absolutely clear that the defendant referred some patients to medical specialists in the Greenville area and these specialists were not employees of the defendant. [FN9] There was no agreement that a patient would be referred to any particular specialist (Tr.1, p.28). Prior to May 1, 1975, after a patient was treated by a specialist, it was the responsibility of the patient to pay the specialist directly. After May 1, 1975, for certain "prepaid members" of Piedmont Health Care, a portion of the fee was paid by the defendant (Tr.1, p.29). The record is clear that no specialists were paid directly by the defendant in 1972 and 1973 (Tr.1, p.31).

FN9 The April 30, 1979, affidavit of Charles Holly, executive director of the defendant since January, 1979, corroborates Hadelman's testimony concerning referrals to specialists.

**Conclusions and Recommendations**

In ruling on a motion for summary judgment, it is well settled that the moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to summary judgment as a matter of law. However, once a motion for summary judgment is made and properly support by affidavits, the opposing party may not rest upon the allegations or denials of his pleadings, but must reply to the movant's affidavits setting forth specific facts to show why there is a material issue for trial or, at the very least, stating reasonably why he cannot do so.

Other than the plaintiff's allegations and the affidavits of the plaintiff and his wife, the plaintiff has not addressed the jurisdictional issue. On the basis of the defendant's affidavits, it is clear that the defendant did not employ 25 or more employees for twenty or more calendar weeks either in 1972 or 1973; hence, the defendant is not an "employer" within the meaning of the Act.

1981 WL 292
27 Empl. Prac. Dec. P 32,302
**(Cite as: 1981 WL 292 (D.S.C.))**

Page 8

**\*10** Wherefore, it is recommended that the defendant's motion for summary judgment be granted.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works