**IN THE UNITED STATES DISTRICT COURT**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ELMER CAMPBELL, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. C-1-01-527 |
| | ) | |
| v. | ) | JUDGE: BECKWITH |
| | ) | MAGISTRATE JUDGE: HOGAN |
| INTERNATIONAL PAPER, | ) | |
| SUN CAPITAL PARTNERS, INC., | ) | |
| SMART PAPERS, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

# SP APPENDIX

# INDIVIDUAL PLAINTIFFS' APPENDIX

**Submitted by Defendant Smart Papers in Support
of Its Motion for Summary Judgment**

## THOMAS ABNER

**1.      Plaintiff Abner Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Abner because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Abner's former IP manager, and documented absenteeism and discipline issues.  (Weissman Dep. at 119-21.)  Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Abner for employment at Smart Papers.  (SPC 004a)  ("Q: Do you recommend this candidate? A: No.")  The Applicant Reference Check regarding Abner included the following negative comments regarding his work performance:

- "people stay away from him - lazy"  (SPC 004)
- "absenteeism an issue" (Id.)
- "lazy so people don't want to [work with] him" (Id.)
- "doesn't move fast enough to get hurt" (SPC 004a)
- "quiet-doesn't comm[unicate]" (Id.)
- "below average" (Id.)

Based on information gathered during the application process that suggested Abner had been disciplined at IP, Weissman also reviewed Abner's disciplinary records as part of the hiring process.  (Weissman Dep. at 120.)  Her review disclosed that Abner had been given a written warning on December 19, 2000, less than two months before the sale of the mill, for not meeting performance expectations.  (Abner Doc. 680026.)  Abner also had received a three day lay-off on September 10, 1999 because of his poor attendance record.[1/]  (Abner Doc. 680007.)  He

---

[1/]      Abner grieved the lay-off and won the grievance.  (Abner Dep. at 39.)  Abner does not deny though that he had an attendance problem and received discipline related to his absenteeism.  (Id. at 37: "Q: You've been given discipline for attendance?  A: Yeah, I was called in several times for absence."; 40: "Q: Have you received other discipline for attendance problems?  A: I may have had some others, yes.").

previously had been issued a written reprimand and an oral warning about his poor attendance.[2/]
(Abner Doc. 680011.)  Abner's unfavorable reference and his disciplinary and attendance
problems led the Weissman Group to rate Abner as an overall "RED."  (Weissman Dep. at 119.)
Smart Papers relied on these legitimate non-discriminatory reasons in making its employment
decision.  Abner cannot prove otherwise, or that these documented reasons for Smart Papers'
employment decision are a pretext for discrimination.  Indeed, James Parker, the former IP
supervisor who did not recommend Abner for employment, gave numerous positive references
for former IP employees, regardless of the applicant's age.  As the following chart demonstrates,
Mr. Parker gave favorable ("GREEN") or acceptable ("YELLOW") references to 8 out of 10
former IP employees who were older than, the same age, or not more than two years younger
than Abner.  (SP Exh. 4 ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------------------|-----------|
| ASHER, DANIEL L. | 56 | GREEN |
| BROWN, GEORGE D. | 56 | RED |
| BERTSCH, GORDON L. | 54 | GREEN |
| JOHNSON, DONALD J. | 53 | YELLOW |
| **ABNER, THOMAS K** | **52** | **RED** |
| CUPP, LARRY | 52 | GREEN |
| MILLER, LOUIS B | 51 | GREEN |
| SHAUCK, DAVID L | 51 | GREEN |
| VOLZ, FRANCIS A. (Pete) | 51 | RED |
| BAKER JR., CLARENCE G. | 50 | GREEN |
| MULLINS, PASCHAL R | 50 | YELLOW |

Accordingly, there are no genuine issues of material fact in dispute regarding Abner's age
discrimination claim, and summary judgment should be granted to Smart Papers as a matter of
law.

---

[2/]    Abner did not disclose any of his disciplinary history when asked to do so on his
application.  (Abner Dep. Ex. 8 – Smart Papers Application for Employment, at 2) ("Q:

**2.    Plaintiff Abner Has No Basis For His Defamation Claim.**

Similarly, Abner's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  During his deposition, he claimed that Smart Papers defamed him because of the unfavorable reference he received from Mr. Parker.  (Abner Dep. at 69.)  An unfavorable reference from Mr. Parker, while Mr. Parker was still employed by IP before the sale of the mill, cannot be considered a false statement made by anyone at Smart Papers.  Abner also testified that he suffered "defamation of [his] good name, [his] ability to be a good E & I technician" because Smart Papers did not hire him.  (Id. at 69.)  He failed to identify any statement made my anyone at Smart Papers regarding his "good name" or his abilities.  The true fact that he was not hired by Smart Papers cannot form the basis for a claim of defamation under Ohio law.  Abner's claim of defamation against Smart Papers fails as a matter of law.

---

Have you been disciplined, suspended, or terminated from employment within the last 10 years?  A: No.)

## DONNIE ADAMS

### 1.    Plaintiff Adams Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Smart Papers did not hire Plaintiff Adams because the Weissman Group gave him an overall "RED" rating based on his attendance record with IP. (Weissman Dep. at 101.)

As part of the employee application process, Weissman personally requested from IP the attendance records of all applicants for employment with Smart Papers and then reviewed them herself. (Id. at 102, 105.)  Employee attendance was a factor in assessing an applicant's suitability for employment with Smart Papers.  (Id. at 137.) Smart Papers reviewed an applicant's attendance record when it appeared in the records provided by IP that attendance was an issue.  (Id. at 137-38.)

Based upon her own review of Adams' attendance records, Weissman gave Adams a "RED" rating.  (Id. at 101-102.)  Smart Papers relied on this legitimate, non-discriminatory reason in making its employment decision.  Adams cannot prove otherwise, or that this reason for Smart Papers' employment decision is a pretext for age discrimination.  Among other things, Adams cannot dispute that, at a minimum, he missed in 2000 approximately six months of work; that in 1998, he missed approximately three months of work; and that in 1997, he missed approximately three months of work.   (Adams Dep. at 23, 25, 35-37.)

In addition as demonstrated below, Smart Papers made offers of employment to seven (7) candidates for the position that Adams formerly held with IP at the time of the sale.  Of these seven (7) candidates, four (4) were older than or the same age as Adams.  (SP Exh. 4 ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Position Offered |
|---|---|---|
| ARTHUR, RAY | 62 | PRODUCT ANALYST |
| JAMISON, HAROLD | 61 | PRODUCT ANALYST |
| SCHWEITZER, RONALD | 57 | PRODUCT ANALYST |
| **ADAMS, DONNIE** | **55** | --- |
| LEAK, GEORGE | 55 | PRODUCT ANALYST |
| FELTS, DENNIS | 52 | PRODUCT ANALYST |
| TIBBETS, MARSHA | 50 | PRODUCT ANALYST |
| BLANTON, JEFFREY | 43 | PRODUCT ANALYST |

Accordingly, there are no genuine issues of material fact in dispute regarding Adam's claim for age discrimination, and summary judgment should be granted to Smart Papers as a matter of law.

**2.      Plaintiff Adams Has No Basis For His Defamation Claim.**

Similarly, Adams' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Specifically, Adams testified that he knows of no alleged defamatory statements by any agent or representative of Smart Papers.  (Adams Dep. at 46) ("Q:  Do you know of any statements by someone from Smart Papers that you allege are defamatory?  A:  I know nothing about Smart Paper[s], who they stand for, what they represent.  I know nothing about Smart Paper[s].  I never worked for Smart Paper[s], so I don't know.  Q:  [A]re you aware of any statements that you allege are untrue about you . . . that were made  . . . by anybody, related to your failure to get hired by Smart Papers in February 2001?  A:  No.")  Accordingly, his defamation claim fails as a matter of law.

2

**RAYMOND ARTHUR**

     **1.**     **Plaintiff Arthur Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers <u>hired</u> Plaintiff Arthur for employment in a higher level position than the one he formerly held at IP.  (Arthur Dep. at 30) (acknowledging that the paper inspector job in the quality control department offered to him by Smart Papers was a higher level position in that department than the one he had held with IP.)  Nevertheless, Plaintiffs' Fifth Amended Complaint states that "Defendants failed to hire [Arthur] as a quality control person.  Although Smart offered him a position, it was a lower level position than his former position at IP."  (Complaint  ¶ 12.)  Plaintiffs' Fifth Amended Complaint also alleges that such "lower-level jobs were less desirable, demeaning, lower paid [sic], insulting, and/or more difficult physically."  (Complaint ¶ 100.)

Arthur testified that he was a raw material quality assurance ("RMQA") tester at the time of the sale of the mill, and that Smart Papers offered him a position as a paper inspector.  (Arthur Dep. 11-12, 22, 52.)  As Arthur admitted, the position Smart Papers offered him paid more than the position he had previously held with IP  (<u>Id.</u> at 29-30.)  His only reason for rejecting Smart Papers' offer was his own subjective belief that he was not qualified for the position.  (<u>Id.</u> at 26.) ("Q: Why did you turn down the offer of paper inspector?  A: I couldn't handle the job probably. I wasn't trained to handle the job.")  In addition, despite the allegations set forth in Paragraph 100 of the Fifth Amended Complaint, Arthur testified that the position offered him by Smart Papers was not physically demanding, demeaning, lower-paid, or insulting.  (<u>Id.</u> at 24-25, 27-30, 32-33.)  Arthur's allegations in this case are meritless, and cannot survive summary judgment.

**2.      Plaintiff Arthur Has No Basis For His Defamation Claim.**

Similarly, Arthur's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Arthur admitted that he knows of no false statements made about him by anyone, including false statements made by agents or employees of Smart Papers.  (Arthur Dep. at 43-45) (no personal knowledge of any statements that he believes to be false that allegedly harmed him); (Id. at 60) (no knowledge of any defamatory statements made by any employees or agents of Smart Papers.)  Accordingly, Arthur's claim for defamation fails as a matter of law.

## <u>CHARLES BAYLOR</u>

### 1.    **Plaintiff Baylor Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Baylor because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by his former IP manager.  (Weissman Dep. at 124-25.)  Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Baylor for employment with Smart Papers, and in response to the question "Would this person be eligible for employment again in your organization," simply characterized Baylor as "angry" "hostile," a "chip on [his] shoulder."[1/]  (SPC 00762.)  In addition, the Applicant Reference Check regarding Baylor included the following negative comments regarding his work performance:

- "has skills but chooses not to use them" (SPC00761)
- "does the min[imum] req[uired]" (<u>Id.</u>)
- "average at best" (<u>Id.</u>)
- regarding his productivity, "does the min[imum] man[agement] req[uires]" (<u>Id.</u>)
- "will not do anything unless, until told" (<u>Id.</u>)
- "no follow thru" [sic] (<u>Id.</u>)
- "not forthcoming" (<u>Id.</u>)
- "hides mistakes" (<u>Id.</u>)
- "considers behavioral expectations unimportant" (<u>Id.</u>)
- "sees co[mpany] and m[anagement] as enemy" (SPC00762)
- "disciplined" for safety concerns" (<u>Id.</u>)

These factors led the Weissman Group to rate Baylor as an overall "RED."  (Weissman Dep. at 124-25.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decision.  Baylor cannot prove otherwise, or that these documented reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Scott

---

1/    Baylor testified that these comments by his former IP Manager were a "fair statement" because, at the time Baylor worked for the IP Manager, Baylor acknowledged that he "had a point of being angry."  (Baylor Dep. at 87.)

Dalesandro—age 48 on February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Baylor for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Dalesendro gave favorable ("GREEN") references to 12 other former IP employees who were older than or the same age as Baylor.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| WRIGHT, WILLIAM L. | 59 | GREEN |
| BUELL, JAMES M. | 57 | GREEN |
| LEHMAN JR., CHARLES | 57 | GREEN |
| HELM, JIMMY | 56 | GREEN |
| PETERSON, JAMES A. | 56 | GREEN |
| SCHLOTTERBECK, RICHARD | 56 | GREEN |
| CAUDILL III, CHARLES R. | 53 | GREEN |
| ROBERTS, JOHNNY | 53 | GREEN |
| HUELSMAN, JOHN EARL | 52 | GREEN |
| MERCER, IRWIN A. | 52 | GREEN |
| BUTLER, SR., MICHAEL | 51 | GREEN |
| SUTTON, FRED L. | 51 | GREEN |
| **BAYLOR, CHARLES T.** | **50** | **RED** |

## 2.    Plaintiff Baylor Has No Basis For His Defamation Claim.

Similarly, Baylor's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, Baylor's defamation claim rests on: 1) some undated newspaper articles he did not retain that may have referred to the IP employees not hired by Smart Papers; and 2) comments by someone he cannot recall that he heard in a place he cannot remember that may have referred to some of the IP employees not hired by Smart Papers as "excess baggage." (Baylor Dep. at 48-51.)  Other than these vague recollections of newspaper articles and random comments, Baylor knows of no defamatory statements made by any agent or representative of Smart Papers.  (Id. at 58.)  Given this dearth of evidence, Baylor's claim fails as a matter of law.

**GOVAN BEGLEY**

1.    **Plaintiff Begley Has No Basis For His Age or Disability Discrimination Claims.**

There is undisputed evidence that Plaintiff Begley is claiming that Smart Papers discriminated against him on the basis of his age by hiring him.  (Begley Dep. at 30)  ("That's when I explained to [the Weissman Group interviewer] I didn't want a job with Smart Paper.  I wanted my severance package."); (Id. at 82) ("Q: In response to another question . . ., you testified one of the reasons you believe you were discriminated against by Smart Papers was because you were offered a job and therefore denied the opportunity to get a  severance package?  A:  Correct.  Q:  So the fact that Smart Papers offered employment you believe was discriminatory?  A:  Yes.  Q:  You are aware that there are plaintiffs in this case that are suing Smart Papers for age discrimination because they were not offered a job?  A:  Correct.  Q:  But in your case the fact that you were offered a job, Smart Papers also acted in a discriminatory way?  A:  Correct.")  These allegations cannot form the basis for an age or disability discrimination claim.  Nevertheless, Begley contends that although he was offered a job, it was a lower-level position than the one he had held with IP (Head Carton Packer) and that five substantially younger, less qualified people were offered higher level, better paying jobs than him.  (Begley Dep. at 58-59.)  In fact, Smart Papers hired only three head carton operators in the Involvo department[1] – Carl Laney (age 56), Greg Laney (age 46), and Jeff Kittner (age 46) –all of whom had performed the same job for IP and all of whom Begley admitted were as qualified as he.  (Id. at 83, 86); (SP Exh. 4 ¶¶ 2-5.)

---

[1]    The Involvo is a carton packing machine.  (Begley Dep. at 17.)  The department had two other positions Begley also had held during his employment, the on-stacker and the inward/outward table.  (Id.)  Begley was offered a position on the table.  (Id.)

Moreover, Begley acknowledged that his claim of discrimination does not turn on whether Smart Papers impermissibly took his age or alleged disability into account when they offered him another position in his department.  Rather, he alleges that his claim is because Smart Papers did not take his union seniority into account as he believed they should:

> Q.    [I]t says in the section [of Begley's EEOC affidavit] at the bottom marked 2, "The Company failed to hire me into the position that I had performed for many years and instead hired a substantially younger individual."  Do you see that?
>
> A.    Yes.
>
> Q.    What did you mean by the term "substantially"?
>
> A.    I had more seniority than the three substantial [sic] employees they hired, which was Carl Laney, Greg Laney, Jeff Kittnner.
>
> Q.    When you say "seniority," are you talking about mill seniority?
>
> A.    Mill seniority, department seniority.
>
> Q.    You're not talking about your age?  You're talking about seniority either in the mill or department-wise?
>
> A.    Correct.
>
> . . . . .
>
> Q.    So when you say "substantially younger," you're actually referring to the fact you had more mill or department seniority than Mr. Greg Laney, Mr. Carl Laney, or Mr. –
>
> A.    Kittner.
>
> Q.    Kittner, thank you.
>
> A.    Yes.

(Begley Dep. at 88-89.)  Because Begley cannot point to any evidence that Smart Papers discriminated against him on the basis of his age or alleged disability, and he himself believes that the three individuals hired are equally qualified as he was to fill the position, his claim fails as a matter of law.

In addition, as explained more fully in Section IV, Begley cannot even make out a *prima facie* case of disability discrimination because among other things; 1) he did not suffer an adverse employment action; 2) he is not disabled within the meaning of federal or state law; and 3) (with respect to his ADA claim) he failed to allege disability on his EEOC charge.

**2.      Plaintiff Begley Has No Basis For His Defamation Claim.**

Similarly, Begley's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Begley bases his claim for defamation on an article written by Smart Papers' Chief Operating Officer, Dan Maheu, that appeared in a local newspaper.  (Begley Dep. at 100.)  This article, however, is simply a reference to the Company's new workforce and expresses an opinion without any defamatory meaning.  (See Begley Dep. Ex. 8) (attached hereto.)  As such, his defamation claim fails as matter of law.

## THOMAS BENNETT

**1.    Plaintiff T. Bennett Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff T. Bennett because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by T. Bennett's former IP manager.  (Weissman Dep. at 132.) Significantly, T. Bennett's IP manager, in response to a question concerning whether he would he hire T. Bennett for his own company, stated "no way."  (SPC 080.)  The Applicant Reference Check regarding T. Bennett included the following negative comments regarding his work performance:

- "viewed as lazy – call him 'weasel'" (Id.)
- "has to be reminded [to wear] PPE" (Id.)
- "careless with regard to safety awareness" (Id.)
- "no ambition to learn new positions" (SPC 079)
- "needs lots of direction" (Id.)
- "tries to get out of work" (Id.)
- "constant complainer – blames problems on others" (Id.)
- "below average" productivity (Id.)[1]

These factors led the Weissman Group to rate T. Bennett as an overall "RED." (Weissman Dep. at 132.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  T. Bennett cannot prove otherwise, or that these documented reasons for Smart Papers' employment decisions are a pretext for age discrimination.  Indeed, Ed McCoy—age 53 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend T. Bennett for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. McCoy

---

[1]    Plaintiff Italiano agreed with this overview assessment of T. Bennett, remarking that T. Bennett "wouldn't do his job even though he was capable of doing it."  (Italiano Dep. at 85, 97-98).

gave favorable ("GREEN") or acceptable ("YELLOW") references to 18 former IP employees

who were older than or the same age as T. Bennett.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| RICHARD, GARRETT | 61 | GREEN |
| RICHARDS, DONALD D | 60 | GREEN |
| JOHNSON, DONALD F. | 59 | GREEN |
| PELSOR, RONALD L | 58 | YELLOW |
| FOX JR., JESSE C. | 57 | YELLOW |
| GLEASON, RANDALL L. | 55 | GREEN |
| HOBSON, JOE R. | 54 | YELLOW |
| CHEEK, TERRY | 53 | GREEN |
| CROUCHER, LLOYD W. | 52 | GREEN |
| JONES, GLADYS A. | 52 | YELLOW |
| SWEENEY, WILLIAM L. | 52 | GREEN |
| COX, GARY R. | 50 | GREEN |
| HALCOMB, BRIAN L. | 50 | GREEN |
| HESS, RICHARD JULIAN | 49 | GREEN |
| PIGG, JOHN | 49 | GREEN |
| BOWLING JR., PALMER | 48 | GREEN |
| **BENNETT, THOMAS D.** | **47** | **RED** |
| BOWLING, WALTER D. | 47 | GREEN |
| RILEY, FRANK L | 47 | GREEN |

## 2.    Plaintiff T. Bennett Has No Basis For His Defamation Claim.

Similarly, T. Bennett's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.

During his deposition, T. Bennett stated that, except for an undated newspaper article he does not

have a copy of that he vaguely recalls made some insinuations that "people who didn't get their

job back didn't pass the drug test," he knows of no statements by any agents or representatives of

Smart Papers that he alleges are defamatory.  (T. Bennett Dep. at 44-46, 80.)  As such, his

defamation claim fails as matter of law.

**<u>WAYNE BENNETT</u>**

**1.      Plaintiff Bennett Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Bennett because the Weissman Group gave him an overall "RED" rating based on both his unfavorable individual interview and the unfavorable reference provided to Smart Papers by Bennett's former IP supervisor.  (Weissman Dep. at 133.)  Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Bennett for employment at Smart Papers.  (SPC 094) ("Q: Do you recommend this candidate? A: Would not hire for his position.")  The Applicant Reference Check regarding Bennett included the following negative comments regarding his work performance:

- "skills signif[icantly] below expec[tation]" (SPC 093)
- "poor skills; unwilling to learn" (<u>Id.</u>)
- "discipline; doesn't care" (<u>Id.</u>)
- "has ability but doesn't use" (<u>Id.</u>)
- "just enough [productivity] to stay employed" (<u>Id.</u>)
- "doesn't follow through" (<u>Id.</u>)
- "does minimum" (<u>Id.</u>)
- "detracts from efforts" (<u>Id.</u>)
- "adversarial; [management & company] the enemy" (SPC 094)
- "works harder to get out of work then doing work" (<u>Id.</u>)
- "quality problems" (<u>Id.</u>)
- "victim mentality" (<u>Id.</u>)

These factors, coupled with Bennett's unfavorable interview, led the Weissman Group to rate Bennett as an overall "RED."  (Weissman Dep. at 133.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decision.  Bennett cannot prove otherwise, or that these documented reasons for its employment decision are a pretext for age discrimination.  Indeed, Bobby Caldwell—age 49 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Bennett for employment, gave positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr.

Caldwell gave favorable ("GREEN") references to the two other former IP employees who were older than or the same age as Bennett.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| LANE, JESSIE T | 60 | GREEN |
| **BENNETT, WAYNE M.** | **59** | **RED** |
| DEBOARD, DONALD N. | 59 | GREEN |

**2.    Plaintiff Bennett Has No Basis For His Defamation Claim.**

Similarly, Bennett's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he admitted during his deposition that he could not identify any false statements made by anyone at Smart Papers because he did not know anyone from Smart Papers. (Bennett Dep. at 67) ("Q: What statements were made about you by Smart Papers that you think were defamatory?  A: I don't know.  Q: Sir, earlier you testified that you'd never heard anyone at Smart Papers use the term excess baggage.  Is it my understanding you don't know anyone at Smart Papers?  A: No.")

**<u>EARL BLEVINS</u>**

**1.      Plaintiff Blevins Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Blevins because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that Blevins was recommended for hire by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at 134-135) (discussing Blevins: "He was recommended for hire and then disqualified for . . . failure to pass his drug screen."); <u>see also</u> (SPC 109) (results of positive drug test for cocaine.)

Blevins has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 14, 2001, as part of his application for employment with Smart Papers, Blevins signed the Smart Papers' Consent to Drug Screening.  (SPC 0122.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC." (<u>Id.</u>)[1]  Blevins admitted in his deposition that he snorted cocaine in December 2000, which was only a few weeks before his January 21, 2001 drug test.  (Blevins Dep. at 54.)  Blevins' drug test came back positive for cocaine.  (<u>Id.</u>; SPC 0109.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.

---

[1]      Plaintiff Blevins testified that he understood that if he tested positive for drugs he would not be considered for employment with Smart Papers.  (Blevins Dep. at 47.)

## 2.    Plaintiff Blevins Has No Basis For His Defamation Claim.

Similarly, Blevins' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he admitted during his deposition that he was not aware of any false statements made about him by Smart Papers.  (Blevins Dep. at 103-04) ("Q: Have you heard of any statement made by anyone at Smart Papers that said something false about you that you know of?  A: No.")

## LARRY BRANDENBURG

**1.    Plaintiff Brandenburg Has No Basis For His Age or Disability Discrimination Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Brandenburg because the Weissman Group gave him an overall "RED" rating based on both his unfavorable individual interview and the unfavorable reference provided to Smart Papers by Brandenburg's former IP supervisor.  (Weissman Dep. at 135.)  Significantly, in his interview, Brandenburg told the Weissman Group consultant that he did not want a job with Smart Papers.  (SPC 131-132) ("can't handle any more shift work—don't want a job with Smart Papers"); <u>see also</u> (Brandenburg Dep. at  66) ("Q: So you let the interviewer know that you weren't interested in a job? A: Yeah.")  Additionally, the IP manager who was interviewed by the Weissman Group did not recommend Brandenburg for employment at Smart Papers.  (SPC 130) ("Q: Do you recommend this candidate?  A: Would not offer him job.")  The Applicant Reference Check regarding Brandenburg included the following negative comments regarding his work performance:

- "meets expectations but performance poor" (SPC 129)
- "has skills; refuses to use them" (<u>Id.</u>)
- "poor quality; lack of focus" (<u>Id.</u>)
- "poor relationships with team members" (SPC 130)
- [thinks that] "company [is] the enemy" (<u>Id.</u>)
- [thinks that] "managers [are] all worthless" (<u>Id.</u>)
- "undependable attendance" (<u>Id.</u>)
- "poor in all categories" (<u>Id.</u>)

These factors, coupled with the fact that he told the Weissman Group that he did not want to work for Smart Papers, led the Weissman Group to rate Brandenburg as an overall "RED." (Weissman Dep. at 135.)  Smart Papers relied on these legitimate non-discriminatory reasons in

making its employment decisions.[1/]  Brandenburg cannot prove otherwise, or that these

documented reasons for its employment decision are a pretext for age discrimination.  Indeed,

Bobby Caldwell—age 49 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did

not recommend Brandenburg for employment, gave numerous positive references for former IP

employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Caldwell

gave favorable ("GREEN") or acceptable ("YELLOW") references to 6 of the 9 former IP

employees who were older than or the same age as Brandenburg.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|------|
| LANE, JESSIE T | 60 | GREEN |
| BENNETT, WAYNE M. | 59 | RED |
| DEBOARD, DONALD N. | 59 | GREEN |
| DOYLE, CLYDE D. | 58 | RED |
| HOWARD, RUSSELL | 58 | YELLOW |
| MCINTOSH, MARK | 58 | YELLOW |
| GUMM, JOHN | 56 | RED |
| SCHMIDLIN, ROY L | 56 | GREEN |
| **BRANDENBURG, LARRY A.** | **55** | **RED** |
| HOUSTON, ELDON E. | 55 | YELLOW |

**2.    Plaintiff Brandenburg Has No Basis For His Defamation Claim.**

Similarly, Brandenburg's defamation claim against Smart Papers cannot survive

summary judgment because he cannot satisfy any of the essential elements of defamation under

Ohio law.  Among other things, Brandenburg admitted during his deposition that he could not

---

[1/]    In addition to the fact that Brandenburg cannot rebut the legitimate non-discriminatory reasons detailed above for Smart Papers' employment decision, Brandenburg also cannot make out a *prima facie* case of disability discrimination under Ohio's anti-disability discrimination statute.  Specifically, as explained in Section IV of Smart Papers' Memorandum, Brandenburg: 1) does not meet the definition of "disability" under state law because he does not have a physical or mental impairment that substantially limits a major life activity; and 2) has produced no evidence that Smart Papers had any knowledge of his alleged disability.  For these independent reasons, his claim for disability discrimination should be dismissed as a matter of law.

attribute any false statements to individuals at Smart Papers because "I never knew anybody at Smart Papers."  (Brandenburg Dep. at 103; 166-167)

<u>**CARL BREWER**</u>

> **1.    Plaintiff Brewer Has No Basis For His Age or Disability**
> **Discrimination Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Brewer because the

Weissman Group gave him an overall  "RED" rating based on both his own unfavorable

interview and the unfavorable reference provided to Smart Papers by Brewer's former IP

manager.  (Weissman Dep. at 136.)  Significantly, the IP manager who was interviewed by the

Weissman Group did not recommend Brewer for hire.  (SPC 145) ("Q:  Do you recommend this

candidate?  A:  No – below [average].")  The Applicant Reference Check regarding Brewer

included the following negative comments regarding his work performance:

- "needs considerable instruction.  Makes little effort to add to his knowledge" (SPC 144)
- "no pride in his w[ork]" (<u>Id.</u>)
- "poor quality of work" (<u>Id.</u>)
- "does things to extreme to incur down time (<u>Id.</u>)
- "attendance at m[eeting]s is an issue" (<u>Id.</u>)
- "relief issues – doesn't come in  in the relief time" (<u>Id.</u>)
- "uncooperative – relief – bickering between op[erators] (SPC 145)
- "consistently misses safety m[eeting]s" (<u>Id.</u>)
- "troublemaker" (<u>Id.</u>)
- "integrity in question" (<u>Id.</u>)
- "he's uncooperative – he wants the opposite of whatever we present" (<u>Id.</u>)
- "if he's been trained on a drum and hasn't used it in a while he'll cry to get 2 w[eeks] training."  (<u>Id.</u>)

These factors led the Weissman Group to rate Brewer as an overall "RED."  (Weissman

Dep. at 136.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its

employment decisions.[1/]  Brewer cannot prove otherwise, or that these reasons for Smart Papers'

---

[1/]    In addition to the fact that Brewer cannot rebut the legitimate non-discriminatory reasons
detailed above for Smart Papers' employment decision, Brewer also cannot make out a
*prima facie* case of disability discrimination under either the ADA or Ohio's anti-
disability discrimination statute.  Specifically, as explained in Section IV of Smart
Papers' Memorandum, Brewer: 1) failed to exhaust his administrative remedies under the

employment decision are a pretext for age or disability discrimination. Indeed, Tom Weiser—age 44 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Brewer for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.[2/]  As the following chart demonstrates, Mr. Weiser gave favorable ("GREEN") or acceptable ("YELLOW") references to 5 former IP employees who were older than or approximately the same age as Brewer.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|------|
| MARCUM, HERBERT | 63 | GREEN |
| BAKER, ROGER E. | 60 | GREEN |
| WHITAKER, DONALD L. | 60 | YELLOW |
| BOGGS, JAMES MELVIN | 57 | GREEN |
| **BREWER, CARL** | **56** | **RED** |
| GLORE, LARRY N. | 55 | GREEN |

**2.     Plaintiff Brewer Has No Basis For His Defamation Claim.**

Similarly, Brewer's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Brewer's only basis for his defamation claim is the comments from his former IP manager reflected in his Applicant Reference Check.  (Brewer Dep. at 73-79.)  Because Brewer has not

---

ADA by failing to file a charge of disability discrimination with the EEOC; 2) does not meet the definition of "disability" under either federal or state law because he does not have a physical or mental impairment that substantially limits a major life activity; and 3) has produced no evidence that Smart Papers had any knowledge of his alleged disability. For these independent reasons, his claim for disability discrimination should be dismissed as a matter of law.

2/    Mr. Weiser testified that he conducted a group meeting with seven managers, coordinators, and supervisors to discuss the job performance of each of the employees who reported to them at the time that IP was providing references to Smart Papers. (Weiser Dep. at 37-40.)  The group came up with a consensus for each employee as to whether or not they would recommend the individual for employment with Smart Papers. Mr. Weiser was tasked with reporting the group consensus to Smart Papers.  (Id. at 43-44.)

identified any false or damaging statements allegedly made by Smart Papers, his claim fails as a matter of law.

## JAMES BROOKS

**1.    Plaintiff Brooks Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Brooks because the Weissman Group gave him an overall "RED" rating based on both his unfavorable individual interview and the unfavorable reference provided to Smart Papers by Brooks' former IP supervisor. (Weissman Dep. at 142-43.) Significantly, in response to the Weissman Group's question "[w]ould this person be eligible for employment again in your organization," the IP supervisor who was interviewed by the Weissman Group stated that Brooks was:

> Not self-motivated. Doesn't see what needs to be done. Just does what [is] in front of him. Get lots of calls from people saying he's not where he's supposed to be[.]

(SPC 160). In addition, Brooks' former supervisor did not recommend him for employment at Smart Papers. (Id.) The Applicant Reference Check regarding Brooks included the following negative comments regarding his work performance:

- "knows his job [--] doesn't go above and beyond" (SPC 159)
- "[d]oes min[imum] to keep his job" (Id.)
- "[n]ot where he's supposed to be. Doesn't go above and beyond" (Id.)
- "[e]ntitlement mindset" (SPC 160)
- regarding safety, "discipline" (Id.)[1]

These factors led the Weissman Group to rate Brooks as an overall "RED." (Weissman Dep. at 142-43.) Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions. Brooks cannot prove otherwise, or that these

---

[1]    Brooks in fact had been disciplined and received a three-day suspension in December 2000, just two months prior to the sale of the Mill, for failing to wear a seat belt while operating equipment. (Brooks Dep. at 16-17.) Although Brooks disagreed with the discipline given him, he admitted under oath that he in fact was not wearing a seat belt at the time of the incident. (Id.)

1

reasons for Smart Papers' employment decision are a pretext for age discrimination. Indeed, Rick Bernard—age 42 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Brooks for employment, gave positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Mr. Bernard gave favorable ("GREEN") references to the 3 other former IP employees who were older than or approximately the same age as Brooks. (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| WEBB, CARL D. | 61 | GREEN |
| WHICKER, KENNETH R. | 56 | GREEN |
| **BROOKS, JAMES S.** | **54** | **RED** |
| WILLIAMSON JR., ELLSWORTH C. | 52 | GREEN |

## 2. Plaintiff Brooks Has No Basis For His Defamation Claim.

Similarly, Brooks' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Brooks testified at his deposition that he did not know of any defamatory statements made about him by anyone from Smart Papers. (Brooks Dep. at 67-68) ("Q: Do you personally know of any defamatory statements made about you by International Papers or Smart Papers? A: None that I know of.") Because Brooks has provided no factual basis for his claim of defamation, it should be dismissed as a matter of law.

2

## <u>LARRY BROUGHTON</u>

1.      **Plaintiff Broughton Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Broughton because the Weissman Group gave him an overall "RED" rating based on both his unfavorable individual interview and the unfavorable reference provided to Smart Papers by Broughton's former IP manager.  (Weissman Dep. at 145-48.)  Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Broughton for employment at Smart Papers.  (SPC 175 ) ("Q: Do you recommend this candidate? A: No.")  The Applicant Reference Check regarding Broughton included the following negative comments regarding his work performance:

- "below average" in willingness and ability to learn (SPC 174)
- "doesn't stay on his job" (<u>Id.</u>)
- "has had some quality issues" (<u>Id.</u>)
- "interferes with [his co-workers] by going over and talking" (<u>Id.</u>)
- "instigator," "stirs things up," "argumentative" (SPC 175)
- "no ability to communicate" (<u>Id.</u>)

These factors, coupled with his unfavorable interview, led the Weissman Group to rate Broughton as an overall "RED."  (Weissman Dep. at 145-48.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Broughton cannot prove otherwise, or that these documented reasons for Smart Papers' employment decisions are a pretext for age discrimination.  Indeed, Tom Weiser—age 44 in February 2001 (SP Exh. 4 ¶ 6)— the former IP manager who did not recommend Broughton for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Weiser gave favorable ("GREEN") or acceptable ("YELLOW") references to 18 former IP employees who were older than or the same age as Broughton.  (<u>Id.</u> ¶¶ 2-5.)

1

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| MARCUM, HERBERT | 63 | GREEN |
| WHITAKER, DONALD L. | 60 | YELLOW |
| BAKER, ROGER E. | 60 | GREEN |
| GLORE, LARRY N. | 55 | GREEN |
| GABBARD, MELVENA | 53 | GREEN |
| LEONHARDT, JERRY F | 52 | GREEN |
| PONDER JR, ROBERT EUGENE | 52 | GREEN |
| SOUTHARD, LARRY S | 52 | GREEN |
| BROWNING, RONALD LEE | 52 | GREEN |
| CORNETTE, GARY D. | 49 | GREEN |
| RATLIFF, DAVID | 48 | GREEN |
| BAKER, DAVID L. | 48 | GREEN |
| GLANCY, WILLIAM ARTHUR | 47 | GREEN |
| WALTNER, DAVID T. | 47 | GREEN |
| BAKER, EDWARD H. | 47 | GREEN |
| COLLINS, RANDALL | 47 | GREEN |
| **BROUGHTON, LARRY** | **46** | **RED** |
| FOLLICK, ROBERT J. | 46 | GREEN |
| SMITH JR, DAVID E | 46 | GREEN |

**2.      Plaintiff Broughton Has No Basis For His Defamation Claim.**

Similarly, Broughton's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. During his deposition, Broughton stated that his defamation claim against Smart Papers is based upon a newspaper article where Smart Papers' Chief Operating Officer, Dan Maheu, is quoted as saying "smart people tend to do that!" (Broughton Dep. at 135.) This statement is not defamatory as a matter of law. The statement was made in reference to the new workforce and its ability to help Smart Papers succeed. It is a compliment to the existing workforce, using "smart" as a double entendre. The statement is one of opinion, not fact and has no defamatory meaning toward Broughton, and Broughton cannot show that it caused him any harm. In fact, Broughton himself admitted that the statement could be interpreted in many ways. (Broughton Dep. at 133) ("well, I mean, you know—you can take it any way"); (Id. at 135) ("it's according to how you take it.") As such, his defamation claim fails as matter of law.

2

**PHILLIP BULLIO**

**1.    Plaintiff Bullio Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Bullio because the

Weissman Group gave him an overall "RED" rating based on his unfavorable individual

interview, the unfavorable reference provided to Smart Papers by Bullio's former IP supervisor,

and the fact that he falsified his application.  (Weissman Dep. at 148-49.)  In response to the

question on Smart Papers' employment application "Have you been disciplined, suspended, or

terminated from employment within the last 10 years?", Bullio referenced discipline he received

in 2000, but did not note a three day suspension he received in 1998.  (See SPC 188); (Weissman

Dep. at 148) ("Aside from everything else, this man falsified his application, so he was

disqualified.")  Additionally, the IP supervisor who was interviewed by the Weissman Group did

not recommend Bullio for employment at Smart Papers.  (SPC 190) ("Q: Do you recommend

this candidate? A: No.")  The Applicant Reference Check regarding Bullio included the

following negative comments regarding his work performance:

- "most challenging; I've tried to discipline him; he turned over a jitney" (SPC 190)
- "if he's told to do it he'll do it, but that's it" (Id.)
- "crew leader may come to me to say Phil's not doing his work, i.e., when you finish. . . come to me when you're finished come back for more work [which] he doesn't" (Id.)
- "isn't great at [productivity] (Id.)
- "tried to cover up jitney incidents" (Id.)
- "co-workers aren't confident in his skills" (SPC 189)
- "can be argumentative—excuses for everything" (Id.)
- "there were safety issues with him before I supervised him; info[rmation] given to me from former supervisor" (Id.)

These factors, coupled with his unfavorable interview and the fact that he falsified his

application, led the Weissman Group to rate Bullio as an overall "RED."  (Weissman Dep. at

148-49.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its

employment decisions.  Bullio cannot prove otherwise, or that these reasons for Smart Papers'

employment decision are a pretext for age discrimination.  Indeed, Julie Smith, the former IP

supervisor who did not recommend Bullio for employment, gave positive references for former

IP employees, regardless of the applicant's age.  As the following chart demonstrates, Ms. Smith

only provided 7 references, and gave favorable ("GREEN") or acceptable ("YELLOW")

references to 4 of the 6 former IP employees who were substantially the same age or older than

Bullio. (SP Exh. 4 ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| JOHNSON, KENNETH OSCAR | 57 | GREEN |
| OGG, FREDERICK S | 54 | RED |
| SHACKLEFORD, ERNEST WAYNE | 54 | RED |
| YOUNG, CHARLES KENNETH | 54 | GREEN |
| **BULLIO, PHILIP M.** | **51** | **RED** |
| GLANCY, GARY L. | 47 | GREEN |
| NAPIER, GEORGE | 47 | GREEN |

     **2.**       **Plaintiff Bullio Has No Basis For His Defamation Claim.**

Similarly, Bullio's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.

Among other things, Bullio bases his defamation claim on an unidentified newspaper article that

he did not read, which suggested that "we must have been a bunch of lackadaisical drug addicts."

(Bullio Dep. at 71, 90-91.)  These unspecified and unsubstantiated comments do not constitute

defamation under Ohio law.

<u>**CHARLES CAMPBELL**</u>

      1.      **Plaintiff C. Campbell Has No Basis For His Age or Disability Discrimination Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff C. Campbell because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by his former IP manager.  (Weissman Dep. at 154.) Significantly, in response to the question "Would this person be eligible for employment again in your organization?", C. Campbell's supervisor at IP responded "no."  (SPC 206.)  The Applicant Reference Check regarding C. Campbell included the following negative comments regarding his work performance:

- "likes to be left in his area" (SPC 205)
- "no initiative to higher position" (<u>Id.</u>)
- "wants to be left alone" (<u>Id.</u>)
- "average quality" (<u>Id.</u>)
- "can't bring it all together" (<u>Id.</u>)
- "average [productivity]" (<u>Id.</u>)
- "has had conflicts with others" (SPC 206)
- "stirs up issues" (<u>Id.</u>)
- "team player issues" (<u>Id.</u>)

These factors led the Weissman Group to rate Plaintiff C. Campbell as an overall "RED."[1/]  (Weissman Dep. at 154.)  Smart Papers relied on these legitimate non-discriminatory

---

[1/]    As detailed in Section IV of Smart Papers' Memorandum, the Fifth Amended Complaint asserts a claim of disability on behalf of Plaintiff Campbell.  However, there are two Plaintiff Campbells in this lawsuit and Plaintiffs' counsel has yet to identify which one of the two Campbells is alleging disability discrimination.  Regardless of which Campbell is alleging disability discrimination, the claim is meritless as both Charles Campbell and Elmer Campbell have testified that they do not have a disability claim in this lawsuit. (Elmer Campbell Dep. at 66) ("Q:  You are not claiming that you were discriminated against on the basis of any disability?  A:  No."); (Charles Campbell Dep. at 54) (acknowledging no claims in this lawsuit except alleged age discrimination, defamation, and WARN Act violation.)

reasons in making its employment decisions.  C. Campbell cannot prove otherwise, or that these documented reasons for Smart Papers' employment decisions are a pretext for age discrimination. [2/]  Indeed, Jon Truster—age 43 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend C. Campbell for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Truster gave favorable ("GREEN") or acceptable ("YELLOW") references to 6 of the 7 former IP employees who were older than or the same age as C. Campbell.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| STEWART, ANITA L | 61 | GREEN |
| HOSIER, CHARLES T. | 60 | GREEN |
| WALKER, HENRY L. | 60 | GREEN |
| LOMAN, GEORGE E | 54 | GREEN |
| BARRETT, LUTHER A. | 51 | RED |
| **CAMPBELL, CHARLES B.** | **49** | **RED** |
| JEFFRIES, MICHAEL W. | 49 | YELLOW |
| ROBERTS, EDWARD | 49 | GREEN |

**2.      Plaintiff C. Campbell Has No Basis For His Defamation Claim.**

C. Campbell's defamation claim cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.  During his deposition, C. Campbell stated that his defamation claim was based on (1) a former co-worker telling him that Smart Papers' Chief Operating Officer, Dan Maheu, held meetings with Smart Papers'

---

[2/]      Plaintiff Charles Campbell is trying to get two bites at the apple.  In addition to claiming age discrimination in this lawsuit, he is a plaintiff in Angel et al. v. United Paperworkers International et al., Case No. C-1-01-467, pending before this court alleging age discrimination under Ohio law against Smart Papers for failing to be hired.  That case was filed approximately one month before the current lawsuit and Plaintiff C. Campbell's claims in Angel are still pending before this Court.

workforce and stated "we have all of the Smart people now," (C. Campbell Dep. at 49), and (2) from general conversations with unidentified persons, he heard that persons who worked for IP but were not hired by Smart Papers were known as "excess baggage."  (Id. at 92.)  These unspecified hearsay allegations, which have nothing to do with C. Campbell personally, do not constitute defamation under Ohio law.

## <u>ELMER CAMPBELL</u>

       **1.**      **Plaintiff E. Campbell Has No Basis For His Age or Disability Discrimination Claims.**

There is undisputed evidence that Smart Papers <u>hired</u> Plaintiff E. Campbell for the exact position that he formerly held at IP. (E. Campbell Dep. at 91) ("Q: So Smart Papers was offering you the position that you held with International Paper at the time the mill was sold, correct? A: I would say so.") Nevertheless, Plaintiffs' Fifth Amended Complaint states that "Defendants failed to hire [E. Campbell] back as a pulper finisher [sic]. Although Smart offered him a position, it was a lower level position than his former position at IP." (Complaint ¶ 10.) E. Campbell testified that he was a pulper furnisher at the time of the sale of the mill and that Smart Papers offered him a position as a pulper furnisher. (E. Campbell Dep. at 54, 59, 87-88.) In fact, in E. Campbell's sworn affidavit to the EEOC, he acknowledges that "[b]y February 11, 2001 I was informed that I was being offered my former position." Nonetheless, E. Campbell and his attorneys continue to prosecute his claims of age and disability discrimination.[1] E. Campbell's allegations are simply without merit.

In fact, E. Campbell testified that he did not want a job with Smart Papers. (Campbell Dep. at 109-110) ("Q: It was a well-known fact that you were interested in severance and did not

---

[1]    As detailed in Section IV of Smart Papers' Memorandum, the Fifth Amended Complaint asserts a claim of disability on behalf of Plaintiff Campbell. However, there are two Plaintiff Campbells in this lawsuit and Plaintiffs' counsel has yet to identify which one of the two Campbells is alleging disability discrimination. Regardless of which Campbell is alleging age discrimination, the claim is meritless as both Charles Campbell and Elmer Campbell have testified that they do not have a disability claim in this lawsuit. (Elmer Campbell Dep. at 66) ("Q: You are not claiming that you were discriminated against on the basis of any disability? A: No."); (Charles Campbell Dep. at 54) (acknowledging no claims in this lawsuit except alleged age discrimination, defamation, and WARN Act violation.)

wish to be hired back by Smart Papers, is that correct? A: I would say so, yes."); (Id. at 67) (would have retired if he could get his severance).  Accordingly, E. Campbell's allegations of age and disability discrimination are meritless and cannot survive summary judgment.

       **2.**       **Plaintiff E. Campbell Has No Basis For His Defamation Claim.**

       Similarly, E. Campbell's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. He has not identified any false statements made by any one at Smart Papers that he alleges are defamatory.  (E. Campbell Dep. at 69-71) (testifying that the basis for his defamation claim was something he read in his reference from his former IP supervisor and that Maheu may have made a "couple of comments" in the newspaper about "big changes" at the mill, but "I forget what they were actually all about.")  Accordingly, E. Campbell's claim for defamation is meritless, and summary judgment should be granted as a matter of law.

<u>**ROBERT DALE CHASTEEN**</u>

**1.     Plaintiff Chasteen Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Chasteen because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Chasteen's former IP manager.  (Weissman Dep. at 161-62.) Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Chasteen for employment at Smart Papers.  (SPC 250) ("Q: Do you recommend this candidate? A: No.")  The Applicant Reference Check regarding Chasteen included the following negative comments regarding his work performance:

- "hasn't worked to develop skills of machinist even though that's what he's been paid to do" (SPC 249)
- "will not go above and beyond" (<u>Id.</u>)
- "does not start on his own" (<u>Id.</u>)
- "he waits [until] the others get started on work and then just follows along"
- "below average re developing skills" (SPC 250)

These concerns led the Weissman Group to rate Chasteen as an overall "RED." (Weissman Dep. at 161-62.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Chasteen cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Ted Von Bargen—age 40 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Chasteen for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Von Bargen gave favorable ("GREEN") or acceptable ("YELLOW") references to 32 of the 38 former IP employees who were older than or the same age as Chasteen.  (<u>Id.</u> ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| JOHNS, JAMES E. | 62 | GREEN |
| BORN, JOSEPH O. | 61 | GREEN |
| RATLIFF, JACK R | 61 | GREEN |
| CONGLETON, DAVID LEE | 59 | GREEN |
| SPICER, DAVID LEE | 59 | GREEN |
| HICKS, PEARL | 57 | RED |
| SHACKELFORD, ARTHUR R | 57 | YELLOW |
| THOMAS, MICHAEL LEROY | 57 | GREEN |
| COMBS, JOSHUA E. | 56 | RED |
| HARRIS, DONALD L. | 56 | GREEN |
| JORDAN, JOHNNY | 56 | GREEN |
| STEWART, LEONARD | 55 | RED |
| COFFMAN, STANLEY R. | 54 | GREEN |
| HARPER, EDDIE L. | 54 | GREEN |
| CLARK, PATRICIA L. | 53 | GREEN |
| JONES, JERRY EDWARD | 53 | GREEN |
| CASTATOR, DALE E. | 52 | YELLOW |
| HITT, CHARLES H. | 52 | GREEN |
| JEFFRIES III, GORDON L. | 52 | GREEN |
| CECERE JR., PETER LOUIS | 51 | GREEN |
| HOUSTON, PAUL A. | 51 | GREEN |
| MARTIN, C. D. | 51 | YELLOW |
| TAULBEE, EVERETT D. | 51 | RED |
| TAYLOR, JIMMY LOU | 51 | GREEN |
| BAKER, JIMMY E. | 50 | GREEN |
| HOWELL, ROY DEAN | 50 | GREEN |
| PAXTON, DOUGLAS G | 50 | RED |
| REECE, PATRICK ALLEN | 50 | GREEN |
| SCHOELLHAMER, JOHN F | 50 | RED |
| SCHRADIN, JOHN A | 50 | GREEN |
| SHEARER, DALE RICHARD | 50 | GREEN |
| BUCHANAN, RONALD L. | 49 | GREEN |
| COMBS, LARRY | 49 | GREEN |
| ESTRIDGE, GLEN | 49 | GREEN |
| GADD, STEPHEN | 49 | GREEN |
| GLAAB, DAVID E. | 49 | GREEN |
| HOFFMAN, MARVIN P. | 49 | GREEN |
| **CHASTEEN, ROBERT D.** | **48** | **RED** |
| ERVIN, GARY L. | 48 | GREEN |

**2.       Plaintiff Chasteen Has No Basis For His Defamation Claim.**

Similarly, Chasteen's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he admitted during his deposition that he did not know of any false statement made by anyone at Smart Papers  (Chasteen Dep. at 121) ("Q: Besides this article that we've already discussed, is there anyone from Smart Papers that you believe has made a statement, a statement that hurt you? A: Not to my knowledge.")

Chasteen testified that he did not know who made the statements in the referenced newspaper article.  Chasteen's defamation claim against Smart Papers fails as a matter of law.

## JAMES CLEAR, JR.

**1.     Plaintiff Clear Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Clear because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that Clear was recommended for hire by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at 162) (discussing Clear: "He was recommended, but he didn't pass his drug screen."); see also (SPC 265) (results of positive drug test for marijuana); (Clear Dep. at 108) (believes that he would have gotten an offer of employment with Smart Papers if he had passed his drug test.)

Clear has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination. On January 10, 2001, as part of his application for employment with Smart Papers, Clear signed the Smart Papers' Consent to Drug Screening.  (SPC 273.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.)  Clear admitted in his deposition that he smoked marijuana on "New Year's Eve," which was only a few weeks before his January 22, 2001 drug test.  (Clear Dep. at 58.) Clear's drug test came back positive for marijuana, and he was not surprised by the results of this test.  (Id.; SPC 265).  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Clear's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

     **2.**     **Plaintiff Clear Has No Basis For His Defamation Claim.**

Similarly, Clear's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he admitted in his deposition that he does not know of anything false that anyone at Smart Papers has said about him. (Clear Dep. at 113) ("Q: Is it your contention that somebody from Smart Papers has defamed you, has said something false to hurt you? A: I'm not certain if they have or haven't. Q: Okay. Nothing that you know of? A: Personally, no.") Clear's defamation claim fails as a matter of law.

**<u>JERRY COMBS</u>**

1.    **Plaintiff Jerry Combs Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Jerry Combs because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Combs' former IP manager.  (Weissman Dep. at 163.) Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Combs for employment at Smart Papers and told the consultant that "Jerry has made it known that he is not interested in being offered a job –my heart is not in it."  (SPC 283.)[1]  The Applicant Reference Check regarding Jerry Combs included the following negative comments regarding his work performance:

- "not accepting of change" (SPC 282)
- "argues about change just to argue" (<u>Id.</u>)
- "finds things to stop us from speeding up" (<u>Id.</u>)
- "does not react well to feed[back]" (<u>Id.</u>)

These factors led the Weissman Group to rate Jerry Combs as an overall "RED." (Weissman Dep. at 163.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Combs cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination.  Indeed, Tom Weiser—age 44 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Combs for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Weiser gave favorable ("GREEN") or acceptable ("YELLOW") references to 9 former IP employees

---

[1]    Plaintiff Brewer also testified that Jerry Combs had told him "that he didn't want to work at Smart Papers, that he had asked to be let go."  (Brewer Dep. at 93.)

who were substantially the same age or older as Combs.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| MARCUM, HERBERT | 63 | GREEN |
| BAKER, ROGER E. | 60 | GREEN |
| WHITAKER, DONALD L. | 60 | YELLOW |
| GLORE, LARRY N. | 55 | GREEN |
| **COMBS, JERRY L.** | **54** | **RED** |
| GABBARD, MELVENA | 53 | GREEN |
| BROWNING, RONALD LEE | 52 | GREEN |
| LEONHARDT, JERRY F | 52 | GREEN |
| PONDER JR, ROBERT EUGENE | 52 | GREEN |
| SOUTHARD, LARRY S | 52 | GREEN |

**2.      Plaintiff Jerry Combs Has No Basis For His Defamation Claim.**

Similarly, Jerry Combs' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, when asked about his defamation claims during his deposition, he admitted that "I don't know anybody at Smart Papers."  (Jerry Combs Dep. at 76.)

**JOSHUA COMBS**

**1.     Plaintiff Joshua Combs Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Joshua Combs because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by his former IP manager.  (Weissman Dep. at 164-65.) Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Joshua Combs for employment with Smart Papers.  (SPC 302.)  In addition, the Applicant Reference Check regarding Joshua Combs included the following negative comments regarding his work performance:

- "doesn't meet the requirements [for the position of mechanical technician with Smart Papers]"  (SPC 301)
- "needs considerable instruction." (Id.)
- "makes little effort to add to his knowledge" (Id.)
- "will point out issues, but not participate in decision/resolution" (Id.)
- "works [overtime], but see no additional work results" (Id.)
- "productivity is not there – slow worker" (Id.)
- "not a very effective communicator" (SPC 302)
- "housekeeping poor[,] undependable attendance" (Id.)
- "poor in all categories" (Id.)

These factors led the Weissman Group to rate Joshua Combs as an overall "RED." (Weissman Dep. at 114-65.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Joshua Combs cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination.  Indeed, Ted Von Bargen—age 40 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Joshua Combs for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Von Bargen gave favorable ("GREEN") or acceptable ("YELLOW") references to 9 of the 11 former IP employees who were older than or the same age as Joshua Combs.  (Id. ¶¶ 2-5.)

1

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| JOHNS, JAMES E. | 62 | GREEN |
| BORN, JOSEPH O. | 61 | GREEN |
| RATLIFF, JACK R | 61 | GREEN |
| CONGLETON, DAVID LEE | 59 | GREEN |
| SPICER, DAVID LEE | 59 | GREEN |
| HICKS, PEARL | 57 | RED |
| SHACKELFORD, ARTHUR R | 57 | YELLOW |
| THOMAS, MICHAEL LEROY | 57 | GREEN |
| **COMBS, JOSHUA E.** | **56** | **RED** |
| HARRIS, DONALD L. | 56 | GREEN |
| JORDAN, JOHNNY | 56 | GREEN |

**2.     Plaintiff Joshua Combs Has No Basis For His Defamation Claim.**

Similarly, Joshua Combs' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.  Joshua Combs bases his claim for defamation on: 1) two unidentified newspaper articles that he believes referred in some general way to the Smart Papers' hiring process; 2) an undated help wanted advertisement that Smart Papers ran in some local paper after it purchased the Mill; and 3) vague rumors he heard from other unidentified people (but not any agents or representatives of Smart Papers) referring to others as "excess baggage" or "garbage."  (Joshua Combs Dep. at 76-78, 123-26, 129.)  These vague and unsubstantiated allegations do not constitute defamation under Ohio law.

## JOHN CRESS

**1.     Plaintiff Cress Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Cress because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Cress' former IP manager.  (Weissman Dep. at 174.)  Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Cress for employment at Smart Papers.  (SPC 317) ("Q: Do you recommend this candidate? A: No.")  The Applicant Reference Check regarding Cress included the following negative comments regarding his work performance:

- "not a quick learner" (SPC 316)
- "hard time picking up basics in electricity" (<u>Id.</u>)
- "poor trouble shooting skills" (<u>Id.</u>)
- "not a self-starter" (<u>Id.</u>)
- "low confidence in himself" (<u>Id.</u>)
- "find not on the job—visiting" (<u>Id.</u>)
- "below average" (SPC 317)
- "lack of knowledge and skills" (<u>Id.</u>)
- "poor—acts like he knows it—doesn't" (<u>Id.</u>)

These factors led the Weissman Group to rate Cress as an overall "RED."  (Weissman Dep. at 174.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Cress cannot prove otherwise, or that these documented reasons for its employment decision are a pretext for age discrimination.  Indeed, Rich Dunn, the former IP manager who did not recommend Cress for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Dunn gave favorable ("GREEN") references to 11 of the 14 former IP employees who were substantially the same age or older as Cress.  (SP Exh. 4 ¶¶ 2-5.)

1

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| BRASHEAR, DALE F. | 63 | GREEN |
| DURBIN, PATRICK STEPHEN | 56 | RED |
| RAQUET, MICHAEL L | 55 | YELLOW |
| O'CONNOR, CHARLES R | 54 | RED |
| ALLEN, LEONARD EARL | 53 | GREEN |
| NAPIER, HUBERT O | 53 | YELLOW |
| BRADFORD JR., LOUIS | 52 | YELLOW |
| COLBORN, PAUL D. | 52 | GREEN |
| **CRESS, JOHN M.** | **52** | **RED** |
| WHEELER, DAVID W. | 52 | GREEN |
| CATHERS, A.B. | 51 | GREEN |
| EATON, MENDOL CLEVE | 51 | RED |
| STUMPF, DOUGLAS C | 51 | GREEN |
| BUTLER, STEPHEN D. | 50 | GREEN |
| EPPERSON, GREGORY RAYMOND | 50 | GREEN |

**2.     Plaintiff Cress Has No Basis For His Defamation Claim.**

Similarly, Cress' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he admitted during his deposition that his defamation claim against Smart Papers is based upon the reference provided by his IP manager to Smart Papers.  (Cress Dep. at 84.)  As a result, Cress has not identified any statements made by a person from Smart Papers to support his claim of defamation.  (Id.) (testifying that Dunn worked for IP at the time of the alleged defamatory statements.)  Cress' claim of defamation fails as a matter of law.

2

**TERRY DUNCAN**

### 1. Plaintiff Duncan Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Smart Papers did not hire Plaintiff Duncan because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Duncan's former IP supervisor. (Weissman Dep. at 175.) Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Duncan for employment at Smart Papers. (SPC 331) ("Q: Do you recommend this candidate? A: Would not hire for his position.") The Applicant Reference Check regarding Duncan included the following negative comments regarding his work performance:

- "may intentionally slow the process so he doesn't have to work so hard" (SPC 330)
- "interferes with others" (Id.)
- "team members unhappy with his lack of commitment as shown in slowing process" (SPC 331)
- "counterproductive" (Id.)

These concerns led the Weissman Group to rate Duncan as an overall "RED." (Weissman Dep. at 175.) Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decision. Duncan cannot prove otherwise, or that these documented reasons for Smart Papers' employment decision are a pretext for discrimination. Indeed, Bobby Caldwell—age 49 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Duncan for employment, gave numerous positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Mr. Caldwell gave favorable ("GREEN") or acceptable ("YELLOW") references to 11 former IP employees who were older than or the same age as Duncan. (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| LANE, JESSIE T | 60 | GREEN |
| DEBOARD, DONALD N. | 59 | GREEN |
| HOWARD, RUSSELL | 58 | YELLOW |
| MCINTOSH, MARK | 58 | YELLOW |
| SCHMIDLIN, ROY L | 56 | GREEN |
| HOUSTON, ELDON E. | 55 | YELLOW |
| BURKE, MILLARD R. | 54 | GREEN |
| MILLER JR, HARGIS | 53 | GREEN |
| EIKELBERGER, GERALD L. | 52 | YELLOW |
| FLICK, JERRY | 51 | GREEN |
| CHITWOOD, CONEY D. | 50 | GREEN |
| **DUNCAN, TERRY W.** | **50** | **RED** |

## 2.    Plaintiff Duncan Has No Basis For His Defamation Claim.

Similarly, Duncan's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  When asked during his deposition whether anyone from Smart Papers has said anything false about him, Duncan responded that he believed that Mr. Caldwell—his former IP supervisor—provided a false reference.  (Duncan Dep. at 97.)  Mr. Caldwell was not working for Smart Papers when he provided the employment reference.  (Id.)  Duncan testified that other than Mr. Caldwell he "did not know" whether anyone had said anything false about him.  (Id. at 98.)  Duncan's claim of defamation against Smart Papers fails as a matter of law.

## PATRICK S. DURBIN

### 1.    Plaintiff Durbin Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Smart Papers did not hire Plaintiff Durbin because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by his former IP supervisor.  (Weissman Dep. at 175-77.)  Significantly, Durbin's former supervisor did not recommend Durbin for hire.  (SPC 345) ("Q: Do you recommend this candidate?  A: No.")  The Applicant Reference Check regarding Durbin included the following negative comments regarding his work performance:

- "not very knowledgeable of current job – doesn't like new tasks" (SPC 344)
- "plays game of 'I didn't understand'" (Id.)
- "doesn't take responsibility or accountability" (Id.)
- productivity "very poor" (Id.)
- "below average" employee (SPC 345)
- "skill level" is particularly troublesome (Id.)
- "doesn't communicate well – plays games" (Id.)
- "doubt integrity" (Id.)

Most significantly, Durbin's former supervisor indicated that Durbin needed constant reminders about his "PPE", or personal protective equipment, and characterized Durbin's disregard of safety rules as a "threat to himself."  (Id.)  Mary Rita Weissman, in reviewing Durbin's application, disqualified Durbin on these grounds.  (Weissman Dep. at 176) ("[W]hen we took the reference, he was disqualified on safety because he didn't wear his PPE and as the supervisor described it, he was a threat to himself and others in the workplace.")  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.

Durbin cannot prove otherwise, or that these documented reasons for Smart Papers' employment decisions are a pretext for age discrimination.  Indeed, Rich Dunn, the former IP manager who did not recommend Durbin for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr.

1

Dunn gave favorable ("GREEN") or acceptable ("YELLOW") references to 7 of the 10 former

IP employees who were older or only slightly younger than Durbin. (SP Exh. 4 ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|------|
| BRASHEAR, DALE F. | 63 | GREEN |
| **DURBIN, PATRICK STEPHEN** | **56** | **RED** |
| RAQUET, MICHAEL L | 55 | YELLOW |
| O'CONNOR, CHARLES R | 54 | RED |
| ALLEN, LEONARD EARL | 53 | GREEN |
| NAPIER, HUBERT O | 53 | YELLOW |
| BRADFORD JR., LOUIS | 52 | YELLOW |
| COLBORN, PAUL D. | 52 | GREEN |
| CRESS, JOHN M. | 52 | RED |
| WHEELER, DAVID W. | 52 | GREEN |

In addition, as Durbin himself acknowledged, his older brother, Andy Durbin, who was

59 in February 2001, applied for and obtained a job with Smart Papers and continues to work

there until this day. (Durbin Dep. at 116.) Accordingly, there are no genuine issues of material

fact in dispute regarding Durbin's claim for age discrimination, and summary judgment should

be granted to Smart Papers as a matter of law.

**2.    Plaintiff Durbin Has No Basis For His Defamation Claim.**

Durbin's defamation claim cannot survive summary judgment because he cannot satisfy

any of the essential elements of defamation under Ohio law. During his deposition, Durbin

testified that his defamation claim was based, in part, on a newspaper article he himself never

read. (Durbin Dep. at 89) ("Q: Did you personally read the newspaper article or did you just

hear about it? A: I think my wife showed it to me. Q: So you did not in fact read it for

yourself. A: No, I didn't read it, she told me it was there and I thought, well, that's nice.").

Other than this alleged article, Durbin admitted that he knew of no statements made about him

personally that he has alleged are defamatory. (Id. at 109.) Accordingly, his claim for

defamation fails as a matter of law.

2

<u>**MENDOL EATON**</u>

**1.      Plaintiff Eaton Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Eaton because the

Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided

to Smart Papers by Eaton's former IP manager.  (Weissman Dep. at 177.)  Significantly, the IP

manager who was interviewed by the Weissman Group did not recommend Eaton for

employment at Smart Papers.  (SPC 361) ("Q: Do you recommend this candidate? A: No.")  The

Applicant Reference Check regarding Eaton included the following negative comments

regarding his work performance:

- "retention may not be as good"  (SPC 360)
- "needs to be told what to do everyday" (<u>Id.</u>)
- "lets things get to him emotionally, will make himself physically ill" (<u>Id.</u>)
- "problems, not dependable" (<u>Id.</u>)

These concerns led the Weissman Group to rate Eaton as an overall "RED."  (Weissman

Dep. at 178-79.)  Smart Papers relied on these legitimate non-discriminatory reasons in making

its employment decision.  Eaton cannot prove otherwise, or that these documented reasons for

Smart Papers' employment decision are a pretext for discrimination.  Indeed, Richard Dunn, the

former IP manager who did not recommend Eaton for employment, gave numerous positive

references for former IP employees, regardless of the applicant's age.  As the following chart

demonstrates, Mr. Dunn gave favorable ("GREEN") or acceptable ("YELLOW") references to 9

out of 12 former IP employees who were older than or the same age as Eaton.  (SP Exh. 4 ¶¶ 2-

5.)

| Name | Age | Reference |
|------|-----|-----------|
| BRASHEAR, DALE F. | 63 | GREEN |
| DURBIN, PATRICK STEPHEN | 56 | RED |
| RAQUET, MICHAEL L | 55 | YELLOW |
| O'CONNOR, CHARLES R | 54 | RED |
| ALLEN, LEONARD EARL | 53 | GREEN |
| NAPIER, HUBERT O | 53 | YELLOW |
| CRESS, JOHN M. | 52 | RED |
| BRADFORD JR., LOUIS | 52 | YELLOW |
| COLBORN, PAUL D. | 52 | GREEN |
| WHEELER, DAVID W. | 52 | GREEN |
| CATHERS, A.B. | 51 | GREEN |
| STUMPF, DOUGLAS C | 51 | GREEN |
| **EATON, MENDOL CLEVE** | **51** | **RED** |

## 2.    Plaintiff Eaton Has No Basis For His Defamation Claim.

Similarly, Eaton's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  At first during his deposition, he said that he did not know whether anyone from Smart Papers had made any defamatory statements or not.  (Eaton Dep. at 95.)  He later said that Smart Papers defamed him by not hiring him because he "think[s] it was implied" that he was not "good enough to the job that [he] had been doing for all of the time before."  (Id. at 96.)  A potential implication arising from the true fact that he was not hired by Smart Papers cannot form the basis for a claim of defamation under Ohio law.  Eaton's claim of defamation against Smart Papers fails as a matter of law.

**KENNETH FISHER**

As set forth in Section I of this memorandum, Smart Papers maintains that Plaintiff Fisher should be dismissed from this action pursuant to Federal Rule 37 for failing to respond to Defendants' discovery requests and failing to attend his noticed deposition. As a result, Fisher's age discrimination and defamation claims should be dismissed as Fisher has produced no evidence to support either of his claims.

Nevertheless, there is undisputed evidence that Smart Papers did not hire Plaintiff Fisher because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Fisher's former IP supervisor. (Weissman Dep. at 179.) Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Fisher for employment at Smart Papers. (SPC 376) ("Q: Do you recommend this candidate? A: No.") The Applicant Reference Check regarding Fisher included the following negative comments regarding his work performance:

- "doesn't tend to clean up area until I have to say something to him" (SPC 375)
- "bare minimum to make sure machines don't shut down" (Id.)
- "problems not solutions" (Id.)
- "lots of excuses of why we can't instead of how can we make it better" (Id.)
- "do as little as he can to get by—nothing extra" (Id.)
- "stir[s] things up" (SPC 376)
- "coworker came to me with a threat he had heard said that Ken told me" (Id.)
- "investigated threat Ken had fabricated the whole thing; asked to come in to discuss it-no" (Id.)
- "poor taste in jokes" (Id.)
- "trust issue" (Id.)
- "instigator" (Id.)

These factors led the Weissman Group to rate Fisher as an overall "RED." Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions. Fisher cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination. Indeed, Bill Croucher—age 40 in February 2001 (SP Exh. 4

1

¶ 6)—the former IP supervisor who did not recommend Fisher for employment, gave positive references for other former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Croucher gave favorable ("GREEN") or acceptable ("YELLOW") references to 3 of the 4 former IP employees who were older than, the same age as, or one year younger than, Fisher.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| KLOCK JR., WALTER E. | 60 | GREEN |
| BAKER, JOHN M. | 55 | GREEN |
| **FISHER, KENNETH C.** | **55** | **RED** |
| MELLOTT, CORDELL W | 54 | GREEN |

Accordingly, Fisher's claims for age discrimination cannot survive and summary judgment should be granted to Smart Papers as a matter of law.  In addition, he has presented no evidence to support his defamation claim.

2

## <u>TERRELL FOWLER</u>

**1.    Plaintiff Fowler Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Fowler because the Weissman Group gave him an overall "RED" rating based on both his unfavorable individual interview and the unfavorable reference provided to Smart Papers by Fowler's former IP supervisor. (Weissman Dep. at 183.) Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Fowler for employment at Smart Papers. (SPC 175 ) ("Q: Do you recommend this candidate? A: Not first choice; can do job, but serious red flags.") The Applicant Reference Check regarding Fowler included the following negative comments regarding his work performance:

- "inflexible" (SPC 390)
- "change can be difficult" (<u>Id.</u>)
- "belligerent" (<u>Id.</u>)
- "doesn't like the good workers because they make him look bad" (<u>Id.</u>)
- "minimal amount [of productivity]" (<u>Id.</u>)
- "center of friction" (SPC 391)
- "not well liked" (<u>Id.</u>)
- "attitude-belligerent;" "very argumentative and adversarial" (<u>Id.</u>)
- "doesn't like to move into new areas so will start complaining about other areas" (<u>Id.</u>)

These factors led the Weissman Group to rate Fowler as an overall "RED." (Weissman Dep. at 183.) Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions. Fowler cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination. Indeed, Art Schutte—age 47 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Fowler for employment, gave numerous positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Mr. Schutte gave favorable ("GREEN") or acceptable ("YELLOW") references to 10 of the 10 former IP employees who were older than or

the same age as Fowler.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| HOLLAND, ALFRED D. | 62 | YELLOW |
| BEGLEY, GOVAN F. | 59 | YELLOW |
| BIHR, FRANCIS J. | 59 | YELLOW |
| PARKS, SANDRA S | 58 | YELLOW |
| LANEY, CARL J | 56 | GREEN |
| WEAVER, ANTHONY | 55 | GREEN |
| HUNT, JOHN D. | 54 | GREEN |
| THEISS, THOMAS W. | 54 | YELLOW |
| TURNER, MAY | 54 | GREEN |
| **FOWLER, TERRELL K.** | **52** | **RED** |
| RICE, JOHN H | 52 | GREEN |

**2.    Plaintiff Fowler Has No Basis For His Defamation Claim.**

In addition, Fowler's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Not only could Fowler not identify any false and defamatory statements published by Smart Papers which caused him injury, he admitted in his deposition that "I wouldn't have known who the people were from Smart Papers."  (Fowler Dep. at 102.)

## CHARLES W. FREEMAN

**1.     Plaintiff Freeman Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Freeman because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Freeman's former IP manager. (Weissman Dep. at 184-85.) Significantly, in response to the question "Would this person be eligible for employment again in your organization," Freeman's supervisor at IP responded "no" and also recommended that Freeman not be hired. (SPC 407) ("Q: Do you recommend this candidate? A: No – below [average.]") The Applicant Reference Check regarding Freeman included the following negative comments regarding his work performance:

- "quality issues – bad paper – excessive downtime" (SPC 406)
- "wastes time" (Id.)
- "just by his nature . . . instigates conflict and problems . . . has difficulty getting along with others . . . uncooperative" (SPC 407)
- "always someone else's fault" (Id.)
- "cussed out super" and "sent home" (Id.)[1]

During his deposition, Freeman acknowledged that he had been disciplined in the past for quality problems, (Freeman Dep. at 105), that he might be a somewhat slower worker than other employees at the Mill, (Id.), and that he had been disciplined for insubordination and cussing out his supervisor. (Id. at 28-30.) Freeman also admitted that, during this incident with his supervisor, he had made derogatory comments about management, and that his union

---

[1]     Plaintiff Rodgers, who worked the next shift after Freeman, testified that Freeman also never properly stocked his machine at the end of his shift. (Rodgers Dep. at 111.) As a result, Rodgers would not stock his machine at the end of his shift, leading to disputes between himself and Plaintiff Gregory. (Id. at 111-12.)

recommended that he not grieve the suspension he incurred for his behavior.  (Id. at 30.)[2]

These concerns and incidents led the Weissman Group to rate Freeman as an overall "RED."  (Weissman Dep. at 184-85.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Freeman cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Tom Weiser—age 44 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Freeman for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Weiser gave favorable ("GREEN") or acceptable ("YELLOW") references to 17 former IP employees who were older than or approximately the same age as Freeman.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
| --- | --- | --- |
| MARCUM, HERBERT | 63 | GREEN |
| BAKER, ROGER E. | 60 | GREEN |
| WHITAKER, DONALD L. | 60 | YELLOW |
| BOGGS, JAMES MELVIN | 57 | GREEN |
| GLORE, LARRY N. | 55 | GREEN |
| GABBARD, MELVENA | 53 | GREEN |
| BROWINING, RONALD LEE | 52 | GREEN |
| LEONHARDT, JERRY F | 52 | GREEN |
| PONDER JR, ROBERT EUGENE | 52 | GREEN |
| SOUTHARD, LARRY S | 52 | GREEN |
| CORNETTE, GARY D. | 49 | GREEN |
| BAKER, DAVID L. | 48 | GREEN |
| **FREEMAN, CHARLES W.** | **48** | **RED** |
| RATLIFF, DAVID | 48 | GREEN |
| BAKER, EDWARD H. | 47 | GREEN |
| COLLINS, RANDALL | 47 | GREEN |

---

2/    Freeman's former IP manager also relayed to Smart Papers during the interview process an incident involving Freeman and a Smart Papers' representative conducting a tour of the Mill prior to the purchase.  According to the Applicant Reference Check, "new CEO from Smart Paper coming through mill[.]  Charlie said what am I going to make and Mr. Terry misunderstood[,] thought he asked how much Mr. Terry is making[.]  Mr. T asked if that was what he said[.]  Charlie said I don't care what you're gonna make[,] I want to know what I'm gonna make."  (SPC 407.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------------------|-----------|
| GLANCY, WILLIAM ARTHUR | 47 | GREEN |
| WALTNER, DAVID T. | 47 | GREEN |

### 2.    Plaintiff Freeman Has No Basis For His Defamation Claim.

Similarly, Freeman's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, Freeman admitted during his deposition that he did not know of any alleged defamatory statements made by any agents or representatives of Smart Papers. (Freeman Dep. at 120) ("Q: [D]o you know if Smart Papers made any statements about you that you allege are defamatory?  A: I don't know what statements they would – they made.  I don't know.") Because there exists no factual basis for his claim, it fails as a matter of law.

**HENRY GARDNER**

### 1.    Plaintiff Gardner Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Smart Papers did not hire Plaintiff Gardner because the Weissman Group gave him an overall "RED" rating based on both his unfavorable individual interview and the unfavorable reference provided to Smart Papers by Gardner's former IP manager.  (Weissman Dep. at 185-86.)  Significantly, the IP manager who was interviewed by the Weissman Group indicated that he would not hire Gardner if he owned his company, and did not recommend Gardner for employment at Smart Papers.  (SPC 422) ("Q: Do you recommend this candidate? A: No.")  The Applicant Reference Check regarding Gardner included the following negative comments regarding his work performance:

- regarding "Safety Awareness", relayed incident involving hose strung overhead a machine; Gardner "brought safety [department] down [without] coming to me and when safety came [Gardner] said he just wanted to cause trouble."[1] (SPC 422)
- "instigates conflict" (Id.)
- "makes bad decision" (SPC 421)
- "does not take criti[cism] well" (Id.)
- "takes short cut" and "frequently makes errors" (Id.)

Gardner's former manager also told the interviewer that Gardner had indicated to him that Gardner "did not want to be hired."  (SPC 422.)  During his own interview with the Weissman Group, the interviewer noted that Gardner stated that he was "not happy about being forced to interview," and that he did not think he wanted to "be offered a job with new co[mpany]."  (SPC 424.)  These factors led the Weissman Group to rate Gardner as an overall "RED."  (Weissman Dep. at 185-86.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.

---

[1]    Gardner does not deny the incident occurred.  (Gardner Dep. at 47.)

Gardner cannot prove otherwise, or that these well-documented reasons for Smart Papers' employment decisions are a pretext for age discrimination. Indeed, Tom Weiser—age 44 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Gardner for employment, gave positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Mr. Weiser gave favorable ("GREEN") or acceptable ("YELLOW") references to 3 former IP employees who were approximately Gardner's age or older. (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------------------|-----------|
| MARCUM, HERBERT | 63 | GREEN |
| **GARDNER, HENRY** | **62** | **RED** |
| WHITAKER, DONALD L. | 60 | YELLOW |
| BAKER, ROGER E. | 60 | GREEN |

## 2.    Plaintiff Gardner Has No Basis For His Defamation Claim.

Similarly, Gardner's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. During his deposition, Gardner could not identify any defamatory statements made by anyone at Smart Papers. (Gardner Dep. at 90: "Q: Do you know of any statements made about you by Smart Papers or Sun Capital that you allege are defamatory? A: I don't know.") His defamation claim fails as matter of law.

**<u>FLOYD GEEDING</u>**

     **1.**     **Plaintiff Geeding Has No Basis For His Age Discrimination Claim.**

     Plaintiff Geeding's sole discrimination claim in this lawsuit is that Smart Papers failed to hire him because of his age in violation of the ADEA.[1/] (Complaint at ¶¶ 26, 92-96.)  This claim is utterly without merit because Geeding <u>received an offer of employment</u> from Smart Papers. (Geeding Dep. at 54: "Q: Now, after you went through . . . the hiring process with Smart, did you get an offer of employment with Smart?  A: Yes, I did."); (<u>Id.</u> at 86 "Q: [Y]ou were given a job? A: I was offered, yes.")  It was Geeding's decision not to work at Smart Papers.  (<u>Id.</u> at 54: "Q: You declined that offer, is that correct?  A: I did.")  Geeding cannot establish a failure to hire claim because he was not rejected for employment by Smart Papers.

     In his deposition, Geeding suggests that Smart Papers discriminated against him by offering him a lower level position than the Trainer position he held at IP.  (Geeding Dep. at 88.) This is not the claim he made in his Complaint, therefore, any "discriminatory hiring practice" claim should be rejected out of hand.  Plaintiffs amended their Complaint five times and had ample opportunity to correct any deficiencies.  Nevertheless, if this Court were to consider this claim, it still must fail because Geeding cannot establish that Smart Papers discriminated against him on the basis of his age by offering him an hourly Mixer Operator position, rather than a salaried Training Manager position.

     The IP manager who was interviewed by the Weissman Group did not recommend Geeding as a Training Manager at Smart Papers.  (SPC 437: "Q: Do you recommend this candidate?  A: Would not hire for this position.  Maybe for operation.")  The Applicant

---

1/     Geeding does not have an Ohio age discrimination claim.  <u>See</u> Complaint at Counts III and IV.

Reference Check regarding Geeding included the following negative comments regarding his

work performance as a Trainer at IP:

- "self-imposed restraints – big time" (SPC 436)
- "cannot set priorities" (Id.)
- "meets expec[tations] no more" (Id.)
- "does not meet" for productivity (Id.)
- "His team members carry him.  Isn't highly respect[ed]."  (SPC 437)
- "does not understand his welfare & [company's] is connected" (Id.)

These concerns led the Weissman Group to rate Geeding as an overall "YELLOW."

(Weissman Dep. at 188-89.)  Based on this recommendation, Smart Papers offered Geeding a

position as a Mixer Operator in the Coating Preparation Department where he had worked for 20

years before he became a Trainer at IP.  Geeding was not the only former IP Trainer who

received an offer for a position in his former department, rather than a Training Manager position

at Smart Papers.  (Geeding Dep. at 85: "Q: So am I correct to say that the . . . former trainers

from IP who did not get training manager jobs got jobs in their former departments?  A:

Probably so, yes.")  In fact, three former IP Trainers who were younger than Geeding, who was

55, were also offered hourly department positions, rather than a salaried Training Manager

position at Smart Papers.  These former IP Trainers were:  Berlyn Stanifer (52), Fern Gadd (45)

and Frances Spurlock (42).  (SP Exh. 4 ¶¶ 2-5.)  Thus, Geeding has no claim that he was given a

lower level department position, rather than a Training Manager position, because of his age.

### 2.    Plaintiff Geeding Has No Basis For His Defamation Claim.

Similarly, Geeding's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of a defamation claim under

Ohio law.  Among other things, he admitted during his deposition that he was not aware of any

false statements made about him by Smart Papers.  He testified that he thought that Smart Papers

had defamed him because of a newspaper article that suggested that the people who were not

hired by Smart Papers were drug users.  (Geeding Dep. at 92-93.)  Geeding admitted, however, that any alleged statements about people who were not hired—which he presented no evidence of—would not apply to him because he got an offer at Smart Papers.  (Id. at 93.)  Geeding also testified that he believed that he was defamed by the reference provided by his former IP supervisor, Mr. Cecil.  (Id.)  Mr. Cecil was not working for Smart Papers when he provided the employment reference.  (Id.)  Geeding's claim of defamation against Smart Papers fails as a matter of law.

**DAVID GENTRY**

    **1.    Plaintiff Gentry Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Gentry because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that he otherwise would have been recommended for employment by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at 191) (discussing Gentry: "This person was disqualified due to the drug test.  The rest of his application was—Green"); see also (SPC 456) (results of positive drug test for marijuana.)

Plaintiff Gentry has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 12, 2001, as part of his application for employment with Smart Papers, Gentry signed the Smart Papers' Consent to Drug Screening.  (SPC 463.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.)  Gentry admitted in his deposition that he smoked marijuana "roughly about a month before" his January 22, 2001 drug test.  (Gentry Dep. at 46-47.)  Gentry's drug test came back positive for marijuana and he testified that he did not have any reason to doubt the results of this test.  (Id.; SPC 456.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, Gentry's age discrimination claim cannot survive and summary judgment should be granted to Smart Papers as a matter of law.

    **2.    Plaintiff Gentry Has No Basis For His Defamation Claim.**

Similarly, Gentry's defamation claim against Smart Papers cannot survive summary judgment.  Gentry cannot satisfy any of the essential elements of defamation under Ohio law.  In

his deposition, Gentry claimed that Dan Maheu had made defamatory statements in a newspaper article in the Hamilton Journal.  (Gentry Dep. at 73.)  Gentry did not have a copy of the article and could not remember exactly what it sa<u>Id</u>.  (<u>Id.</u> at 74-75.)  These vague and ambiguous allegations cannot form the basis of a defamation claim in Ohio. As such, his defamation claim fails as a matter of law.

<u>**EVERITT GILL**</u>

**1.    Plaintiff Gill Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Gill because he failed his mandatory pre-employment drug test.[1/]  (Weissman Dep. at  191); <u>see</u> <u>also</u> (SPC 472) (results of positive drug test for cocaine and marijuana.)  Gill has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 12, 2001, as part of his application for employment with Smart Papers, Gill signed the Smart Papers' Consent to Drug Screening.  (SPC 480.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.; Gill Dep. at 31, 92.) Gill admitted that he had been smoking marijuana daily in January 2001 before the drug test and that he had used cocaine approximately once a month.  (Gill Dep. at 45-46.)  Gill's drug test came back positive for cocaine and marijuana.  (SPC 472.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Gill's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

**2.    Plaintiff Gill Has No Basis For His Defamation Claim.**

Similarly, Gill's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he did not identify any false statements made about him by

---

[1/]    Gill also was rated as a "RED" on his reference check.  Ms. Weissman testified, however, that the positive drug test was the determining factor.  (Weissman Dep. at 191.)

Smart Papers.  His defamation claims rest on his belief that the reference provided by his former

IP supervisor, Bobby Caldwell, was false.  (Gill Dep. at 65.)  Gill admitted that Mr. Caldwell

was employed by IP at the time he gave the reference.  (Id. at 87.)  An unfavorable reference

from Mr. Caldwell, while Mr. Caldwell was still employed by IP before the sale of the mill,

cannot be considered a false statement made by anyone at Smart Papers.  Gill admitted that other

than the reference, he had no other basis for his defamation claim.  (Id. at 65: "Q: Other than the

statements in the reference check, are you aware of any other statements made by any of the

defendants in this litigation about you that you believe were false?  A: I have no idea.")  Gill's

claim of defamation against Smart Papers fails as a matter of law.

**SONJA GREENE**

    **1.**    **Plaintiff Greene Has No Basis For Her Age and Disability Discrimination Claims.**

    There is undisputed evidence that Smart Papers hired Plaintiff Greene as an Assistant Sheeter Operator in February 2001 and promoted her to a salaried Logistics Clerk position several weeks later.  (Greene Dep. at 45, 54-55.)  Greene's discrimination claims rest on the fact that she believes that the Smart Papers hired someone "approximately ten years younger" to fill the Finishing Clerk position she wanted.  (Id. at 51.)  Greene testified that Finishing Clerk was the only job she wanted at Smart Papers.  (Id. at 104: "Q: Is finishing clerk the only position you wanted at Smart Papers?  A: Yes.")  In fact, Nancy Etter, the individual Greene claimed was hired as a Finishing Clerk, was 46 years old in February 2001—only three years younger than Greene.  (SP Exh. 4 ¶ 7.)  A three year age difference is insufficient to establish age discrimination.[1]

    Despite her testimony that she only wanted a Finishing Clerk position, Greene also claimed that the fact that younger people were hired as Sheeter Operators was evidence of age discrimination because she should have received a Sheeter Operator rather than an Assistant Sheeter Operator position.  (Greene Dep. at 104, 114-17.)  In fact, as the following chart shows, Smart Papers hired four applicants as Sheeter Operators who were older than Greene (who was

---

[1]    As explained more fully in Section IV, Greene's disability claim fails for several reasons. For example, Greene simply states in the Complaint that she has been identified as disabled and is a qualified individual under the ADA.  (Complaint at ¶ 124.)  Greene has presented no evidence to support that claim.  Moreover, during her deposition she said that her only claims against Smart Papers were for age discrimination and possibly defamation.  (Greene Dep. at 140-41: "Q: Other than your age discrimination claim and possibly the defamation claim, do you have any other claims against Smart Papers in this litigation . . .?"  A: Not at this time.")  Greene's disability discrimination claim fails as a matter of law.

49), four applicants who were one to three years younger than Greene, and only one applicant who was under age 40.  Age played no role in the hiring of Sheeter Operators.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/10/01 |
|------|------|
| Deboard, Donald N. | 59 |
| Burke, Millard R. | 54 |
| Miller Jr., Hargis | 53 |
| Flick, Jerry | 51 |
| Hensely, Gary | 48 |
| Holland, Carl E. | 48 |
| Baker, Ronald Lee | 46 |
| Glancy, Frank | 46 |
| Tyree, Wanda Joy | 37 |

Greene's claim that Smart Papers discriminated against her is further belied by the fact that Smart Papers promoted her to a salaried Logistics Clerk position within weeks of opening the Hamilton mill.  (Greene Dep. at 54-55.)  Accordingly, there are no genuine issues of material fact in dispute regarding Greene's age and disability discrimination claims, and summary judgment should be granted to Smart Papers as a matter of law.

### 2.     Plaintiff Greene Has No Basis For Her Defamation Claim.

Similarly, Greene's defamation claim against Smart Papers cannot survive summary judgment because she cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, Greene was not even sure whether she had a defamation claim against Smart Papers.  (Greene Dep. at 139: "Q: In this lawsuit, Campbell lawsuit, is there a claim of defamation against Smart Papers that has to do with events surrounding the purchase of the mill from International Paper?  A: I'm not sure.")  She admitted, however, that she was not aware of any false statements made about her by Smart Papers.  (Id.: "Q: Do you think anybody at Smart Papers has said anything false or negative about you in connection with the purchase of the mill and your receiving an offer of employment at Smart Papers?  A: No.")  Greene's claim of defamation against Smart Papers fails as a matter of law.

**JOHN GREGORY**

> **1.      Plaintiff Gregory Has No Basis For His Age Or Disability Discrimination Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Gregory because he failed his mandatory pre-employment drug test.  (Weissman Dep. at 193); <u>see</u> <u>also</u> SPC 513 (results of positive drug test for marijuana).  Gregory has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age or disability discrimination.

On January 12, 2001, as part of his application for employment with Smart Papers, Gregory signed the Smart Papers' Consent to Drug Screening.  (SPC 518.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (<u>Id.</u>; Gregory Dep. at 54.)  Gregory admitted that he had smoked marijuana at least six weeks before his drug test.  (Gregory Dep. at 55.)  Gregory's drug test came back positive for marijuana.  (SPC 513.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Gregory's age or disability discrimination claims, and summary judgment should be granted to Smart Papers as a matter of law.[1/]

---

[1/]     In addition, Gregory's disability claims fail as a matter of law because he: 1) failed to show that he is otherwise qualified for his position; and 2) failed to produce any evidence Smart Papers knew, or should have known about his alleged disability.  (<u>See</u> Section <u>IV</u> of Memorandum.)  Brewer's ADA claim also fails as a matter of law because he failed to allege disability in his EEOC charge.  (<u>Id.</u>)

### 2.    Plaintiff Gregory Has No Basis For His Defamation Claim.

Similarly, Gregory's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he did not identify any false statements made about him by Smart Papers.  His defamation claims rests on: (1) his reference check; (2) his allegation that he heard about an unspecified newspaper article and/or a letter that referred to "excess baggage" at the IP mill; and (3) a newspaper article that "more or less implied that everybody that was let go was a druggie."  (Gregory Dep. at 87-91.)  These allegations do not constitute defamatory statements by anyone Smart Papers.  The reference was provided by Tom Weiser, his former department head at IP, who was employed by IP when he provided the reference.  (Id. at 29-30.)  Gregory testified that his only information about the "excess baggage" comment was "hearsay."  (Id. at 89.)  Finally, it is true that Gregory was not hired by Smart Papers because he failed his drug test.  Any implication from the failed drug test cannot form the basis for a defamation claim.  Gregory's claim of defamation against Smart Papers fails as a matter of law.

## JOHN GUMM

As set forth in Section I of this memorandum, Smart Papers maintains that Plaintiff Gumm should be dismissed from this action pursuant to Federal Rule 37 for failing to respond to Defendants' discovery requests and failing to attend his noticed deposition. As a result, Gumm's age discrimination and defamation claims should be dismissed as Gumm has produced no evidence to support either of his claims.

Nevertheless, there is undisputed evidence that Smart Papers did not hire Plaintiff Gumm because the Weissman Group gave him an overall "RED" rating based on his individual interview and the unfavorable reference provided to Smart Papers by Gumm's former IP supervisor. (Weissman Dep. at 193.) Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Gumm for employment at Smart Papers. (SPC 526) ("Q: Do you recommend this candidate? A: Would not hire for his position.") The Applicant Reference Check regarding Gumm included the following negative comments regarding his work performance:

- "signif[icantly] below average" (SPC 525)
- "purely incompetent" (Id.)
- "poor-poor-poor" (Id.)
- "does not want to learn" (Id.)
- "always where the errors are" (Id.)
- "no matter what position he plays, its low production" (Id.)
- "he's one of worst" (Id.)
- "he is just one step short in almost every aspect of his job performance" (SPC 526)

These factors led the Weissman Group to rate Gumm as an overall "RED." Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions. Gumm cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination. Indeed, Bobby Caldwell—age 49 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Gumm for employment, gave

positive references for former IP employees, regardless of the applicant's age.  As the following

chart demonstrates, Mr. Caldwell gave favorable ("GREEN") or acceptable ("YELLOW")

references to 5 former IP employees who were older than or the same age as Gumm.  (Id. ¶¶ 2-

5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| LANE, JESSIE T | 60 | GREEN |
| DEBOARD, DONALD N. | 59 | GREEN |
| HOWARD, RUSSELL | 58 | YELLOW |
| MCINTOSH, MARK | 58 | YELLOW |
| **GUMM, JOHN** | **56** | **RED** |
| SCHMIDLIN, ROY L | 56 | GREEN |

<u>**DENNIS HEINRICH**</u>

      **1.**      **Plaintiff Heinrich Has No Basis For His Age Discrimination Claim.**

      There is undisputed evidence that Smart Papers did not hire Plaintiff Heinrich because the Weissman Group gave him an overall "RED" rating based on his unfavorable individual interview rating and on the unfavorable reference provided to Smart Papers by Heinrich's former IP supervisor.  (Weissman Dep. at 193-94.)  Heinrich admitted in his deposition that his interview with Smart Papers did not go well.  (Heinrich Dep. at 74-76.)  He testified that he told the interviewer that he would not help out other employees at the mill.  (<u>Id.</u> at 74.)  In addition, the interviewer from the Weissman Group noted on Heinrich's interview form that he was "hostile, would not give answer or give examples, belligerent."  (SPC 543.)

      The IP supervisor who was interviewed by the Weissman Group did not recommend Heinrich for employment at Smart Papers.  (SPC 541: "Q: Do you recommend this candidate? A: This person is not one I would hire for his present position.")  The Applicant Reference Check regarding Heinrich included the following negative comments regarding his work performance:

- "only what's nec[essary] to get by"  (SPC 540)
- "performs marginally on all [skills]" (<u>Id.</u>)
- "not real productive" (<u>Id.</u>)
- "can't let go of past" (<u>Id.</u>)
- "spends a lot of time complaining and stirring things up" (SPC 541)
- "reprimanded for safety violation" (<u>Id.</u>)
- "complains, gossips" (<u>Id.</u>)
- "often out of step with org[anization]" (<u>Id.</u>)[1]

      These concerns led the Weissman Group to rate Heinrich as an overall "RED." (Weissman Dep. at 193-94.)  Smart Papers relied on these legitimate non-discriminatory reasons

---

[1]    Plaintiff Tolbert testified that "everybody [in their department] had a problem" with Heinrich and that he called her a "dumb ass" after he started up a machine before he was ready.  (Tolbert Dep. at 94-96).

in making its employment decision.  Heinrich cannot prove otherwise, or that these reasons for

Smart Papers' employment decision are a pretext for discrimination.  Indeed, Bobby Caldwell—

age 49 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend

Heinrich for employment, gave numerous positive references for former IP employees,

regardless of the applicant's age.  As the following chart demonstrates, Mr. Caldwell gave

favorable ("GREEN") or acceptable ("YELLOW") references to 12 former IP employees who

were older than or the same as age Heinrich.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------------------|-----------|
| LANE, JESSIE T | 60 | GREEN |
| DEBOARD, DONALD N. | 59 | GREEN |
| HOWARD, RUSSELL | 58 | YELLOW |
| MCINTOSH, MARK | 58 | YELLOW |
| SCHMIDLIN, ROY L | 56 | GREEN |
| HOUSTON, ELDON E. | 55 | YELLOW |
| BURKE, MILLARD R. | 54 | GREEN |
| MILLER JR, HARGIS | 53 | GREEN |
| EIKELBERGER, GERALD L. | 52 | YELLOW |
| FLICK, JERRY | 51 | GREEN |
| CHITWOOD, CONEY D. | 50 | GREEN |
| GREENE, SONJA | 49 | GREEN |
| **HEINRICH, DENNIS A.** | **49** | **RED** |

### 2.    Plaintiff Heinrich Has No Basis For His Defamation Claim.

Similarly, Heinrich's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of a defamation claim under

Ohio law.  Among other things, he admitted during his deposition that he was not aware of any

false statements made about him by Smart Papers.  (Heinrich Dep. at 79: "Q: Do you believe that

anyone from Smart Papers has said anything false about you?  A: I don't recall meeting anybody

from Smart Papers.  Q: Have you ever heard of any comments made by anybody at Smart Papers

about you?  A: No.").  Heinrich's claim of defamation against Smart Papers fails as a matter of

law.

**EDWARD HENSLEY**

1.    **Plaintiff Hensley Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Hensley because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Hensley's former IP manager.  (Weissman Dep. at 194.)  Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Hensley for employment at Smart Papers.  (SPC 556 ) ("Q: Do you recommend this candidate? A: No")  The Applicant Reference Check regarding Hensley included the following negative comments regarding his work performance:

- "very slow" (SPC 555)
- "lack of knowledge" (Id.)
- "others pick up his slack" (Id.)
- "performance problem" (Id.)
- "would require close supervision" (Id.)
- "attendance problems" (Id.)
- "average to below [in team player]" (SPC 556)
- "people just leave him alone" (Id.)
- "needs to be reminded of PPE [personal protective equipment]" (Id.)
- "ability to learn and sustain information [is particularly troublesome]" (Id.)
- "lack of effort" (Id.)
- "below average" (Id.)

These factors led the Weissman Group to rate Hensley as an overall "RED."  (Weissman Dep. at 194.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Hensley cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination.  Indeed, Tom Jones—age 59 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Hensley for employment, gave numerous positive references for former IP employees.  As the following chart demonstrates, Mr. Jones gave favorable ("GREEN") or acceptable ("YELLOW") references to 8 former IP employees who were substantially the same age or older than Hensley.

(Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------------------|-----------|
| WAHL, LAWRENCE | 59 | Green (current) Red (other) |
| ASHER, RAYMOND | 58 | GREEN |
| GROGG, FREEMAN N. | 58 | GREEN |
| FOSTER JR., TAYLOR | 54 | GREEN |
| GAULT, LARRY CHARLES | 54 | GREEN |
| **HENSLEY, EDWARD R.** | **54** | **RED** |
| OGLESBY, GARY | 54 | GREEN |
| FROST, JAMES A. | 50 | GREEN |
| OBRIEN, DANIEL P | 50 | GREEN |

**2.      Plaintiff Hensley Has No Basis For His Defamation Claim.**

Similarly, Hensley's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. In his deposition, Hensley could not identify any false and defamatory statements about him by Smart Papers. (Hensley Dep. at 98) ("Q: Do you know of any defamatory statements made by any employee of Smart Papers against you personally? A: Just rumors and that's it. I don't know. I'm not sure of anything."). Hensley's defamation claim against Smart Papers fails as a matter of law.

## RICHARD HESS

### 1.    Plaintiff Hess Has No Basis For His Age Discrimination Claim.

Plaintiff Hess' discrimination claim in this lawsuit is that Smart Papers failed to hire him because of his age.  (Complaint at Counts I and III.)  This claim is utterly without merit because Hess <u>received an offer of employment</u> from Smart Papers.  (Hess Dep. at 47: "Q: And you were offered a position? A: Yes.")  In fact, Mr. Hess accepted his offer with Smart Papers and is still working there today.  (Hess Dep. at 76.)  Hess cannot establish a failure to hire claim because he was not rejected for employment by Smart Papers.

In his deposition, Hess suggests that Smart Papers discriminated against him by offering him a lower level position than the position he held at IP.  (Hess Dep. at 31.)  This is not the claim he made in his Complaint, therefore, any "discriminatory hiring practice" claim should be rejected out of hand.  Plaintiffs amended their Complaint five times and had ample opportunity to correct any deficiencies.

Nevertheless, if this Court were to consider this claim, it still must fail because Hess cannot establish that Smart Papers discriminated against him on the basis of his age by offering him employment and subsequently promoting him.  In fact, when Smart Papers made an offer of employment to Hess, it was actually for a higher level job than the one he had held at IP.  Hess testified that at the time he applied for a job with Smart Papers, his official title at IP had been a department relief.  (Hess Dep. at 71.)  He further testified that he was offered a position with Smart Papers as an assistant winder operator.  (Hess Dep. at 47, 72.)  Hess further testified that moving up in the line of progression was actually a promotion.  (Hess Dep. at 72.)  It is undisputed that moving from a department relief position, which is the entry level position in the mill, to an assistant winder operator position is a promotion.  (Hess Dep. at 72.)  Moreover, Hess

testified that Smart Papers promoted him to the position of winder operator in September 2001. (Hess Dep. at 76.)  Accordingly, Hess' claim that Smart Papers discriminated against him by placing him into a lower level job is simply false and cannot be established based on the record evidence.

Additionally, Hess specifically testified that he wanted a back tender position.  (Hess Dep. at 47, 70.)  Hess testified that the three back tenders hired by Smart Papers were Mr. Pigg, Mr. Cheek and Mr. Cox.  (Id. at 73.)  There is undisputed evidence that all three gentleman, Mr. Pigg, Mr. Cheek and Mr. Cox are the same age or older as Hess.  (Id. at 73); (SP Exh. 4 ¶ 2-5.)

### 2.    Plaintiff Hess Has No Basis For His Defamation Claim.

Similarly, Hess' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he testified that his defamation claim is based upon a newspaper article that he heard used the term "excess baggage," but could not identify whether he personally read the article, who said the alleged defamatory statement, when it was made, or in what context the alleged defamatory statement was made.  (Id. at 53.)  Other than the unidentified newspaper article, Hess testified that he was not aware of any other disparaging comments made by someone from Smart Papers.  (Id. at 53-54.)  Accordingly, Hess' claim of defamation against Smart Papers fails as a matter of law.

## ALFRED HOLLAND

**1.     Plaintiff Holland Has No Basis For His Age or Disability Discrimination Claims.**

Plaintiff Holland falsely claims that Smart Papers offered him a "lower level position than his former position at IP." (Complaint at ¶ 13.) This allegation is utterly without merit. There is undisputed evidence that Smart Papers actually offered Holland a higher level, higher paying position than the one he held at IP. Holland was an Embosser Operator at IP. (Id.) Smart Papers offered him a position as a Drum Operator. (Holland Dep. at 42-43.) At Smart Papers, a Drum Operator is a higher level, higher paying job than an Embosser Operator. (Id. at 43-44.) Holland testified that he wanted a lower level position than the one he was offered. (Id. at 43: "Q: So you actually wanted a lower level position than what you were offered at Smart Papers? A: Yes.") As further evidence of the ridiculous nature of his claims, Holland also contradicted his Complaint allegations by claiming that he was discriminated against because Smart Papers "gave people younger than [him] a buyout . . . and hired [him] back." (Id. at 46.) As this testimony demonstrates, Holland really did not want any offer from Smart Papers, but wanted to receive severance from IP. Given these undisputed facts, Holland's age and disability discrimination claims fail as a matter of law.[1]

---

[1]    Contrary to the allegations in the Complaint, Holland testified that he did not have a claim for disability discrimination against Smart Papers. (Holland Dep. at 48: "Q: [D]o you claim that Smart Papers discriminated against you on the basis of a disability? A: No.") Despite this testimony, Plaintiffs' counsel continues to include Holland's disability claim in the Fifth Amended Complaint. Moreover, as explained more fully in Section IV, Holland also cannot establish the basic elements of a claim for disability because he: 1) is not disabled under applicable law; and 2) has produced as evidence that Smart Papers knew, or should have know, about his alleged disability.

**2.      Plaintiff Holland Has No Basis For His Defamation Claim.**

Similarly, Holland's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he admitted during his deposition that he was not aware of any false statements made about him by Smart Papers.  Rather, he testified that he was defamed because he had to take a drug test.  (Holland Dep. at 48: "Q: So the fact that you had to take a drug test is the basis for your claim of defamation.  A: Yes.")  It is true that Holland, like all Smart Papers' applicants had to take a drug test.  That is not defamation.  Holland could not identify anything in support of his defamation claim.  (Id. at 49: "Q: Other than the drug test, is there anything else, any statement made by anybody at Smart Papers that you believe was false and intended to hurt you?  A: No.")  Holland's claim of defamation against Smart Papers fails as a matter of law.

**ROGER HORN**

    **1.**    **Plaintiff Horn Has No Basis For His Age and Disability Discrimination Claims.**

    Plaintiff Horn did not file an EEOC charge, (Horn Dep. at 19, 83), therefore, he cannot pursue his federal age and disability discrimination claims.  Smart Papers is entitled to summary judgment on Horn's discrimination claims brought under Ohio law because there is undisputed evidence that Plaintiff Horn was medically unable to work in February 2001 when Smart Papers made its hiring decisions.  (Horn Dep. at 93: "Q: Were you physically able to work in February 2001?  A: I wasn't ready at that time.  Q: Did you tell the interviewer that you were not released for work at that time?  A: Yes, I think so."); (Id. at 94) (testifying that he was not medically released for work until at least April 2001.)  Horn cannot establish that Smart Papers discriminated against him by not hiring him in February 2001 given that he was unable to work at that time.

    **2.**    **Plaintiff Horn Has No Basis For His Defamation Claim.**

    Similarly, Horn's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he admitted during his deposition that he was unable to identify any false statements made about him by Smart Papers.  (Horn Dep. at 99: "Q: Do you believe that anyone at Smart Papers has said anything false about you?  A: I don't know.  I honestly don't.")  Horn's claim of defamation against Smart Papers fails as a matter of law.

## RICKEY HUNTINGTON

**1.     Plaintiff Huntington Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Huntington because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Huntington's former IP supervisor.  (Weissman Dep. at 196-97.) Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Huntington for employment at Smart Papers.  (SPC 619: "Q: Do you recommend this candidate? A: [Because] of attitude, he's at bottom of [employees].")  The Applicant Reference Check regarding Huntington included the following negative comments regarding his work performance:

- "he's lazy- takes easy path"  (SPC 618)
- "doesn't prepare for next shift – won't make up starch for his relief" (Id.)
- "if he spent as much time doing his job as he did figuring out ways to get out of his work [he would be productive]" (Id.)
- "does not work well [with] his reliefs" (SPC 619)
- "he's argumentative" (Id.)
- "wants to make all decisions by himself – thinks he's the only one who knows what to do" (Id.)

These concerns led the Weissman Group to rate Huntington as an overall "RED." (Weissman Dep. at 196-97.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decision.  Huntington cannot prove otherwise, or that these documented reasons for Smart Papers' employment decision are a pretext for discrimination. Indeed, Michael Lopane, the former IP supervisor who did not recommend Huntington for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Lopane gave favorable ("GREEN") or acceptable ("YELLOW") references to 13 out of 17 former IP employees who were older than Huntington.  (SP Exh. 4 ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| MILLER, JERRY M | 58 | GREEN |
| PATRICK, C. R. | 57 | GREEN |
| WEAVER, WILLIAM R. | 56 | GREEN |
| SMITH, LOUIS W | 54 | RED |
| COPE, WILBUR G. | 52 | YELLOW |
| ROSENBERGER, STEPHEN T | 51 | GREEN |
| BISHOP, PHILIP A. | 50 | RED |
| BRUNNER, DANIEL A. | 50 | GREEN |
| DEATON, BILLY R. | 50 | GREEN |
| GRIMES, CHARLES R. | 50 | YELLOW |
| COX, LARRY E. | 49 | GREEN |
| PENNINGTON, RON EUGENE | 49 | RED |
| TARTER, GARY DALE | 49 | RED |
| BROCKMAN, DEWARREN R. | 48 | GREEN |
| RICHARDSON, ALVIN | 48 | GREEN |
| LANEY, REBECCA K | 47 | GREEN |
| PRICE, STEVE M | 47 | GREEN |
| **HUNTINGTON, RICK L.** | **45** | **RED** |

**2.      Plaintiff Huntington Has No Basis For His Defamation Claim.**

Similarly, Huntington's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  In fact, Huntington testified that he did not actually have a defamation claim against Smart Papers.  (Huntington Dep. at 83) ("Q: Are you claiming in this lawsuit that Smart Papers defamed you? A: I don't know. No."); (Id. at 84) ("Q: So there's no claim that you know of or statement made by anyone at Smart Papers that you think is defamatory? A: I don't think so.") Huntington's claim of defamation against Smart Papers fails as a matter of law.

<u>EMANUEL "JESS" HYDEN</u>

**1.    Plaintiff Hyden Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Hyden because the

Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided

to Smart Papers by Hyden's former IP manager.  (Weissman Dep. at 197-99.)  Significantly, the

IP manager who was interviewed by the Weissman Group did not recommend Hyden for

employment at Smart Papers based on the manager's "concern regarding his rel[ationships] w/

drivers and unpredictable outbursts."  (SPC 632.)  The Applicant Reference Check regarding

Hyden included the following negative comments regarding his work performance:

- regarding dependability, "inconsistent [--] can be best and can detract" (SPC 631)
- although "very quick to [i.d.] and surface [sic] problem[,] unwilling to partic[ipate] in solutions req[uiring] interpers[onal] interaction." (<u>Id.</u>)
- "most of guys have trouble with him.  He is unpredictable.  Moody[,] sullen [--] scares people" (<u>Id.</u>)
- "truck drivers hate him.  He'll joke and put people down but get angry when others get best of him." (<u>Id.</u>)

In addition, Hyden's former IP manager told the Weissman Group that he had suspicions that

Hyden "delay[ed] truck drivers intentionally and may have intentionally cause[d] back deck door

to hit departing truck damaging door.  In each case (3 in last year) he was loader [on duty.]  No

incident involving any other loader." (<u>Id.</u>)

These factors led the Weissman Group to rate Hyden as an overall "RED."  Smart Papers

relied on these legitimate non-discriminatory reasons in making its employment decisions.

Hyden cannot prove otherwise, or that these well-documented reasons for Smart Papers'

decisions are a pretext for age discrimination.  Scott Dalesandro—age 48 in February 2001 (SP

Exh. 4 ¶ 6)—the former IP manager who did not recommend Hyden for employment, gave

numerous positive references for former IP employees, regardless of the applicant's age.  As the

1

following chart demonstrates, Mr. Dalesandro gave favorable ("GREEN") or acceptable

("YELLOW") references to 15 out of 19 former IP employees who were older than or the same

age as Hyden.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| CROY, FRED E. | 61 | YELLOW |
| WRIGHT, WILLIAM L. | 59 | GREEN |
| BUELL, JAMES M. | 57 | GREEN |
| LEHMAN JR, CHARLES | 57 | GREEN |
| HELM, JIMMY | 56 | GREEN |
| PETERSON, JAMES A | 56 | GREEN |
| SCHLOTTERBECK, RICHARD M | 56 | GREEN |
| CAUDILL III, CHARLES R. | 53 | GREEN |
| ROBERTS, JOHNNY | 53 | GREEN |
| BEEMAN, JAMES L. | 52 | GREEN |
| HUELSMAN, JOHN EARL | 52 | GREEN |
| HUFFMAN, THOMAS D. | 52 | RED |
| MERCER, IRWIN A | 52 | GREEN |
| SUMAN, ALLEN W. | 52 | YELLOW |
| BUTLER SR., MICHAEL L. | 51 | GREEN |
| SUTTON, FRED L. | 51 | GREEN |
| BAYLOR, CHARLES T. | 50 | RED |
| THOMAS, ARTHUR D. | 50 | RED |
| ROBINSON, LYLE D | 49 | RED |
| **HYDEN JR., EMANUEL** | **47** | **RED** |

**2.    Plaintiff Hyden Has No Basis For His Defamation Claim.**

Similarly, Hyden's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.

In his deposition, Hyden could not identify any false statements about him by Smart Papers.

Instead, Hyden stated that the only alleged defamatory statements that he was aware of were the

comments of his former IP manager reflected in the Applicant Reference Check.  (Hyden Dep. at

119-20.)  As such, his defamation claim fails as a matter of law.

**<u>JEROME ISREAL</u>**

**1.    Plaintiff Isreal Has No Basis For His Age or Disability Discrimination Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Isreal because the Weissman Group gave him an overall "RED" rating based on both his unfavorable individual interview and the unfavorable reference provided to Smart Papers by Isreal's former IP supervisor.  (Weissman Dep. at 200.)  Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Isreal for employment at Smart Papers.  (SPC 647.) ("Q:  Do you recommend this candidate? A: Not the first I'd choose.")  The Applicant Reference Check regarding Isreal included the following negative comments regarding his work performance:

- "tardy more frequently than normal" (SPC 646)
- conflicts with others (SPC 647)
- "Dependability [problems]" (<u>Id.</u>)

These factors, coupled with his unfavorable interview, led the Weissman Group to rate Isreal as an overall "RED."  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.[1/]  Isreal cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination.  Indeed, Art Schutte— age 47 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend

---

[1/]    In addition to the fact that Isreal cannot rebut the legitimate non-discriminatory reasons detailed above for Smart Papers' employment decision, Isreal also cannot make out a *prima facie* case of disability discrimination under either the ADA or Ohio's anti-disability discrimination statute.  Specifically, as explained in Section IV of Smart Papers' Memorandum, Isreal: 1) does not meet the definition of "disability" under either federal or state law because he does not have a physical or mental impairment that substantially limits a major life activity; and 2) has produced no evidence that Smart Papers had any knowledge of his alleged disability.  For these independent reasons, his claim for disability discrimination should be dismissed as a matter of law.

Isreal for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Schutte gave favorable ("GREEN") or acceptable ("YELLOW") references to at least 17 former IP employees who were older than or the same age as Isreal.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|------|
| HOLLAND, ALFRED D. | 62 | YELLOW |
| BIHR, FRANCIS J. | 59 | YELLOW |
| PARKS, SANDRA S | 58 | YELLOW |
| LANEY, CARL J | 56 | GREEN |
| WEAVER, ANTHONY | 55 | GREEN |
| HUNT, JOHN D. | 54 | GREEN |
| THEISS, THOMAS W. | 54 | YELLOW |
| TURNER, MAY | 54 | GREEN |
| FOWLER, TERRELL K. | 52 | RED |
| RICE, JOHN H | 52 | GREEN |
| HART, MICHAEL | 51 | GREEN |
| RUMPLER, WILLIAM C | 50 | YELLOW |
| STAPLES JR, SIDNEY E | 50 | GREEN |
| HOLLAND, ROBERT L. | 49 | GREEN |
| MARSEE, LINDA B | 48 | YELLOW |
| MILLER, DAVID M | 48 | GREEN |
| POTTS, MICHAEL S | 48 | YELLOW |
| **ISREAL, JEROME** | **47** | **RED** |
| KOELBLIN, RANDY C. | 47 | YELLOW |

### 2.    Plaintiff Isreal Has No Basis For His Defamation Claim.

Similarly, Isreal's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he admitted during his deposition when questioned about his defamation claim that he never knew anybody at Smart Papers who could make a false statement about him. (Isreal Dep. at 90) ("I don't know no Smart Papers, nobody because I never worked with Smart Papers.")

## PAUL ITALIANO

**1.      Plaintiff Italiano Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Italiano because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Italiano's former IP supervisor.  (Weissman Dep. at 200-01.)  Significantly, the IP manager who was interviewed by the Weissman Group indicated that, given the opportunity, he would not hire Italiano if he himself owned his own company.  (SPC 663.)  The Applicant Reference Check regarding Italiano included the following negative comments regarding his work performance:

- "low ambition – likes easy way out" (SPC 662)
- "low quality" [work product]" (Id.)
- "[needs] more than normal supervision" (Id.)
- "isn't great at [productivity]" (Id.)
- "troublemaker – likes to stir things up" (SPC 663)
- regarding safety, "reminded of PPE" (Id.)
- "had accidents" (Id.)
- "had a lot of problems in the drum department." (Id.)

These factors led the Weissman Group to rate Italiano as an overall "RED."  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Italiano cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Ed McCoy—age 53 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Italiano for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. McCoy gave favorable ("GREEN") or acceptable ("YELLOW") references to 9 former IP employees who were older than or approximately the same age as Italiano.  (Id. ¶¶ 2-5.)

1

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| RICHARD, GARRETT | 61 | GREEN |
| RICHARDS, DONALD D | 60 | GREEN |
| JOHNSON, DONALD F. | 59 | GREEN |
| PELSOR, RONALD L | 58 | YELLOW |
| FOX JR., JESSE C. | 57 | YELLOW |
| GLEASON, RANDALL L. | 55 | GREEN |
| HOBSON, JOE R. | 54 | YELLOW |
| **ITALIANO, PAUL P.** | **54** | **RED** |
| CHEEK, TERRY | 53 | GREEN |
| SPAHNI, JAMES CARL | 53 | Red (current) Yellow (other) |

**2.    Plaintiff Italiano Has No Basis For His Defamation Claim.**

Similarly, Italiano's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, Italiano bases his defamation claim on an unidentified newspaper article he recalls seeing in a local paper that allegedly contained comments by Dan Maheu referring to the fact that Smart Papers had "got rid of the deadwood" and that "those folks" not hired by Smart Papers "didn't pass the drug test."  (Italiano Dep. at 86-88.)  These unsubstantiated allegations regarding "deadwood" or a vague insinuation regarding those not hired by Smart Papers are not false statements of fact, as Italiano has not demonstrated that it was published by Smart Papers with any degree of fault, or that it caused Italiano any harm.[1]  Italiano's defamation claim fails as a matter of law.

---

[1]    For example, Italiano admitted that he knew of no one that believed he failed a drug test. (Id. at 95.)

## **GEORGE JACKSON**

As set forth in Section I of this memorandum, Smart Papers maintains that Plaintiff Jackson should be dismissed from this action pursuant to Federal Rule 37 for failing to respond to Defendants' discovery requests and failing to attend his noticed deposition. As a result, Jackson's age discrimination and defamation claims should be dismissed as Jackson has produced no evidence to support either of his claims.

Nevertheless, there is undisputed evidence that Smart Papers did not hire Plaintiff Jackson because he failed his mandatory pre-employment drug test. In fact, the evidence shows that Jackson was recommended for hire by the Weissman Group, but was disqualified solely because he failed the drug test. (Weissman Dep. at 202) (discussing Jackson: "Failed his drug screen, otherwise he would have been [recommended]."); see also (SPC 686) (results of positive drug test for marijuana.)

Plaintiff Jackson has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination. On January 12, 2001, as part of his application for employment with Smart Papers, Jackson signed the Smart Papers' Consent to Drug Screening. (SPC 692.) That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC." (Id.) Jackson's drug test came back positive for marijuana. (SPC 686.) As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age. Accordingly, Jackson's claims for age discrimination cannot survive and summary judgment should be granted to Smart Papers as a matter of law. In addition, Jackson has presented no evidence in support of his defamation claim.

**CHESTER JOHNSON**

1.     **Plaintiff Johnson Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Johnson because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that Johnson was recommended for hire by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at  202) (discussing Plaintiff Johnson: "Failed his drug screen, otherwise he would have been recommended."); see also SPC 702 (results of positive drug test for marijuana.)

Johnson has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination. On January 12, 2001, as part of his application for employment with Smart Papers, Johnson signed the Smart Papers' Consent to Drug Screening.  (SPC 706.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.; Johnson Dep. at 38.)  Johnson admitted that he had smoked marijuana at least two weeks before his January 17, 2001 drug test.  (Johnson Dep. at 17, 38.)  Johnson's drug test came back positive for marijuana.[1/]  (Id.; SPC 702.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Johnson's age discrimination claim, and summary judgment should be granted

---

[1/]     His rejection from Smart Papers' employment for failing a drug test obviously did not deter Plaintiff Johnson's drug use.  During his deposition, he admitted that in January 2003 he was terminated from a subsequent employer (Airton) for "flunk[ing] a drug test" for "marijuana."  (Johnson Dep. at 34-35.)  This admission directly contradicts his sworn interrogatory answers, and he conceded during his deposition that his sworn interrogatory answer was untrue.  (Johnson Dep. at 45.)

to Smart Papers as a matter of law.

  **2.  Plaintiff Johnson Has No Basis For His Defamation Claim.**

  Similarly, Johnson's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he admitted during his deposition that he was not aware of any false statements made about him by Smart Papers.  (Johnson Dep. at 43) ("Q: In your lawsuit do you claim that Smart Papers has said anything false about you with the intent to harm you?)  A: No.")  Johnson's claim of defamation against Smart Papers fails as a matter of law.

**JAMES KETCHAM**

1.    **Plaintiff Ketcham Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Ketcham because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Ketcham's former IP manager.  (Weissman Dep. at 202-03.) Significantly, in response to the question "Would this person be eligible for employment again in your organization," Ketcham's supervisor at IP responded "no," and also recommended that Ketcham not be hired.  (SPC 718) ("Q:  Do you recommend this candidate?  A:  No – below [average.]")  The Applicant Reference Check regarding Ketcham included the following negative comments regarding his work performance:

- "runs poor quality" (SPC 717)
- "co-[workers] must help him run his drum" (Id.)
- although "ok att[endance,] tardy relief issues" (Id.)
- "co-[workers] don't like to w[ork] w/him b[ecause] they have to help him too much" (SPC 718)
- "can't run his drum on his own" (Id.)

These factors led the Weissman Group to rate Ketcham as an overall "RED."  (Weissman Dep. at 202-03.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Ketcham cannot prove otherwise, or that these documented reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Tom Weiser—age 44 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Ketcham for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Weiser gave favorable ("GREEN") references to 10 former IP employees who were substantially older or approximately the same age as Ketcham.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| MARCUM, HERBERT | 63 | GREEN |
| BAKER, ROGER E. | 60 | GREEN |
| WHITAKER, DONALD L. | 60 | YELLOW |
| BOGGS, JAMES MELVIN | 57 | GREEN |
| GLORE, LARRY N. | 55 | GREEN |
| **KETCHAM, JAMES L.** | **55** | **RED** |
| GABBARD, MELVENA | 53 | GREEN |
| BROWNING, RONALD LEE | 52 | GREEN |
| LEONHARDT, JERRY F | 52 | GREEN |
| PONDER JR, ROBERT EUGENE | 52 | GREEN |
| SOUTHARD, LARRY S | 52 | GREEN |

**2.      Plaintiff Ketcham Has No Basis For His Defamation Claim.**

Similarly, Ketcham's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, Ketcham bases his claim for defamation on: 1) comments he had heard referring to former IP employees as "excess baggage;" and 2) an unidentified and undated newspaper article that in general described the drug-testing requirement for new hires at Smart Papers.  (Ketcham Dep. at 58-61.)  Ketcham admitted that the comments regarding "excess baggage" were not made by any representatives of Smart Papers.  (Id. at 116) ("Q: [D]id anyone from Smart Papers or Sun Capital refer to you as excess baggage?  A: Like I said, I haven't talked to anybody at Smart Papers talking about supervision, period.")  Instead, Ketcham testified he heard these comments by members of a private club he frequents.  (Id. at 59.)  These allegations are specious, and Ketcham's claim should be dismissed as a matter of law.

**STANLEY KNODEL**

**1.    Plaintiff Knodel Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Knodel because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Knodel's former IP supervisor.  (Weissman Dep. at 203-04.)  Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Knodel for employment at Smart Papers.  (SPC 735) ("Q: Do you recommend this candidate?  A: No")  The Applicant Reference Check regarding Knodel included the following negative comments regarding his work performance:

- "has not learned" (SPC 734)
- "doesn't learn quickly because he's not willing" (SPC 735.)
- "he is capable but doesn't want to work" (Id.)
- "does only what's necessary to get by" (Id.)
- and received poor ratings in Willingness and Ability to Learn, Excellence Oriented, Productivity and Dependability

These factors led the Weissman Group to rate Knodel as an overall "RED."  (Weissman Dep. at 203-04.) Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decision.  Knodel cannot prove otherwise, or that these reasons for its employment decision are a pretext for age discrimination.  Indeed, Manoj Thomas, the former IP supervisor who did not recommend Knodel for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Thomas gave favorable ("GREEN") or acceptable ("YELLOW") references to 8 other former IP employees who were older than, the same age as or only one year younger than Knodel.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| BAKER, BOBBY J. | 55 | GREEN |
| ROUSH, GLENDON E | 55 | GREEN |
| NANTZ, PAUL L | 54 | GREEN |
| PARRETT, ROGER DALE | 54 | GREEN |
| HARRIS, LONNIE R. | 51 | GREEN |
| MCQUEEN, GARY | 51 | GREEN |
| **KNODEL, STANLEY C.** | **49** | **RED** |
| HUESING, RITA A. | 48 | GREEN |
| PONDER, MICHAEL D | 48 | GREEN |

**2.      Plaintiff Knodel Has No Basis For His Defamation Claim.**

Similarly, Knodel's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he stated during his deposition that his defamation claim was based on unidentified articles in the Hamilton Journal about how the "people that they let go were either druggies or basically misfits." (Knodel Dep. at 47.)  These unidentified news articles cannot form the basis of a defamation claim as Knodel cannot point to who said the statement, when it was said or in what context it was said.  Id.  Accordingly, his claim of defamation against Smart Papers fails as a matter of law.

**JAMES LAKES**

**1.    Plaintiff Lakes Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Lakes because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that Lakes was recommended for hire by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at  204) ("Q: Other than not passing his drug screen, was he otherwise recommended?  A: Well, he would have been, but he was not [because of the drug test.]"); see also (SPC 749) (results of positive drug test for marijuana.)

Lakes has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 19, 2001, as part of his application for employment with Smart Papers, Lakes signed the Smart Papers' Consent to Drug Screening.  (SPC 758.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.; Lakes Dep. at 25, 30, 60.)[1/]  Lakes admitted that he had smoked marijuana as late as January 7, 2001, just over two weeks before his drug test.  (Lakes Dep. at 61.)  Lake's drug test came back positive for marijuana.  (SPC 749.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Lake's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

---

[1/]    Lakes admitted that he knew that if an applicant failed a drug test, he or she would not get a job.  (Lakes Dep. at 60.)

**2.    Plaintiff Lakes Has No Basis For His Defamation Claim.**

Similarly, Lakes's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he did not identify any false statements made about him by Smart Papers.  His defamation claims rests on his allegation that he had once read some unspecified newspaper article that referred to "excess baggage" at the IP mill.  (Lakes Dep. at 41.)  Lakes testified that he did not have a copy of the article, and he could not identify who made the alleged "excess baggage" comment.  (Id. at 42-43.)  Thus, Lakes has presented no evidence of a defamatory statement made by Smart Papers.  Lakes has no other defamation claims.  (Id. at 65-66: "Q: And other than the newspaper article that you testified contained the reference to excess baggage do you know of any other defamatory statement made about you or other plaintiffs in this case by someone from either Smart Papers or Sun Capital?  A: No.")  Lakes's claim of defamation against Smart Papers fails as a matter of law.

## STEVEN MANN

### 1.    Plaintiff Mann Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Smart Papers did not hire Plaintiff Mann because the Weissman Group gave him an overall  "RED" rating based on his individual interview and the unfavorable reference provided to Smart Papers by Mann's former IP manager.  (Weissman Dep. at 206-08.)  Significantly, the IP manager who was interviewed by the Weissman Group stated that he would not hire Mann for employment if he owned his own company.  (SPC 795) ("Q: Would this person be eligible for employment again in your organization? A: No.")  The Applicant Reference Check regarding Mann included the following negative comments regarding his work performance:

- "needs direction (more than normal)" (SPC 794)
- "doesn't do things on his own; no initiative" (Id.)
- "if busy-doing what he shouldn't" (Id.)
- "[dependability] not good-is a problem-plays the game" (Id.)
- "backs off until his record clears then starts up again" (Id.)
- "reminded over and over [about safety]; threatened reprimand; has had problems in the past" (SPC 795)
- "below average" (Id.)

These concerns led the Weissman Group to rate Mann as an overall "RED."  (Weissman Dep. at 206-08.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Mann cannot prove otherwise, or that these documented reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Ed McCoy— age 53 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Mann for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. McCoy gave favorable ("GREEN") or acceptable ("YELLOW") references to 18 of 26 former IP employees who were older than or the same age as Mann.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|---------|-----------|
| FOUTS, JAY | 63 | RED |
| RICHARD, GARRETT | 61 | GREEN |
| CAMPBELL, ELMER L. | 60 | RED |
| RICHARDS, DONALD D | 60 | GREEN |
| JOHNSON, DONALD F. | 59 | GREEN |
| VONSTEIN, EDWARD W. | 59 | RED |
| PELSOR, RONALD L | 58 | YELLOW |
| FOX JR., JESSE C. | 57 | YELLOW |
| GLEASON, RANDALL L. | 55 | GREEN |
| WILLIS, JAMES M. | 55 | RED |
| HOBSON, JOE R. | 54 | YELLOW |
| ITALIANO, PAUL P. | 54 | RED |
| CHEEK, TERRY | 53 | GREEN |
| SPAHNI, JAMES CARL | 53 | Red (current) yellow (other) |
| CROUCHER, LLOYD W. | 52 | GREEN |
| JONES, GLADYS A. | 52 | YELLOW |
| SWEENEY, WILLIAM L. | 52 | GREEN |
| COX, GARY R. | 50 | GREEN |
| HALCOMB, BRIAN L. | 50 | GREEN |
| HESS, RICHARD JULIAN | 49 | GREEN |
| PIGG, JOHN | 49 | GREEN |
| BOWLING JR., PALMER | 48 | GREEN |
| BENNETT, THOMAS D. | 47 | RED |
| BOWLING, WALTER D. | 47 | GREEN |
| **MANN, STEVEN J** | **47** | **RED** |
| RICHARDSON, STEVEN C | 47 | RED |
| RILEY, FRANK L | 47 | GREEN |

### 2.    Plaintiff Mann Has No Basis For His Defamation Claim.

Similarly, Mann's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Mr. Mann testified that his defamation claim is based, on part, on the reference provided by Mr. McCoy to Smart Papers. Because Mr. McCoy was not employed by Smart Papers at the time he provided his reference for Mann (and never was employed by Smart Papers), Mann has not established a statement made by someone from Smart Papers. Additionally, Mann testified that his defamation claim is based on some unidentified newspaper articles that implied that the reason former IP employees did not get jobs with Smart Papers was because they did not pass the

drug test, (Mann Dep. at 67-69,) and that there may have been some reference to "excess baggage" in some article, but he could not remember where he saw it or when it was.  (Id. at 76-77.)  These unidentified, unsubstantiated allegations fail to state a claim of defamation under Ohio law.

**LINDA MARSEE**

1.    **Plaintiff Marsee Has No Basis For Her Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Marsee because she failed her mandatory pre-employment drug test.  In fact, the evidence shows that Marsee was recommended for hire by the Weissman Group, but was disqualified solely because she failed the drug test.  (Weissman Dep. at  205); see also (SPC 809) (showing recommendation as "Yellow"); (SPC 814) (results of positive drug test for marijuana.)

Marsee has no evidence to suggest that Smart Papers did not rely on her failed drug test in its decision not to hire her, or that the drug test somehow was a pretext for age discrimination.  On January 14, 2001, as part of her application for employment with Smart Papers, Marsee signed the Smart Papers' Consent to Drug Screening.  (SPC 819.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.; Marsee Dep. at 31-32, 36, 60.)  Marsee admitted that she had smoked marijuana in late October or early November 2000.  (Marsee Dep. at 33.)  Marsee's drug test came back positive for marijuana.  (SPC 814.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Marsee's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

2.    **Plaintiff Marsee Has No Basis For Her Defamation Claim.**

Similarly, Marsee's defamation claim against Smart Papers cannot survive summary judgment because she cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, she admitted during her deposition that she was not aware of any

false statements made about her by Smart Papers.  (Marsee Dep. at 66-67: "Q: Do you know any statements that were made about you by Smart Papers that you allege are defamatory?  A: I don't know any.")  Marsee's claim of defamation against Smart Papers fails as a matter of law.

## LARRY MCCREARY

**1.    Plaintiff McCreary Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff McCreary because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by McCreary's former IP manager.  (Weissman Dep. at 160-61.) Significantly, the IP manager who was interviewed by the Weissman Group stated that he would not hire McCreary for employment if he owned his own company.  (SPC 766) ("Q: Would this person be eligible for employment again in your organization? A: Own c[ompany]: No.")  The Applicant Reference Check regarding McCreary included the following negative comments regarding his work performance:

- "needs a lot of attention" (SPC 765)
- "points out problems – bad attitude" (<u>Id.</u>)
- "likes to stir things up – uncomprimise!" [sic] (<u>Id.</u>)
- "unfocused" (<u>Id.</u>)
- "knows job but other things get in way" (<u>Id.</u>)
- "doesn't do job – poor productivity" (<u>Id.</u>)
- "hard to work with – points out everyone's problems" (SPC 766)
- "sticks his nose where it doesn't belong" (<u>Id.</u>)
- "discipline issues: caught cheating on time sheets.  Lied to me[.]  Coded time incorrect[ly." (<u>Id.</u>)

These factors led the Weissman Group to rate McCreary as an overall "RED." (Weissman Dep. at 160-61.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  McCreary cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Matt Stevens, the former IP manager who did not recommend McCreary for employment, gave positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Stevens gave favorable ("GREEN") references to **all** five (5) former IP employees who were older than or the same age as McCreary.  (SP Exh. 4 ¶¶ 2-5.)

1

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| BROERING, DAVID L. | 58 | GREEN |
| CHUPKA, SUSAN D. | 52 | GREEN |
| MILLER, ROBERT E | 50 | GREEN |
| WILKINS, ROBERT S. | 49 | GREEN |
| **MCCREARY, LARRY WAYNE** | **48** | **RED** |

**2.    Plaintiff McCreary Has No Basis For His Defamation Claim.**

Similarly, McCreary's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, McCreary bases his defamation claim on: 1) alleged comments by the current Smart Papers' Chief Operating Officer, Dan Maheu, made to IP employees a meeting in which Maheu mentioned that applicants for Smart Papers would have to take a drug test; 2) the comments of McCreary's former IP manager reflected in his Applicant Reference Check; and 3) a newspaper article where Dan Maheu is quoted as saying "smart people tend to do that." (McCreary Dep. at 91-94, 113, 127-129.)

The first comment is simply a statement of fact, while the second reflects alleged defamatory comments by someone who did not work for Smart Papers.  Finally, the newspaper article referred to by McCreary is simply a reference to the Company's new workforce, expressing an opinion without any defamatory meaning.  (See McCreary Dep. Ex. 9 (attached hereto).)  These unspecified and unsubstantiated comments do not rise to the level of defamation, and McCreary's claim should be dismissed as a matter of law.

<u>ROSS MCKAY</u>

1.    **Plaintiff McKay Has No Basis For His Age or Disability
Discrimination Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff McKay because the

Weissman Group gave him an overall  "RED" rating based on his unfavorable individual

interview and the unfavorable reference provided to Smart Papers by McKay's former IP

supervisor.  (Weissman Dep. at 205.)  Significantly, the IP manager who was interviewed by the

Weissman Group stated that he would not hire McKay for his present position.  (SPC 781) ("Q:

Do you recommend this candidate? A: Would not hire for present position.")  The Applicant

Reference Check regarding McKay included the following negative comments regarding his

work performance:

- "meets expectation in skills, but doesn't use them" (SPC 780)
- "has the ability; Does not do; Does not learn"  (<u>Id.</u>)
- "question that his quality checks are done" (<u>Id.</u>)
- "does things ½; not focused on doing a good job" (<u>Id.</u>)
- "does as little as nec[essary] to get by" (<u>Id.</u>)
- "I'll tell him that mach[ine] running too slowly.  He'll speed it up; purposefully mess up to show me" (<u>Id.</u>)
- "questionable honesty" (<u>Id.</u>)
- "withholds info[rmation]" (<u>Id.</u>)
- "agitator; trouble maker" (SPC 781)
- "discipline for safety" (<u>Id.</u>)
- "sees the co[mpany] and [management] as the enemy" (<u>Id.</u>)

These factors led the Weissman Group to rate McKay as an overall "RED."  (Weissman

Dep. at 205.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its

employment decisions.[1/]  McKay cannot prove otherwise, or that these documented reasons for

---

1/    In addition to the fact that McKay cannot rebut the legitimate non-discriminatory reasons detailed above for Smart Papers' employment decision, McKay also cannot make out a *prima facie* case of disability discrimination under either the ADA or Ohio's anti-disability discrimination statute.  Specifically, as explained in Section IV of Smart

its employment decision are a pretext for age discrimination.  Indeed, Bobby Caldwell—age 49

in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend McKay for

employment, gave numerous positive references for former IP employees, regardless of the

applicant's age.  As the following chart demonstrates, Mr. Caldwell gave favorable ("GREEN")

or acceptable ("YELLOW") references to 16 former IP employees who were older than or the

same age as McKay.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| LANE, JESSIE T | 60 | GREEN |
| DEBOARD, DONALD N. | 59 | GREEN |
| HOWARD, RUSSELL | 58 | YELLOW |
| MCINTOSH, MARK | 58 | YELLOW |
| SCHMIDLIN, ROY L | 56 | GREEN |
| HOUSTON, ELDON E. | 55 | YELLOW |
| BURKE, MILLARD R. | 54 | GREEN |
| MILLER JR, HARGIS | 53 | GREEN |
| EIKELBERGER, GERALD L. | 52 | YELLOW |
| FLICK, JERRY | 51 | GREEN |
| CHITWOOD, CONEY D. | 50 | GREEN |
| GREENE, SONJA M. | 49 | GREEN |
| HENSLEY, GARY | 48 | GREEN |
| HOLLAND, CARL E | 48 | GREEN |
| LAKES, JAMES R | 48 | GREEN |
| **MCKAY, ROSS** | **48** | **RED** |
| SHIFFLETT, DARRELL | 48 | GREEN |

## 2.    Plaintiff McKay Has No Basis For His Defamation Claim.

Similarly, McKay's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.

---

Papers' Memorandum, McKay: 1) does not meet the definition of "disability" under either federal or state law because he does not have a physical or mental impairment that substantially limits a major life activity; 2) is not otherwise qualified for the position, and 3) has produced no evidence that Smart Papers had any knowledge of his alleged disability.  For these independent reasons, his claim for disability discrimination should be dismissed as a matter of law.

Among other things, he admitted during his deposition that he never heard anybody at Smart Papers make a false statement about him. (McKay Dep. at 68) ("Q: Have you ever heard anybody from Smart Papers say anything defamatory against you? A: No.") McKay's defamation claim fails as a matter of law.

<u>**DAVID MILLER**</u>

   **1.    Plaintiff Miller Has No Basis For His Age or Disability Discrimination
          Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Miller because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that he otherwise would have been recommended for employment by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at 208) (discussing Miller: "Q: Was Mr. Miller recommended?  A: He would have been had he not tested positive for drugs."); <u>see also</u> (SPC 826) (results of positive drug test for cocaine.)

Plaintiff Miller has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 12, 2001, as part of his application for employment with Smart Papers, Miller signed the Smart Papers' Consent to Drug Screening.  (SPC 835.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (<u>Id.</u>)  In his deposition, Miller did not deny that he has used drugs and has no evidence to refute the fact that Smart Papers relied on the results of his positive drug test in making its employment decision about him.  (Miller Dep. at 14-15.) Miller's drug test came back positive for cocaine.  (SPC 826.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age or alleged disability.  Accordingly, Miller's age and disability discrimination claims cannot survive and summary judgment should be granted to Smart Papers

as a matter of law.[1]

**2.    Plaintiff Miller Has No Basis For His Defamation Claim.**

Similarly, Miller's defamation claim against Smart Papers cannot survive summary judgment.  Miller cannot satisfy any of the essential elements of defamation under Ohio law.  In his deposition, Miller could not identify any false and defamatory statements about him that were published by Smart Papers with the requisite degree of fault and which cause him injury.  Indeed, when asked in his deposition whether he knew about any disparaging comments made by any supervisors or managers at Smart Papers, he admitted that  "I didn't know any supervisors or managers from Smart Papers."  (Miller Dep. at 74.)  As such, his defamation claim fails as a matter of law.

---

[1]    In addition, as explained in Section IV of Smart Papers' Memorandum, Miller's disability claim fails because: 1) he is not otherwise qualified for his position; and 2) he has failed to produce any evidence that Smart Papers knew, or should have known, about his alleged disability.

<u>**FREDERICK OGG**</u>

**1.      Plaintiff Oggs Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Ogg because the Weissman Group gave him an overall  "RED" rating based on the unfavorable reference provided to Smart Papers by Ogg's former IP manager.  (Weissman Dep. at 208-09.) Significantly, the IP manager who was interviewed by the Weissman Group stated that she would not hire Ogg for employment if she owned her own company, (SPC 843) ("Q: Would this person be eligible for employment again in your organization? A: No."), and ultimately did not recommend Ogg for employment.  (<u>Id.</u>)  ("Q:  Do you recommend this candidate?  A:  No.") The Applicant Reference Check regarding Ogg included the following negative comments regarding his work performance:

- regarding productivity, "moves very slow" (SPC 842)
- "he will argue or question about certain circumstances more so when he's subcrew l[eader]" (SPC 843)
- "complain[s] about how his pulp comes in" (<u>Id.</u>)
- "his pace and productivity is so slow [--] not sure why he's so slow" (<u>Id.</u>)

These factors led the Weissman Group to rate Ogg as an overall "RED."  (Weissman Dep. at 208-09.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Ogg cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for age discrimination.  Indeed, Julie Smith, the former IP manager who did not recommend Ogg for employment, gave positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Ms. Smith gave favorable ("GREEN") references to 2 other former IP employees who were older than or the same age as Ogg.  (<u>Id.</u> ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------------------|-----------|
| JOHNSON, KENNETH OSCAR | 57 | GREEN |
| **OGG, FREDERICK S** | **54** | **RED** |
| YOUNG, CHARLES KENNETH | 54 | GREEN |

**2.      Plaintiff Ogg Has No Basis For His Defamation Claim.**

Similarly, Ogg's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.

Ogg's claim rests solely on his assertion that "younger people" were hired, and he knows of no

statements made by Smart Papers that he claims are defamatory or false.  (Ogg Dep. at 98-99.)

Because no basis in facts exists for his claim, it should be dismissed as a matter of law.

**<u>JOHN PARSLEY</u>**

As set forth in Section I of this memorandum, Smart Papers maintains that Plaintiff Parsley should be dismissed from this action pursuant to Federal Rule 37 for failing to respond to Defendants' discovery requests and failing to attend his noticed deposition. As a result, Parsley's age discrimination and defamation claims should be dismissed as Parsley has produced no evidence to support either of his claims.

Nevertheless, there is undisputed evidence that Smart Papers did not hire Plaintiff Parsley because the Weissman Group gave him an overall "RED" rating based on his individual interview and the unfavorable reference provided to Smart Papers by Parsley's former IP supervisor. (Weissman Dep. at 209.) Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend Parsley for employment at Smart Papers. (SPC 858) ("Q: Do you recommend this candidate? A: No.") The Applicant Reference Check regarding Parsley included the following negative comments regarding his work performance:

- "not a lot of involvement in dep[artment]" (SPC 857)
- "gets work done; depends on his partner to get things done" (<u>Id.</u>)
- "has some attendance prob[lems]; verbal warnings; some relief issues" (<u>Id.</u>)
- "relief issues cause some prob[lems]; when addressed he'll change a little while then go back" (SPC 858)
- "dependability—change a little then go back to old habits" (<u>Id.</u>)

These factors led the Weissman Group to rate Parsley as an overall "RED." (Weissman Dep. at 209.) Smart Papers relied on these legitimate non-discriminatory reasons in making Smart Papers' employment decisions. Parsley cannot prove otherwise, or that these documented reasons for its employment decisions are a pretext for age discrimination. Indeed, Bill Croucher—age 40 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Parsley for employment, gave numerous positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Parsley was

the youngest hourly employee who reported to Mr. Croucher, and Mr. Croucher gave favorable

("GREEN") or acceptable ("YELLOW") references to 14 of the 17 former IP employees who

were older than Parsley.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| KLOCK JR., WALTER E. | 60 | GREEN |
| BAKER, JOHN M. | 55 | GREEN |
| FISHER, KENNETH C. | 55 | RED |
| MELLOTT, CORDELL W | 54 | GREEN |
| TURNER, GILMORE L. | 54 | RED |
| METCALF, WESLEY | 53 | GREEN |
| WOODS, EDDIE | 50 | GREEN |
| NULL, MICHAEL A | 49 | GREEN |
| STANIFER, TERRY L | 49 | GREEN |
| JACKSON, GEORGE D. | 48 | GREEN |
| CALIHAN, DAVID G. | 46 | GREEN |
| HUBBARD, GREEN B. | 46 | GREEN |
| CHITWOOD, DAVID L. | 45 | GREEN |
| COOK, GARRY L. | 45 | RED |
| FATH, JOHN STEWART | 45 | GREEN |
| BALDWIN, RICK | 44 | GREEN |
| SPENNY, MIKE R | 44 | GREEN |
| **PARSLEY, JOHN R** | **40** | **RED** |

Accordingly, Parsley's claims for age discrimination cannot survive and summary

judgment should be granted to Smart Papers as a matter of law.  In addition, Parsley has

presented no evidence in support of his defamation claim.

**<u>JAMES PAXTON</u>**

**1.    Plaintiff Paxton Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Paxton because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Paxton's former IP manager. (Weissman Dep. at 210.) Significantly, the IP manager who was interviewed by the Weissman Group characterized Paxton's behavior as "explosive" based on at least one incident where Paxton "cussed me out for calling him [at home] and asking for help" back at the Mill.[1/] (SPC 873.) In addition, the Applicant Reference Check regarding Paxton included the following negative comments regarding his work performance:

- "resistant to doing things that he doesn't see the benefit of" (SPC 872)
- "won't come in off shift" (<u>Id.</u>)
- "fair worker, not outstanding" (<u>Id.</u>)
- "bad attitude – tendency to explode" (SPC 873)
- "volatile – speaks his opinion but people are afraid to talk to him" (<u>Id.</u>)

Based on these factors, especially the concerns raised about his temper, the Weissman Group rated Paxton as an overall "RED." (Weissman Dep. at 210.) Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions. Paxton cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for age discrimination. Indeed, Ted Von Bargen—age 40 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who provided the reference for Paxton to the Weissman Group, gave

---

[1/]    Paxton himself testified that, in the fall or winter of 2000, after a late night, he received a phone call to report to work because of a "situation." (Paxton Dep. at 30.) Paxton refused, told his supervisor, "F-U, I'm not coming in, good-bye," "slammed the phone down and went to bed." (<u>Id.</u> at 32.) When he reported to work later that day, his manager told him that Paxton's behavior "will never happen again." (<u>Id.</u> at 31.) Paxton replied, "you're right, it won't, just please don't call me because I won't come in." (<u>Id.</u>)

numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Von Bargen gave favorable ("GREEN") or acceptable ("YELLOW") references to 31 of the 37 former IP employees who were older than or approximately the same age as Paxton.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| JOHNS, JAMES E. | 62 | GREEN |
| BORN, JOSEPH O. | 61 | GREEN |
| RATLIFF, JACK R | 61 | GREEN |
| CONGLETON, DAVID LEE | 59 | GREEN |
| SPICER, DAVID LEE | 59 | GREEN |
| HICKS, PEARL | 57 | RED |
| SHACKELFORD, ARTHUR R | 57 | YELLOW |
| THOMAS, MICHAEL LEROY | 57 | GREEN |
| COMBS, JOSHUA E. | 56 | RED |
| HARRIS, DONALD L. | 56 | GREEN |
| JORDAN, JOHNNY | 56 | GREEN |
| STEWART, LEONARD | 55 | RED |
| COFFMAN, STANLEY R. | 54 | GREEN |
| HARPER, EDDIE L. | 54 | GREEN |
| CLARK, PATRICIA L. | 53 | GREEN |
| JONES, JERRY EDWARD | 53 | GREEN |
| CASTATOR, DALE E. | 52 | YELLOW |
| HITT, CHARLES H. | 52 | GREEN |
| JEFFRIES III, GORDON L. | 52 | GREEN |
| CECERE JR., PETER LOUIS | 51 | GREEN |
| HOUSTON, PAUL A. | 51 | GREEN |
| MARTIN, C. D. | 51 | YELLOW |
| TAULBEE, EVERETT D. | 51 | RED |
| TAYLOR, JIMMY LOU | 51 | GREEN |
| BAKER, JIMMY E. | 50 | GREEN |
| HOWELL, ROY DEAN | 50 | GREEN |
| **PAXTON, DOUGLAS G** | **50** | **RED** |
| REECE, PATRICK ALLEN | 50 | GREEN |
| SCHOELLHAMER, JOHN F | 50 | RED |
| SCHRADIN, JOHN A | 50 | GREEN |
| SHEARER, DALE RICHARD | 50 | GREEN |
| BUCHANAN, RONALD L. | 49 | GREEN |
| COMBS, LARRY | 49 | GREEN |
| ESTRIDGE, GLEN | 49 | GREEN |
| GADD, STEPHEN | 49 | GREEN |
| GLAAB, DAVID E. | 49 | GREEN |
| HOFFMAN, MARVIN P. | 49 | GREEN |

**2.     Plaintiff Paxton Has No Basis For His Defamation Claim.**

Similarly, Paxton's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. The sole basis of Paxton's claim turns on the alleged defamatory comments made by his former IP manager that are reflected on his Applicant Reference Check.  (Paxton Dep. at 73-76.)

2

Because he cannot point to any alleged defamatory comments made about him by any agent or representative of Smart Papers, his claim fails as a matter of law.

<u>**RONALD PENNINGTON**</u>

**1.    Plaintiff Pennington Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Pennington because he failed his mandatory pre-employment drug test.  (Weissman Dep. at 210) (discussing Pennington: "He tested positive for drugs."); <u>see also</u> (SPC 892) (results of positive drug test for marijuana.)

Pennington has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 11, 2001, as part of his application for employment with Smart Papers, Pennington signed the Smart Papers' Consent to Drug Screening.  (SPC 900.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (<u>Id.</u>)  Pennington admitted in his deposition that he had used marijuana sometime in the latter part of 2000, on a weekly basis.  (Pennington Dep. at 22-23.)  Pennington's drug test came back positive for cocaine.  (<u>Id.</u>; SPC 892.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Pennington's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

**2.    Plaintiff Pennington Has No Basis For His Defamation Claim.**

Similarly, Pennington's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.  Among other things, he admitted during his deposition that he was not aware of any false statements made about him by Smart Papers.  (Pennington Dep. at 62) ("Q: Do you know of any

statement that were made about you by someone from Smart Papers or Sun Capital that you allege are defamatory?  A: No.")  Pennington's defamation claim fails as a matter of law.

**<u>DAVID RATLIFF</u>**

As set forth in Section I of this memorandum, Smart Papers maintains that Plaintiff Ratliff should be dismissed from this action pursuant to Federal Rule 37 for failing to respond to Defendants' discovery requests and failing to attend his noticed deposition.  Significantly, on August 15, 2003, counsel for Plaintiffs sent Defendants' counsel a letter stating "please be aware that . . .David Ratliff [has] indicated that [he] would like to drop out of the lawsuit," yet Plaintiffs' counsel did not seek to dismiss him from this lawsuit.  Ratliff's age discrimination and defamation claims should be dismissed as Ratliff has produced no evidence to support either of his claims.

Nevertheless, there is undisputed evidence that Smart Papers did not hire Plaintiff Ratliff because he failed his mandatory pre-employment drug test.  (Weissman Dep. at 211) (discussing Ratliff: "Tested positive for drugs."); <u>see also</u> (SPC 908) (results of positive drug test for marijuana.)  Plaintiff Ratliff has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 10, 2001, as part of his application for employment with Smart Papers, Ratliff signed the Smart Papers' Consent to Drug Screening.  (SPC 916.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.)  Ratliff's drug test came back positive for marijuana. (SPC 908.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, Ratliff's claims for age discrimination cannot survive and summary judgment should be granted to Smart Papers as a matter of law.  In addition, Ratliff has presented no evidence in support of his defamation claim.

1

## DAVID ROBERTSON

**1.      Plaintiff Robertson Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Robertson because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Robertson's former IP manager. (Weissman Dep. at 166-67.) Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Robertson for hire. (SPC 925) ("Q: Do you recommend this candidate? A: No – below [average.]") The Applicant Reference Check regarding Robertson included the following negative comments regarding his work performance:

- regarding safety, "has had 1[,] poss[ibly] 2 incidents last 2 [years] due to carelessness" (SPC 925)
- "not a good worker" (SPC 924)
- "skills below [average]" (Id.)
- "not a good [worker]," "poor quality of work" (Id.)
- "lack of productivity" (Id.)
- problems as team player "because of his w[ork] ethic" (SPC 925)

These factors led the Weissman Group to rate Robertson as an overall "RED." (Weissman Dep. at 166-67.) Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions. Robertson cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for age discrimination. Indeed, James Parker, the former IP supervisor who did not recommend Robertson for employment, gave numerous positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Mr. Parker gave favorable ("GREEN") or acceptable ("YELLOW") references to 9 former IP employees who were older than or the same age as Robertson. (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| ASHER, DANIEL L. | 56 | GREEN |
| BERTSCH, GORDON L. | 54 | GREEN |
| JOHNSON, DONALD J. | 53 | YELLOW |
| CUPP, LARRY | 52 | GREEN |
| MILLER, LOUIS B | 51 | GREEN |
| SHAUCK, DAVID L | 51 | GREEN |
| BAKER JR., CLARENCE G. | 50 | GREEN |
| MULLINS, PASCHAL R | 50 | YELLOW |
| **ROBERTSON, DAVID E** | **49** | **RED** |
| WINKLER, ROGER W. | 49 | GREEN |

**2.      Plaintiff Robertson Has No Basis For His Defamation Claim.**

Similarly, Robertson's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Robertson testified he did not know of any alleged defamatory statements made by Smart Papers. (Robertson Dep. at 85) ("Q:  Do you know . . . any defamatory statements made about you by a Smart Papers or Sun Capital representative?  A:  Directly?  Yes.  A: No.").  Because he could not identify any statements by Smart Papers made with the requisite degree of fault and which caused him injury, Robertson's defamation claim fails as a matter of law.

2

**JAMES RODGERS**

**1.    Plaintiff Rodgers Has No Basis For His Age Or Disability Discrimination Claims.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Rodgers because he failed his mandatory pre-employment drug test.  (Weissman Dep. at 211); see also (SPC 939) (results of positive drug test for cocaine.)

Rodgers has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination. On January 13, 2001, as part of his application for employment with Smart Papers, Rodgers signed the Smart Papers' Consent to Drug Screening.  (SPC 947.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.; Rodgers Dep. at 100-01.)  Rodgers admitted that he had used cocaine. (Rodgers Dep. at 75.)  Rodgers's drug test came back positive for cocaine.[1]  (SPC 939.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Rodgers's age and disability discrimination claims, and summary judgment should be granted to Smart Papers as a matter of law.[2]

**2.    Plaintiff Rodgers Has No Basis For His Defamation Claim.**

Similarly, Rodgers's defamation claim against Smart Papers cannot survive summary

---

1/    Rodgers testified that he did not believe the drug test results were accurate because he had not used cocaine in several years.  (Rodgers Dep. at 75.)  He admitted, however, that he did not make any effort to challenge the results.  (Id. at 75-76, 101-02.)

2/    As explained in more detail in Section IV, Rodgers' disability claim also fails because: 1) he is not otherwise qualified for a position; and 2) he has failed to produce any evidence Smart Papers knew, or should have known, about his disability.

judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law.  Among other things, he could not identify any false statements made about him by anyone at Smart Papers.  (Rodgers Dep. at 117-21.)  Rodgers's claim of defamation against Smart Papers fails as a matter of law.

## WILLIAM RUMPLER

**1.    Plaintiff Rumpler Has No Basis For His Age or Disability Discrimination Claims.**

There is undisputed evidence that Plaintiff Rumpler is claiming that Smart Papers discriminated against him on the basis of his age <u>by hiring him</u>.[1/]  (Rumpler Dep. at 57)  ("Q: So what you're really claiming is that it was discrimination to hire you because you didn't want to be hired, you wanted your severance?  A: "Yeah, I wanted my severance.  I wanted out of there."); (<u>Id.</u> at 28) (Q: "When you were hired on by Smart Papers, did you want to get hired?  A: Not really.  Q: "And why was that?"  A: Because I wanted to get my high school education and get my unemployment and my severance package . . ."); (<u>Id.</u> at 29) (testifying that he was upset when he got an offer from Smart Papers.)  These allegations are absurd and cannot form the basis for an age or disability discrimination claim.

Nevertheless, Rumpler (age 50 in February 2001) contends that two substantially younger people were hired into the position that he wanted.  To the contrary, the undisputed evidence shows that the ages of the four people who were offered the position of Packing Specialist Rolls, the position Rumpler says he wanted, were 60 years old (Don Whitaker who is Rumpler's brother-in-law), 54 years old (May Turner), 49 years old (Bobby Holland) and 46 years old (Ernie Brooks). (Rumpler Dep. at 49.)  Whitaker, who Rumpler testified "got my job," was substantially older than Rumpler.  (Rumpler Dep. at 64.)  After Whitaker did not accept the position, Rumpler testified that Smart Papers gave his job to Billy Hogg.  (Rumpler Dep. at 66.)

---

1/    In his Complaint, Rumpler alleges that Smart Papers discriminated against him on the basis of his disability.  (Complaint at ¶¶ 124-30)  In his deposition, however, Rumpler admitted that he does not have any disability, but rather is "physical [sic] fit."  (Rumpler Dep. at 22, 78.)  As a result, Rumpler's disability claim is frivolous and summary judgment should be granted as a matter of law.

Mr. Hogg was 57 years old in February 2001—seven years older than Rumpler. Rumpler further testified that Brooks and Holland had been Packing Specialists at IP and were qualified to perform the job. (Rumpler Dep. at 55-56.) The fact that four individuals—one ten years older, one seven years older, one year younger and one four years younger than Rumpler—got the job that Rumpler wanted does not support his claim of age discrimination and summary judgment should be granted for Smart Papers.

Additionally, it is undisputed that Rumpler was promoted into the position he formerly held at IP within three months of being offered a position with Smart Papers and continues in that position today. (Rumpler Dep. at 10-11, 21.) Promoting an employee to a higher paying job is not an adverse employment action and is further evidence that Smart Papers did not—and does not—discriminate on the basis of age. For all of these reasons, summary judgment should be granted to Smart Papers as to Plaintiff Rumpler's claims of age and disability discrimination.

**2.      Plaintiff Rumpler Has No Basis For His Defamation Claim.**

Similarly, Rumpler's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, he admitted during his deposition that he does not know of any statement made by someone at Smart Papers that harmed him. (Rumpler Dep. at 82) ("Q: But there's nothing that you can think of right now, sitting here today, that somebody at Smart Papers said about you that harmed you, is that correct?" A: "At this moment, I don't know.") Accordingly, Rumpler's defamation claim is meritless, and summary judgment should be granted to Smart Papers as a matter of law.

<u>**BARNEY SANDLIN**</u>

**1.    Plaintiff Sandlin Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Sandlin because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Sandlin's former IP manager and because he falsified his application.  (Weissman Dep. at 212-13.)  In response to the question on the employment application "Have you been disciplined, suspended, or terminated from employment within the last 10 years?", Sandlin referenced a discipline in 2000, but did not note a suspension in 1993 or two verbal reprimands in 1997 and 1999.  (<u>See</u> SPC 970); (Sandlin Dep. Ex. 5 (Smart Papers Application) at 2.)  Additionally, the IP manager who was interviewed by the Weissman Group stated that he would not hire Sandlin for employment if he owned his own company.  (SPC 972) ("Q: Would this person be eligible for employment again in your organization?  A: No.")  The Applicant Reference Check regarding Sandlin included the following negative comments regarding his work performance:

- "excellent [productivity] when in right state of mind; 50/50; otherwise terrible" (SPC 971)
- "poor attitude at best—decent, moody at worst—horrible"  (SPC 972)
- "conflicts with others" (<u>Id.</u>)
- "cursed supervisor out—letter of reprimand" (<u>Id.</u>)
- "removed letter; good employee 6 months back to old ways; new letter for damaging co[mpany] property" (<u>Id.</u>)
- "tried hard to change him over 10 years—hasn't worked" (<u>Id.</u>)
- "below average" (<u>Id.</u>)

These concerns led the Weissman Group to rate Sandlin as an overall "RED." (Weissman Dep. at 212-13.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Sandlin cannot prove otherwise, or that these documented reasons for its employment decision are a pretext for age discrimination.  Indeed, Ed McCoy—

age 53 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend

Sandlin for employment, gave numerous positive references for former IP employees, regardless

of the applicant's age. As the following chart demonstrates, Mr. McCoy gave favorable

("GREEN") or acceptable ("YELLOW") references to 19 former IP employees who were older

than Sandlin. (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| RICHARD, GARRETT | 61 | GREEN |
| RICHARDS, DONALD D | 60 | GREEN |
| JOHNSON, DONALD F. | 59 | GREEN |
| PELSOR, RONALD L | 58 | YELLOW |
| FOX JR., JESSE C. | 57 | YELLOW |
| GLEASON, RANDALL L. | 55 | GREEN |
| HOBSON, JOE R. | 54 | YELLOW |
| CHEEK, TERRY | 53 | GREEN |
| SPAHNI, JAMES CARL | 53 | Red (current) yellow (other) |
| CROUCHER, LLOYD W. | 52 | GREEN |
| JONES, GLADYS A. | 52 | YELLOW |
| SWEENEY, WILLIAM L. | 52 | GREEN |
| COX, GARY R. | 50 | GREEN |
| HALCOMB, BRIAN L. | 50 | GREEN |
| HESS, RICHARD JULIAN | 49 | GREEN |
| PIGG, JOHN | 49 | GREEN |
| BOWLING JR., PALMER | 48 | GREEN |
| BOWLING, WALTER D. | 47 | GREEN |
| RILEY, FRANK L | 47 | GREEN |
| **SANDLIN, BARNEY** | **43** | **RED** |

**2.      Plaintiff Sandlin Has No Basis For His Defamation Claim.**

Similarly, Sandlin's defamation claim against Smart Papers cannot survive summary

judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.

Among other things, he admitted during his deposition that he never knew anybody at Smart

Papers who could make a false statement about him. (Sandlin Dep. at 87) ("Q: Have you ever

heard anybody at Smart Papers use that term, excess baggage? A: I haven't been to Smart

Papers. Q: So you have not heard anybody at Smart Papers use that term? A: No. I don't work

there.")  Sandlin's defamation claim fails as a matter of law.

## PETER SPADA

### 1.    Plaintiff Spada Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Smart Papers did not hire Plaintiff Spada because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that Spada was recommended for hire by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at  213) (discussing Plaintiff Spada: "He would have been [recommended], but he tested positive for drugs."); see also (SPC 986) (results of positive drug test for marijuana).

Spada has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.[1] On January 10, 2001, as part of his application for employment with Smart Papers, Spada signed the Smart Papers' Consent to Drug Screening.  (SPC 994.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.; Spada Dep. at 30, 58.)  Spada admitted that he had smoked marijuana about one week before he applied for employment with Smart Papers.  (Spada Dep. at 38.)  Spada's drug test came back positive for marijuana. (Id. at 37; SPC 994.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Spada's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

---

[1]    Spada admitted in his deposition that the failed drug test was the only reason Smart Papers did not hire him.  (Spada Dep. at 60) ("Q: Do you know of any other reason, other than your failed drug test, that Smart Papers didn't hire you?  A: No other reason, no.")

      **2.**      **Plaintiff Spada Has No Basis For His Defamation Claim.**

Similarly, Spada's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law. Among other things, he admitted during his deposition that he was not aware of any false statements made about him by Smart Papers. (Spada Dep. at 65: "Q: Do you think anyone from Smart Papers has said anything false about you? A: No, no. I never worked for Smart Papers.") Spada's claim of defamation against Smart Papers fails as a matter of law.

<u>EVERETT TAULBEE</u>

**1.     Plaintiff Taulbee Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Taulbee because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Taulbee's former IP manager. (Weissman Dep. at 214.) Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Taulbee for hire. (SPC 1003) ("Q: Do you recommend this candidate? A: No.") The Applicant Reference Check regarding Taulbee included the following negative comments regarding his work performance:

- "no desire to learn – doesn't like to be challenged" (SPC 1002)
- "will take longer when faced w[ith] something he doesn't want to do" (<u>Id.</u>)
- "didn't accomplish task last w[ee]k – just dropped ball" (<u>Id.</u>)
- "poor productivity/poor attitude" (<u>Id.</u>)
- "complains excessively – doesn't like to be challenged" (SPC 1003)
- "catches problems – doesn't report b[ecause] too lazy to be part of solution" (<u>Id.</u>)
- "adversarial – anger toward me [former supervisor] – didn't even have all facts" (<u>Id.</u>)

These concerns led the Weissman Group to rate Taulbee as an overall "RED." (Weissman Dep. at 214.) Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions. Taulbee cannot prove otherwise, or that these documented reasons for Smart Papers' employment decision are a pretext for age discrimination. Ted Von Bargen—age 40 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend Taulbee for employment, gave numerous positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Mr. Taulbee gave favorable ("GREEN") or acceptable ("YELLOW") references to 20 out of 23 former IP employees who were older than or the same age as Taulbee. (<u>Id.</u> ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| JOHNS, JAMES E. | 62 | GREEN |
| BORN, JOSEPH O. | 61 | GREEN |
| RATLIFF, JACK R | 61 | GREEN |
| CONGLETON, DAVID LEE | 59 | GREEN |
| SPICER, DAVID LEE | 59 | GREEN |
| HICKS, PEARL | 57 | RED |
| SHACKELFORD, ARTHUR R | 57 | YELLOW |
| THOMAS, MICHAEL LEROY | 57 | GREEN |
| COMBS, JOSHUA E. | 56 | RED |
| HARRIS, DONALD L. | 56 | GREEN |
| JORDAN, JOHNNY | 56 | GREEN |
| STEWART, LEONARD | 55 | RED |
| COFFMAN, STANLEY R. | 54 | GREEN |
| HARPER, EDDIE L. | 54 | GREEN |
| CLARK, PATRICIA L. | 53 | GREEN |
| JONES, JERRY EDWARD | 53 | GREEN |
| CASTATOR, DALE E. | 52 | YELLOW |
| HITT, CHARLES H. | 52 | GREEN |
| JEFFRIES III, GORDON L. | 52 | GREEN |
| CECERE JR., PETER LOUIS | 51 | GREEN |
| HOUSTON, PAUL A. | 51 | GREEN |
| MARTIN, C. D. | 51 | YELLOW |
| **TAULBEE, EVERETT D.** | **51** | **RED** |
| TAYLOR, JIMMY LOU | 51 | GREEN |

### 2.    Plaintiff Taulbee Has No Basis For His Defamation Claim.

Similarly, Taulbee's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Taulbee testified during his deposition that he based his defamation claim on: 1) the Applicant Reference Check that reflected the comments of his former IP supervisor; and 2) vague rumors he heard from other people about newspaper articles he himself did not read.  (Taulbee Dep. at 77-78, 95-96.)  Because he could not identify any statements by Smart Papers made with the requisite degree of fault and which caused him injury, Taulbee's defamation claim fails as a matter of law

**ROBERT THOMAS**

**1.    Plaintiff Thomas Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Thomas because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Thomas' former IP manager.  (Weissman Dep. at 214-15.)  Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Thomas for employment at Smart Papers.  (SPC 1019a ) ("Q: Do you recommend this candidate? A: No.") The Applicant Reference Check regarding Thomas included the following negative comments regarding his work performance:

- "doesn't want to learn" (Id.)
- "not open to change" (SPC 1019)
- "worst operator" (Id.)
- "quality poor" (Id.)
- "mistakes—leading cause" (Id.)
- "below average [in excellence oriented]" (Id.)
- "average [in productivity]" (Id.)
- "rough edges [in team player]" (SPC 1019a)

These factors led the Weissman Group to rate Thomas as an overall "RED."  (Weissman Dep. at 214-15.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Thomas cannot prove otherwise, or that these documented reasons for Smart Papers' employment decisions are a pretext for age discrimination.  Indeed, Tom Jones— age 59 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Thomas for employment, gave positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Jones gave favorable ("GREEN") or acceptable ("YELLOW") references to 3 former IP employees who were older than or the same age as Thomas.  (Id. ¶¶ 2-5.)

1

| NAME | AGE AS OF 2/1/01 | Reference |
|------|---|-----------|
| WAHL, LAWRENCE | 59 | Green (current) Red (other) |
| ASHER, RAYMOND | 58 | GREEN |
| GROGG, FREEMAN N. | 58 | GREEN |
| **THOMAS, ROBERT W.** | **58** | **RED** |

    **2.**       **Plaintiff Thomas Has No Basis For His Defamation Claim.**

Similarly, Thomas' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. In his deposition, Thomas could not identify any false and defamatory statements about him that were published by Smart Papers with the requisite degree of fault and which cause him injury. Indeed, he admitted that "I do not know anyone from Smart." (Thomas Dep. at 77.). As such, his defamation claim fails as a matter of law.

<u>**THERESA TOLBERT**</u>

    **1.      Plaintiff Tolbert Has No Basis For Her Age Discrimination Claim.**

    There is undisputed evidence that Smart Papers did not hire Plaintiff Tolbert because she failed her mandatory pre-employment drug test.  (Weissman Dep. at 216); <u>see</u> <u>also</u> (SPC 1032) (results of positive drug test for cocaine.)

    Tolbert has no evidence to suggest that Smart Papers did not rely on her failed drug test in its decision not to hire her, or that the drug test somehow was a pretext for age discrimination. On January 15, 2001, as part of her application for employment with Smart Papers, Tolbert signed the Smart Papers' Consent to Drug Screening.  (SPC 1043.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (<u>Id.</u>; Tolbert Dep. 97.)  Tolbert admitted that she had used cocaine in the past and admitted that "[i]t could have been" in 2000.  (Tolbert Dep. at 97.)  Tolbert's drug test came back positive for cocaine.[1/]  (SPC 1032.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Tolbert's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

    **2.      Plaintiff Tolbert Has No Basis For Her Defamation Claim.**

    Similarly, Tolbert's defamation claim against Smart Papers cannot survive summary judgment because she cannot satisfy any of the essential elements of a defamation claim under

---

[1/]    During her deposition, Tolbert testified that she did not believe the drug test was accurate.  (Tolbert Dep. at 66.)  She admitted, however, that she did not make any effort to challenge the results.  (<u>Id.</u> at 66-68, 98-99.)

Ohio law.  Among other things, she admitted during her deposition that she was not aware of any false statements made about her by Smart Papers.[2]  (Tolbert Dep. at 105-06: "Q: Do you know any alleged defamatory statements or statements that are untrue about you that were made by anyone from Sun Capital or Smart Papers?  A: No.  All I know is what was on the reference paper that I seen.")  The reference provided by her former IP supervisor, who was employed by IP when he provided the reference, cannot constitute a defamatory statement by anyone at Smart Papers.  Tolbert's claim of defamation against Smart Papers fails as a matter of law.

---

[2]     In fact, Tolbert testified that the only disparaging comments she had ever heard at the Mill were spoken by fellow Plaintiffs Gill and Heinrich  (See Tolbert Dep. at 76-78.)

## JERRY TURLEY

### 1. Plaintiff Turley Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Smart Papers did not hire Plaintiff Turley because he failed his mandatory pre-employment drug test. In fact, the evidence shows that Turley was rated "YELLOW" by the Weissman Group, but was disqualified solely because he failed the drug test. (Weissman Dep. at 216) (discussing Turley: "He scored a yellow. However, he tested positive for drugs."); see also (SPC 1052) (results of positive drug test for marijuana.)

Turley has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination. On January 15, 2001, as part of his application for employment with Smart Papers, Turley signed the Smart Papers' Consent to Drug Screening. (SPC 1062.) That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC." (Id.; Turley Dep. at 21-22.) Turley admitted that he had smoked marijuana the day before his January 22, 2001 drug test, even though he knew he was going to be drug tested. (Turley Dep. at 25, 48.) Turley's drug test came back positive for marijuana. (Id. at 24-25; SPC 1052.) As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age. Accordingly, there are no genuine issues of material fact in dispute regarding Turley's age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

### 2. Plaintiff Turley Has No Basis For His Defamation Claim.

Similarly, Turley's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of a defamation claim under Ohio law. Among other things, he admitted during his deposition that he was not aware of any

false statements made about him by Smart Papers.  (Turley Dep. at 54: "Q: Do you think anyone from Smart Papers has said anything false or negative about you?; A: Not that I know of, other than, you know, I mentioned the comment Dan Mahue [sic] had made.")  With regard to Mr. Maheu, Turley was referring to his earlier testimony that he had heard that Mr. Maheu once made a comment at a county fair that he "couldn't believe how many bandanas he saw."  (Id. at 34.)  Even if Mr. Maheu did make this comment, it is not defamatory and has nothing to do with Turley.  (Id. at 54) testifying that Mr. Mahue had never seen him wearing a bandana).  Turley's claim of defamation against Smart Papers fails as a matter of law.

**<u>RONALD TURNER</u>**

**1.      Plaintiff Turner Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Turner  because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by his former IP manager.  (Weissman Dep. at 216-217.)  Significantly, in response to the question "Would this person be eligible for employment again in your organization?," Turner's supervisor at IP responded "no" and also recommended that Turner not be hired.  (SPC 1069) ("Q:  Do you recommend this candidate?  A:  No – below [average.]")  The Applicant Reference Check regarding Turner included the following negative comments regarding his work performance:

- "no mech[anical] apt[itude] at all" (SPC 1068)
- "do [sic] what he can to get out of [paper] roll changes" (<u>Id.</u>)
- "has difficulty getting along with others (SPC 1069)
- "lazy – rubs people wrong way" (<u>Id.</u>)
- "no initiative" (<u>Id.</u>)

These factors as well as several other comments related to Turner's relationship with co-workers led the Weissman Group to rate Plaintiff Turner as an overall "RED."  (Weissman Dep. at 217.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  Turner cannot prove otherwise, or that these documented reasons for Smart Papers' employment decisions are a pretext for age discrimination.  Indeed, Tom Weiser—age 44 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Turner for employment, gave positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Weiser gave favorable ("GREEN") or acceptable ("YELLOW") references to 5 former IP employees who were older than or approximately the same age as Turner.  (<u>Id.</u> ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| MARCUM, HERBERT | 63 | GREEN |
| BAKER, ROGER E. | 60 | GREEN |
| WHITAKER, DONALD L. | 60 | YELLOW |
| BOGGS, JAMES MELVIN | 57 | GREEN |
| **TURNER, RONALD E.** | **56** | **RED** |
| GLORE, LARRY N. | 55 | GREEN |

**2.    Plaintiff Turner Has No Basis For His Defamation Claim.**

Turner's defamation claim cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law.  During his deposition, Turner stated that his defamation claim against Smart Papers was based solely on help wanted advertisements that Smart Papers ran in a local paper.  (Turner Dep. at 113.)  Turner considered these advertisements defamatory because Smart Papers apparently was paying a lower wage than when Turner worked at IP, but the advertisements made no reference whatsoever to Turner personally.  (Id.)  These allegations do not suffice for a defamation claim in Ohio, and Smart Papers is entitled to judgment as a matter of law.

## PETER VOLZ

### 1.    Plaintiff Volz Has No Basis For His Age Discrimination Claim.

There is undisputed evidence that Plaintiff Volz received a "RED" rating from the reference provided to Smart Papers by his former IP supervisor.  Significantly, the IP manager who was interviewed by the Weissman Group did not recommend Volz for employment at Smart Papers.  (SPC 1084 ) ("Q: Do you recommend this candidate? A: No.")  The Applicant Reference Check regarding Volz included the following negative comments regarding his work performance:

- "tech—below average" (SPC 1083)
- "definite lack of knowledge" (Id.)
- makes "little effort" to add to his knowledge (Id.)
- "adequate [in excellence oriented]—just enough to get by" (Id.)
- "just enough to get by [in productivity]" (Id.)

The IP supervisor who did not recommend Volz for employment with Smart Papers was James Parker, and Parker relied on these legitimate non-discriminatory reasons in making his recommendation to Smart Papers.  Volz cannot prove otherwise, or that these documented reasons for his recommendation are a pretext for age discrimination.  Parker, who did not recommend Volz for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Parker gave favorable ("GREEN") or acceptable ("YELLOW") references to 6 of the 8 former IP employees for whom he provided references who were older than or the same age as Volz.  (SP Exh. 4 ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|-----------|
| ASHER, DANIEL L. | 56 | GREEN |
| BROWN, GEORGE D. | 56 | RED |
| BERTSCH, GORDON L. | 54 | GREEN |
| JOHNSON, DONALD J. | 53 | YELLOW |
| ABNER, THOMAS K | 52 | RED |
| CUPP, LARRY | 52 | GREEN |
| MILLER, LOUIS B | 51 | GREEN |
| SHAUCK, DAVID L | 51 | GREEN |
| **VOLZ, FRANCIS A. (Pete)** | **51** | **RED** |

**2.    Plaintiff Volz Has No Basis For His Defamation Claim.**

Similarly, Volz's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. In his deposition, Volz could not identify any false and defamatory statements about him that were published by Smart Papers with the requisite degree of fault and which cause him injury. (Volz Dep. at 48-49, 88-89.)  As such, his defamation claim fails as a matter of law.

**<u>JAMES WHITAKER</u>**

As set forth in Section I of this memorandum, Smart Papers maintains that Plaintiff Whitaker should be dismissed from this action pursuant to Federal Rule 37 for failing to respond to Defendants' discovery requests and failing to attend his noticed deposition.  Significantly, on August 15, 2003, counsel for Plaintiffs sent Defendants' counsel a letter stating "please be aware that . . . James Whitaker [has] indicated that [he] would like to drop out of the lawsuit," yet Plaintiffs' counsel did not seek to dismiss him from this lawsuit.  Whitaker's age discrimination and defamation claims should be dismissed as Whitaker has produced no evidence to support either of his claims.

Nevertheless, there is undisputed evidence that Smart Papers did not hire Plaintiff Whitaker because he failed his mandatory pre-employment drug test.  (Weissman Dep. at 219) (discussing Whitaker: "Positive drug screen."); <u>see also</u> (SPC 1098) (results of positive drug test for marijuana.)  Plaintiff Whitaker has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 10, 2001, as part of his application for employment with Smart Papers, Whitaker signed the Smart Papers' Consent to Drug Screening.  (SPC 1107.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (<u>Id.</u>)  Whitaker drug test came back positive for marijuana. (SPC 1098.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, Whitaker's claims for age discrimination cannot survive and summary judgment should be granted to Smart Papers as a matter of law.  In addition, Whitaker has presented no evidence to support his defamation claim.

**ROBERT WILKINS**

    **1.**    **Plaintiff Wilkins Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff Wilkins because he failed his mandatory pre-employment drug test.  In fact, the evidence shows that Wilkins was recommended for hire by the Weissman Group, but was disqualified solely because he failed the drug test.  (Weissman Dep. at 219) (discussing Wilkins: "positive drug screen"); see also (SPC 1114) (results of positive drug test for marijuana).

Plaintiff Wilkins has no evidence to suggest that Smart Papers did not rely on his failed drug test in its decision not to hire him, or that the drug test somehow was a pretext for age discrimination.  On January 12, 2001, as part of his application for employment with Smart Papers, Wilkins signed the Smart Papers' Consent to Drug Screening.  (SPC 1121.)  That form expressly states that "a positive drug screen will be grounds for my immediate rejection for employment by Smart Papers, LLC."  (Id.)  In his deposition, Wilkins did not deny that he has used drugs and presented no evidence to refute the fact that Smart Papers relied on the results of his positive drug test in making its employment decision about him.  (Wilkins Dep. at 116 and 121) ("Q: Now, whether or not you think that the drug test results are correct, is it your understanding that Smart Papers was going to rely on the drug test results? A: Yeah.")  Wilkins' drug test came back positive for marijuana.  (SPC 1114.)  As detailed previously, Smart Papers rejected each of the 56 salaried and hourly applicants who tested positive for drugs, regardless of the applicant's age.  Accordingly, there are no genuine issues of material fact in dispute regarding Wilkins' age discrimination claim, and summary judgment should be granted to Smart Papers as a matter of law.

**2.      Plaintiff Wilkins Has No Basis For His Defamation Claim.**

Similarly, Wilkins' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, Wilkins states that he does not know anybody at Smart Papers who could make a false statement about him.  (Wilkins Dep. at 109) ("Q: Are you alleging that somebody at Smart Papers has said something false about you to harm you? A: I don't know why they would. They don't even know me.")  Accordingly, Wilkins' defamation claim fails as a matter of law.

<u>**JAMES WILLIS**</u>

     **1.     Plaintiff Willis Has No Basis For His Age Discrimination Claim.**

     There is undisputed evidence that Smart Papers did not hire Plaintiff Willis because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided to Smart Papers by Willis' former IP manager. (Weissman Dep. at 219-20.) Significantly, the IP manager who was interviewed by the Weissman Group stated that he would not hire Willis for employment if he owned his own company. (SPC 1131) ("Q: Would this person be eligible for employment again in your organization? A: No.") The Applicant Reference Check regarding Willis included the following negative comments regarding his work performance:

- "knows what he's suppose to do—doesn't do well" (SPC 1130)
- "hasn't got very good troubleshooting skills" (<u>Id.</u>)
- "fair quality [of work]" (<u>Id.</u>)
- "fair productivity" (<u>Id.</u>)
- [thinks that] "company [is] the enemy" (<u>Id.</u>)
- "hard time dealing with change" (SPC 1131)
- "extended schedule to work on Friday. Upset—said he had plans. Said he didn't care about business" (<u>Id.</u>)
- "below average" (<u>Id.</u>)

     These factors led the Weissman Group to rate Willis as an overall "RED." (Weissman Dep. at 21-20.) Smart Papers relied on these legitimate non-discriminatory reasons in making Smart Papers' employment decisions. Willis cannot prove otherwise, or that these reasons for its employment decision are a pretext for age discrimination. Indeed, Ed McCoy—age 53 in February 2001 (SP Exh. 4 ¶ 6)—the former IP manager who did not recommend Willis for employment, gave numerous positive references for former IP employees, regardless of the applicant's age. As the following chart demonstrates, Mr. McCoy gave favorable ("GREEN") or acceptable ("YELLOW") references to 6 of the 9 former IP employees who were older than or

the same age as Willis.  (<u>Id.</u> ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|---|---|---|
| FOUTS, JAY | 63 | RED |
| RICHARD, GARRETT | 61 | GREEN |
| CAMPBELL, ELMER L. | 60 | RED |
| RICHARDS, DONALD D | 60 | GREEN |
| JOHNSON, DONALD F. | 59 | GREEN |
| VONSTEIN, EDWARD W. | 59 | RED |
| PELSOR, RONALD L | 58 | YELLOW |
| FOX JR., JESSE C. | 57 | YELLOW |
| GLEASON, RANDALL L. | 55 | GREEN |
| **WILLIS, JAMES M.** | **55** | **RED** |

> **2.** **Plaintiff Willis Has No Basis For His Defamation Claim.**

Similarly, Willis' defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, Willis bases his defamation claim on an unidentified newspaper article where a comment was "made on the drug test," (Willis Dep. at 67-69), and "there was some comment, I don't remember how it was, about excess baggage, but I don't remember exactly how it come down." (<u>Id.</u> at 76.)  These unspecified and unsubstantiated comments do not rise to the level of defamation.

**JOHN YORK**

1. **Plaintiff York Has No Basis For His Age Discrimination Claim.**

There is undisputed evidence that Smart Papers did not hire Plaintiff York because the Weissman Group gave him an overall "RED" rating based on the unfavorable reference provided by his former IP supervisor.  (Weissman Dep. at 220.)  Significantly, the IP supervisor who was interviewed by the Weissman Group did not recommend York for employment at Smart Papers. (SPC 1145.)  ("Q: Do you recommend this candidate? A: Would not hire for present position.") Plaintiff York's reference included the following negative comments regarding his work performance:

- "has knowledge; uses it to make it difficult not easy" (SPC 1144)
- "has skills; uses them against company" (Id.)
- "will purposely put machine out of adjustment to make it run poorly for oncoming shift" (Id.)
- "sabotage, [supervisor] personally witnessed-spoke to him as co-worker" (Id.)
- "agitates; irritates; sabotage" (SPC 1145)
- "does unsafe things" (Id.)
- "does not accept responsibility for anything" (Id.)

These factors led the Weissman Group to rate Plaintiff York as an overall "RED." (Weissman Dep. at 220.)  Smart Papers relied on these legitimate non-discriminatory reasons in making its employment decisions.  York cannot prove otherwise, or that these reasons for Smart Papers' employment decision are a pretext for discrimination.  Indeed, Bobby Caldwell—age 49 in February 2001 (SP Exh. 4 ¶ 6)—the former IP supervisor who did not recommend York for employment, gave numerous positive references for former IP employees, regardless of the applicant's age.  As the following chart demonstrates, Mr. Caldwell gave favorable ("GREEN") or acceptable ("YELLOW") references to 8 former IP employees who were older than or the same age as York.  (Id. ¶¶ 2-5.)

| NAME | AGE AS OF 2/1/01 | Reference |
|------|------|------|
| LANE, JESSIE T | 60 | GREEN |
| DEBOARD, DONALD N. | 59 | GREEN |
| HOWARD, RUSSELL | 58 | YELLOW |
| MCINTOSH, MARK | 58 | YELLOW |
| SCHMIDLIN, ROY L | 56 | GREEN |
| HOUSTON, ELDON E. | 55 | YELLOW |
| BURKE, MILLARD R. | 54 | GREEN |
| MILLER JR, HARGIS | 53 | GREEN |
| **YORK, JOHN** | **53** | **RED** |

**2.      Plaintiff York Has No Basis For His Defamation Claim.**

Similarly, York's defamation claim against Smart Papers cannot survive summary judgment because he cannot satisfy any of the essential elements of defamation under Ohio law. Among other things, York testified that he had not heard anybody at Smart Papers make a defamatory statement about him.  (York Dep. at 92.)  ("Q: Was there any body at Smart Papers that said anything harmful about you or that hurt you, someone at Smart Papers? A: No.") York's defamation claim fails as a matter of law.