# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **ELMER CAMPBELL, et al.**, | : | **Case No. C-1-01-527** |
| | : | **J. Beckwith**; Mag J. Hogan |
| Plaintiffs, | : | |
| | : | |
| v. | : | **PLAINTIFFS' CONSOLIDATED** |
| | : | **MEMORANDUM IN OPPOSITION** |
| **INTERNATIONAL PAPER,** | : | **TO DEFENDANT SUN CAPITAL'S** |
| **SUN CAPITAL PARTNERS, INC.,** | : | **MOTION FOR SUMMARY** |
| **SMART PAPERS** | : | **JUDGMENT** _____ |
| | : | |
| Defendants. | : | |

Randolph H. Freking (0009158)
Kelly Mulloy Myers (0065698)
George M. Reul, Jr. (0069992)
FREKING & BETZ
Trial Attorneys for Plaintiffs
215 East Ninth Street
Fifth Floor
Cincinnati, OH  45202
(513) 721-1975

I.    **INTRODUCTION**

This matter is before the Court on Defendant Sun Capital's Motion for Summary Judgment. Defendant Sun Capital's Motion should be denied because Plaintiffs have sufficient evidence to demonstrate the essential elements of all their claims against Sun Capital. This memorandum will address only facts and law relevant to issues raised by Sun Capital in its Motion. Specifically, Sun Capital has sought summary judgment on the basis that it cannot be held liable for the allegations contained in Plaintiffs' Complaint under a single employer, joint employer, and/or agency theory of liability. However, Defendant's Motion must be denied because Plaintiffs have all the necessary evidence to establish that Sun Capital is liable and jointly responsible for the actions of Smart Papers under the single employer or integrated enterprise doctrine. In fact, Plaintiffs can establish all four elements of the test even though that is not required under Sixth Circuit authority. At a minimum, viewing the evidence in a light most favorable to Plaintiffs as required at summary judgment, genuine issues of material fact exist that preclude summary judgment.

The basis for liability for the underlying claims against Smart Papers and Sun Capital is addressed in Plaintiffs' Memorandum in Opposition to Defendant Smart Papers' Motion for Summary Judgment. As Defendant Sun Capital has done, Plaintiffs incorporate by reference the facts and law supporting those claims from that brief.

Plaintiffs respectfully request that this Court deny Defendant Sun Capitals' Motion for Summary Judgment and allow the disputed issues to be resolved at trial. The facts and law supporting Defendant Sun Capital's liability is set forth below.

II.    **FACTS**

    A.    **Background**

    Defendant Sun Capital Partners, Inc. (hereinafter "Sun Capital") is an investment firm

based in Boca Raton, Florida owned by two individuals, Marc Leder and Rodger Krouse.

(Couch Aff. ¶¶ 5, 11, attached to Def. Sun Capital's Mem. Supp. M.S.J.) According to the

company's website, Sun Capital focuses on leveraged buyouts. (Ex. A, attached to Affidavit of

George M. Reul, Jr., hereinafter "GMR Aff.") The clear purpose of Sun Capital is to make

money for the two owners and its investors. Sun Capital states on its website that "Sun Capital

invests in companies typically with the number one or two market position in their industry,

long-term competitive advantages and significant barriers to entry." (*Id.*) The company prides

itself on the "hands on" approach of Sun Capital's management to investment acquisitions, for

example, the direct involvement of owners Krouse and Leder. (*Id.*) "Mr. Krouse has been

involved in all Sun Capital investments and has been **instrumental in managing** Sun Capital's

portfolio companies." (*Id.* (emphasis added).) "Mr. Leder has benn actively involved [in] all of

Sun Capital's investments, as well as in managing its portfolio companies." (*Id.*) According to

Leder, "[t]ight oversight is key in the turnaround business." (Ex. B, attached to GMR Aff.)

    B.    **Sun Capital Created Smart Papers For Specific Purposes Of Its Own**

    Smart Papers was conceived and created by Sun Capital for the specific purpose of

making money for Sun Capital investors by acquiring and operating the Hamilton Mill. The sole

charge of Smart Papers is to make money through the operation of the Mill. (Maheu Dep. at

213.) The individuals responsible for creating Smart Papers and acquiring the Mill are Sun

Capital principals. Steve Liff is a Vice President for Sun Capital. (Couch Aff. ¶ 11.) He was

the chief negotiator who bought the Mill, and negotiated with the city of Hamilton for tax

credits. (*Id.* at 12.) Liff was also responsible for arranging all of Smart Paper's banking and

insurance contacts. (Maheu Dep. at 107.) Bud Terry, the managing director of Sun Capital, was

installed as Smart Papers' first CEO. (Couch Aff. ¶ 12; Ex. C, 1/8/01 letter from Bud Terry to

Hamilton Mill Employees, attached to GMR Aff.) On January 8, 2001, Terry sent a letter to all

the employees of the Mill explaining the process they would have to go through if they wanted a

job with Smart Papers. (*Id.*)[1]

> ### C.    Liff Was Instrumental In Developing And Had Final Approval On The Hiring Process At Issue In This Case.

On January 11, Sun Capital's Liff hired Mary Rita Weissman, to serve as the acting HR

director reporting to him. (Def. Sun Capital Mem. Supp. M.S.J. at 6; Weissman Dep. at 19.)

Liff, in addition to his job at Sun Capital, is a Vice President at Smart Papers. (Couch Dep. at

41.) Weissman was allegedly hired to develop the hiring process to be used at the Mill. Later

that month, Liff was also responsible for hiring Dan Maheu, then the Mill Manager for IP, as a

consultant to Smart Papers. (Couch Aff. ¶14.) Maheu worked directly with Liff regarding the

acquisition of the Mill and getting the business running. (Maheu Dep. at. 30.) Maheu is

currently the Chief Operating Officer, a Vice President, and Board Member for Smart Papers.

(Couch Dep. at 41.)

---

[1]     It is interesting that for the purpose of obtaining summary judgment, Sun Capital has taken the position that Mary Rita Weissman, Smart Papers' human resource director hired by Liff, was solely responsible for developing the hiring process for the Plaintiffs and other IP employees at Mill. (Def. Sun Capital Mem. Supp. M.S.J. at 6.) However, Weissman did not become employed by Smart Papers until January 11. As the attached letter indicates, the applications were distributed to Plaintiffs with a letter from Bud Terry on January 8. (Ex. C, attached to GMR Aff.)

According to Weissman, Liff was instrumental in deciding what criteria allegedly would be used to hire employees. (Weissman Dep. at 37.) Liff and Maheu answered questions about how they planned to operate the Mill and what the management philosophy would be. (*Id.*) She then created a draft profile that she gave to Liff "who made whatever modifications he thought were important." (*Id.*) The process of interviewing the soon-to-be-former IP employees occurred and hiring decisions were made prior to the sale of the Mill being finalized on February 9, 2001. (Maheu Dep. at 126.) After the sale was completed and the Mill was closed, the letters to the former IP employees telling them whether they were getting a job offer also came from Bud Terry. (Ex. D, attached to GMR Aff.) At the same time the Plaintiffs were being rejected for employment at the Mill, Smart Papers placed advertisements in the Cincinnati Enquirer and the Hamilton Journal News on February 11, seeking to hire hourly workers for production positions. (Ex. E, 2/11/01 newspaper advertisements, attached to GMR Aff.) Therefore, the decisions at issue in this case, the failure to hire Plaintiffs and instead hire younger, less qualified people off the street, were made while the Sun Capital principals Liff and Terry were intimately involved as VP and CEO.

**D.    Sun Capital And Smart Papers Have Common Management And Common Ownership.**

Sun Capital and Smart Papers still have several common executives and board members. Significantly, when the decisions were made not to hire the Plaintiffs and to instead place advertisements in the paper for people off the street, Sun Capital's Managing Director Bud Terry was the CEO of Smart Papers. Steve Liff, who is a Vice President with Sun Capital, is still a Vice President of Smart Papers. (Couch Dep. at 41.) Liff also serves on the Board of Managers (equivalent to a Board of Directors) at Smart Papers. (*Id.* at 40; Couch Aff. ¶ 11.) Terry also

4

still serves on Smart Papers' Board of Managers. (*Id.*) Sun Capital's owners, Co-founders, and other two Managing Directors, Marc Leder and Rodger Krouse, also serve on Smart Papers' Board of Managers. (*Id.*) Smart Paper's CFO provides these Sun Capital principals with monthly financial reports on Smart Papers. (Maheu Dep. at 105). In fact, **Smart Papers actually holds its Board meetings at the offices of Sun Capital**. (*Id.* at 31.)

However, the common management ties between the Sun Capital and Smart do not end there. Deryl Couch, who is a Vice President and General Counsel for Sun Capital, is also a Vice President and Assistant Secretary for Smart Papers. (Couch Dep. at 36.) Kevin Calhoun and Michael Kalb are also both Vice Presidents of Sun Capital and Vice Presidents for Smart Papers. (Couch Dep. at 41; *see also*, Ex. A, attached to GMR Aff.)

Sun Capital and Smart Papers are owned by the same people. Krouse and Leder who own all of Sun Capital also own roughly sixty percent of Sun Premium Papers Partners. (Couch Dep. at 111-12.)[2] Sun Premium Papers Partners is nothing more than a shell created by Sun Capital's General Counsel Deryl Couch that acts as the owner of Smart Papers. (Couch Dep. at 39, 138; Couch Aff. ¶ 2.) Sun Premium, which has no employees, is the vehicle for how profits from Smart Papers are distributed. (*Id.* at 43-44.) Couch is also an owner of Smart Papers along with many other Sun Capital principals. (*Id.* at 12.) Kalb, Liff, Calhoun, and Mayank Singh, an Associate with Sun Capital, also have ownership interests in Smart Papers. (*Id.*)

As is clear from this litigation, Sun Capital and Smart Papers have the same legal counsel. (Couch p. 110-11.) Sun Capital is also apparently willing to tout its active role in

---

[2]        According to Couch, a small portion of Krouse and Leder's ownership of Smart Papers may be held in trust for their children. (Couch Dep. at 111.)

buying and operating the Mill publicly when it is convenient for the company to do so.  Articles found on the company's website quote Leder and Liff regarding Sun Capital's involvement at the Mill.  In fact, one of the articles states that "Sun Capital Partners bought the mill in February . . ."  (Ex. B, attached to GMR Aff.)  In another article, according to Liff, acting as a spokesman for Sun Capital:  "Sun Capital intends to operate the mill as Smart Papers after the transaction closes around the end of January . . ."  (Ex. F, article from Sun Capital website, attached to GMR Aff.)  Given the highly integrated management and ownership of Sun Capital and Smart Papers, that statement accurately captures the relationship of these co-Defendants.[3]

## III.  LEGAL ARGUMENT

### A.    Summary Judgment Standard

Summary judgment may only be granted if there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  As the party moving for summary judgment, Defendant bears the burden of showing the absence of a genuine issue of material fact as to at least one element of Plaintiff's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If Defendant meets its burden, Plaintiff must then present evidence that reveals a genuine issue for trial.  *Id.*  This Court must accept Plaintiffs' evidence as true and draw all reasonable inferences in his favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), viewing all facts and inferences drawn therefrom in the light most favorable to Plaintiffs.  *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). When

---

[3]    It is anticipated that for the purpose of obtaining summary judgment, Sun Capital will assert that those articles are inaccurate or that they misquote Sun Capital officers.  However, if the articles were indeed misrepresentations of Sun Capital's role in operating the Mill and Smart Papers, Defendant would not have placed them on their website.  Instead, the evidence demonstrates that the articles accurately reflect Sun Capital's level of involvement at the Mill.

deciding a Rule 56 motion, "although the court should review the record as a whole, it must

disregard all evidence favorable to the moving party that the jury is not required to believe."

*Reeves v. Sanderson Plumbing*, 530 U.S. 133, 151 (2000).  "That is, the court should give

credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendant]

that is *uncontradicted and unimpeached, at least to the extent that that evidence comes from

disinterested witnesses*."  *Id.* (emphasis added).

It is well-recognized that when the motivation, intent, or state of mind of the Defendant

is at issue, summary judgment is rarely appropriate, so that the trier of fact may resolve the

dispute over motive.  *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001) ("that

question -- i.e. the employer's motive - is one rarely susceptible to resolution at the summary

judgment stage); *see also, Canitia v. Yellow Freight System, Inc.*, 894 F.2d 196, 199 (6th Cir.

1990) (every reasonable and favorable inference should be given to Plaintiff's version or

allegations of discriminatory intent).

### B.    Plaintiffs Have Sufficient Evidence To Establish That Sun Capital And Smart Papers Are A Single Employer/Integrated Enterprise.

The Sixth Circuit explained the key concept when determining whether an affiliated

company can be held responsible for the acts of the immediate employer in *Armbruster v. Quinn*,

711 F.2d 1332, 1337 (6th Cir. 1983):

> [T]he most important requirement is that there be sufficient indicia
> of an interrelationship between the immediate corporate employer
> and the affiliated corporation to justify the belief on the part of an
> aggrieved employee that the affiliated corporation is jointly
> responsible for the acts of the immediate employer.

In order to determine whether Sun Capital and Smart Papers can be treated as a single employer

7

(or an integrated enterprise), this Court should be guided by the four part test adopted by the Sixth Circuit. The four part test assesses the degree of: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir. 1997); *Armbruster*, 711 F.2d at 1337. No single factor is conclusive, and there is no requirement that each factor be met. 711 F.2d at 1337-38. Control of labor relations is a key concern. *Id.* However, even in cases where there is no evidence of common control of labor relations, a single employer may still be found. *Id.* at 1338.

Under the facts of this case, Plaintiffs have sufficient evidence to establish all four elements of the single employer test. At a minimum, viewing the evidence in the light most favorable to Plaintiffs as required at summary judgment, disputed issues of fact exist that require the denial of summary disposition in favor of Sun Capital.

### 1.    Plaintiffs Have Evidence Of Interrelated Operations.

Evidence that Sun Capital personnel negotiated and closed the purchase of the Mill, handled all the business and banking contacts, continue to receive monthly financial reports from Smart Papers, and that Smart Papers Board meetings are held at Sun Capital demonstrates an interrelation of operations. *See, Armbruster*, 711 F.2d at 1338. In *Armbruster*, the Sixth Circuit found that an interrelation of operations existed under the single employer test because Pure personnel received financial reports from Syntax, handled banking matters, and negotiated and closed the purchase of Syntax's office building. *Id.* The facts of this case demonstrate that the same interrelation of operations is present.

Sun Capital Vice President Steve Liff negotiated the purchase of the Mill as well as the

tax credits from the city of Hamilton.  (Couch Aff. ¶11.)[4]  Liff was also responsible for arranging

Smart Papers' banking and insurance contacts.  (Maheu Dep. at 107.)  Liff and the Managing

Directors of Sun Capital, Marc Leder, Rodger Krouse, and Bud Terry, all receive monthly

financial reports directly from Smart Papers.  (*Id.* at 105.)  Under the facts of this case, Sun

Capital's claim that Smart Papers has separate bank accounts, record keeping, and offices is not

enough to demonstrate as a matter of law that the two *do not* have an interrelation of operations.

(*See* Def. Sun Capital Mem. Supp. M.S.J. at 9.)  In fact, the evidence establishes that the two

companies share some offices because Smart Papers holds its Board meetings at Sun Capital.

(Maheu Dep. at 31.)  Moreover, while Smart Papers may not co-mingle assets with Sun Capital,

there is no dispute that it was Sun Capital money and Liff's banking contacts that bought the

Mill and help keep it running, respectively.

Finally, Sun Capital's reliance on an unpublished district court case from South Carolina,

*Angel Perez-Huerta v Piedmont Health Care Corp.*, 1981 WL 292 (S.D.S.C. 1981) (attached to

Def. Sun Capital Mem. Supp. M.S.J.,) for the proposition that Sun Capital and Smart Papers

"have completely different missions and purposes" is misplaced.  As COO, Dan Maheu bluntly

admitted that the charge of Smart Papers is exactly the same as Sun Capital, to make money.

(Maheu p. 213.)

Under established Sixth Circuit law, Plaintiffs have sufficient evidence to establish an

issue of fact with regard to the interrelation of operations.  *See, Armbruster*, 711 F.2d at 1338.

---

[4]     It is anticipated that Sun Capital will attempt to argue that Liff and other Sun
Capital principals performed these functions in their capacity with Smart Papers.  However, that
is precisely the point that Smart Papers and Sun Capital should be treated as a single/integrated
employer.  It is impossible to separate the two because they are run by the same people.  (*See
also* Couch Dep. at 36 (Couch also holds positions both with Sun Capital and Smart Papers).)

The fact that Sun Capital's Liff negotiated the purchase of the mill, handled all the banking and insurance contacts, and receives monthly financial reports along with others from Sun Capital is sufficient to demonstrate the interrelation of operations.

**2.    Common Management Ties Are Clearly Established Between Sun Capital And Smart Papers.**

Despite Sun Capital's effort to convince this Court otherwise, there is no reasonable dispute under established law that common management exists. As the Sixth Circuit cited in *Swallows*, there is a long line of cases that found common management with less than the facts demonstrated in this case. 128 F.3d at 994-995 (citing *Armbruster*, 711 F.2d at 1339 (finding common management where president of one company was also director and officer of the other); *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987) (companies shared common president); *EEOC v. Dolphin Cruise Line, Inc.*, 945 F. Supp. 1550, 1554 (S.D. FL 1996) (companies shared common president, at least three individuals sat on board of directors of both companies, and managers of two companies assisted each other in daily operations); *Boyd v. James S. Hayes Living Health Care Agency, Inc.*, 671 F. Supp. 1155, 1164 (W.D. Tenn. 1987) (first company's board selected second company's board, and first company's executive director served as board chairman of second company)).

In this case it is undisputed that Sun Capital principals Liff and Terry were instrumental in getting the Mill off the ground for Smart Papers as its Vice President and CEO, respectively. In fact, the hiring of Dan Maheu and HR Director Weissman, the establishment of the hiring process, the decisions not to hire the Plaintiffs, and the decision to hire people off the street all occurred when Liff and Terry were active in Smart Papers on a day to day basis. For example, CEO Terry sent out the application packets to the Plaintiffs on January 8, 2001, and the letters

dated February 9, 2001, indicating that they would not be hired. (Exs. C and D, attached to GMR Aff.) Liff hired and supervised Weissman, helped design the hiring process, and made the final modifications to that process. (Weissman Dep. at 19, 37.)

Further, Sun Capital and Smart Papers *still* have several common executives and board members. Liff, who is a Vice President with Sun Capital, is still a Vice President of Smart Papers. (Couch Dep. at 41.) Liff also serves on the Board of Managers (equivalent to a Board of Directors) at Smart Papers. (*Id.* at 40; Couch Aff. ¶ 11.) Sun Capital Co-Managing Director Terry also still serves on Smart Paper's Board of Managers. (*Id.*) Sun Capital's owners, Co-founders, and other two Managing Directors, Marc Leder and Rodger Krouse, also serve on Smart Paper's Board of Managers. (*Id.*) Deryl Couch, who is a Vice President and General Counsel for Sun Capital, is also a Vice President and Assistant Secretary for Smart Papers. (Couch Dep. at 36.) Kevin Calhoun and Michael Kalb are also both Vice Presidents of Sun Capital and Vice Presidents for Smart Papers. (Couch Dep. at 41; *see also*, Ex. A, attached to GMR Aff.)

Viewing this evidence in the light most favorable to Plaintiffs, there clearly is sufficient evidence to establish common management.

### 3. Plaintiffs Can Establish That Sun Capital Had Control Over Labor Relations When The Key Decisions At Issue In This Case Were Made.

Although it is not an absolute requirement in order to find a single employer, Plaintiffs have sufficient evidence to establish the "control over labor relations" element. Once again, the *Swallows* court's analysis is instructive in demonstrating that Smart Papers and Sun Capital meet the labor relations element of the single employer test. 128 F.3d at 995-96. First, the court recognizes that an important factor is whether Sun Capital was involved in the key decisions at

11

issue in this case, e.g., the decision not to hire Plaintiffs. *Id.* (citing *Frank v. U.S. West*, 3 F.3d 1357, 1363 (10th Cir. 1993)). In this case, it is undisputed that the letter advising Plaintiffs that they would not be hired went out under Sun Capital's Bud Terry's name. (Ex. D, attached to GMR Aff.) That fact alone is sufficient to establish a triable issue in regard to whether Sun Capital had control over labor relations.[5] Moreover, Sun Capital's Liff hired Maheu, the COO and plant manger, and HR Director Weissman. *See, Swallows*, 128 F.3d at 995 (citing *Armbruster*, 711 F.2d at 1338-39 (parent company controlled labor relations of subsidiary where parent hired subsidiary president and plant manager, approved plaintiff's hiring and was involved in her termination)).

In this case, in addition to Terry sending the letter to Plaintiffs, Liff was instrumental in developing the hiring process that directly affected the Plaintiffs. (Weissman Dep. at 37.) Terry was still the CEO when Smart Papers ran advertisements in the paper to hire people off the street. (*See* Ex. E, attached to GMR Aff.) Moreover, as in *Armbruster*, Sun Capital did not just hire Smart Paper's president, Terry, Sun Capital's Co-Managing Director, **was the CEO of Smart Papers**. There is no doubt that Sun Capital principals were also responsible for selecting Smart Paper's current CEO Tim Needham. (*See* Couch Aff. ¶15.)

Therefore, under the facts of this case, there is substantial evidence to conclude that Sun

---

[5] Sun Capital relies on Deryl Couch's self serving affidavit to suggest that Terry really had no involvement in the decisions at all. However, that disputed affidavit testimony cannot serve as a legitimate basis for this Court to grant summary judgment. *See, Reeves*, 530 U.S. at 151 (finding that at summary judgment "the court should give credence to the evidence favoring [Plaintiffs] as well as that evidence supporting [Defendant] that is *uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.*" *Id.* (emphasis added). Clearly, Couch is not a disinterested witness because he is General Counsel for Sun Capital. Moreover, the fact the letters actually went out under Terry's signature creates a genuine dispute regarding the fact of his direct involvement.

Capital had enough involvement in the control over the labor relations decisions at issue in this case to establish it as a single employer with Smart Papers. Total control or ultimate authority over hiring decisions is not required. *Swallows*, 128 F.3d at 996 (quoting *Armbruster*, 711 F.2d at 1338). Rather Liff and Terry's close involvement in the hiring process and decisions, even if they did not ultimately make the decision, is enough, particularly, considering that Sun Capital people hired (and in some cases *was*) the management team at Smart Papers. At a minimum, there are sufficient issues of fact that require that Sun Capital's Motion for Summary Judgment be denied.

> **4.      Common Ownership Exists, and the Ownership Relationship Is Obvious Because Sun Capital Created Smart Papers for Specific Purposes of its Own.**

In *Armbruster*, the court held that the fourth factor of the integrated enterprise test could be demonstrated by showing that one company owned the other. 711 F.2d at 1332. Indeed, the entire process of demonstrating that single employer status exists has been described as a showing that the entities are "highly integrated with respect to ownership and operations." *Id.*; *see also, Swallows*, 128 F.3d at 996 (citing *Armbruster*). The evidence in this case clearly demonstrates that Smart Papers and Sun Capital are highly integrated with respect to ownership.

Sun Capital and Smart Papers are owned by the same people. Krouse and Leder who own all of Sun Capital also own roughly sixty percent of Sun Premium Papers Partners. (Couch Dep. at 111-12.)[6] Sun Premium Papers Partners is nothing more than a shell created by Sun Capital's General Counsel Deryl Couch to act as the owner of Smart Papers. (Couch Dep. at 39,

---

[6]According to Couch, a small portion of Krouse and Leder's ownership of Smart Papers may be held in trust for their children. (Couch Dep. at 111.)

138; Couch Aff. ¶ 2.)  Sun Premium has no employees and is the vehicle for how any profits

from Smart Papers are distributed.  (*Id.* at 43-44.)  Couch is also an owner of Smart Papers along

with many other Sun Capital principals.  (*Id.* at 12.)  Kalb, Liff, Calhoun, and Mayank Singh, an

Associate  with Sun Capital, also have ownership interest in Smart Papers.  (*Id.*)

     In *Boyd v. James S. Hayes Living Health Care Agency, Inc.*, a case cited several times by

the *Swallows* court, the court, in applying the fourth factor, found that common ownership was

met when one company had organized the other "for specific purposes of its own."  671 F. Supp.

1155, 1163 (W.D. Tenn. 1987).  That same analysis clearly applies in this case.  Smart Papers

was an entity created by Sun Capital for the specific purpose of making money for Sun Capital

and its investors.

     Viewing this evidence in the light most favorable to Plaintiffs, there is sufficient evidence

to establish common ownership.  That the two companies are owned by the same people is

sufficient to create, at the very least, a factual question.

     Contrary to any suggestion by Sun Capital otherwise, Plaintiffs have sufficient evidence

to establish all four elements of the single employer test.  Further, the articles and information

that Sun Capital publishes on its website are additional evidence that Sun Capital should also be

liable for Plaintiffs' claims of age discrimination.

     The deposition of Deryl Couch is another example of why these two entities are a single

employer.  Couch is a Vice President and General Counsel for Sun Capital and a Vice President

and Assistant Secretary for Smart Papers. (Couch Dep. at 36.)  Plaintiffs requested a 30(b)(6)

deposition of Sun Capital on a number of topics related to the case.  Couch claimed that he and

Sun Capital had no knowledge of these topics regarding the Mill. (Couch Dep. at 25-29.)  For

14

example, when asked whether he had knowledge of the negotiations and terms of the sale, Couch responded: "Sun Capital Partners was not involved in the negotiation of the acquisition by Smart Papers of the Hamilton mill . . ." (Couch Dep. at 15, 25-29). However, he answered many of these questions later in the deposition, after it was converted into a 30(b)(6) deposition of "Smart Papers." It was a ridiculous exercise that further demonstrated that Smart Papers and Sun Capital should be treated as a single employer. Couch had the information played the game that he did not have any knowledge in his capacity for Sun Capital, but he did in his capacity for Smart Papers. This deposition reinforces the inescapable conclusion that the same people are running both companies. However, Sun Capital insists, when it is convenient legally, that the company was not involved in the hiring decision at issue in this case. At the same time, Sun Capital posts articles on its website claiming Sun Capital bought the Mill and emphasizing the company's hands on approach. Sun Capital cannot have it both ways.

Regardless, Plaintiffs clearly have sufficient evidence to demonstrate that Sun Capital is not entitled to summary judgment in its favor because the single employer test is overwhelmingly met.

### C.    Because Sun Capital And Smart Papers Meet The Single Employer Test, Sun Capital Is Liable For Discrimination Against The Plaintiffs.

The basis for Plaintiffs' discrimination claims against Smart Paper and Sun Capital is the same. (*See* Pl. Mem. Opp. Def. SP M.S.J., filed concurrently.) Plaintiffs need not repeat those arguments here. Plaintiffs incorporate by reference the facts and law supporting the denial of Smart Paper's Motion for Summary Judgment, filed separately, as support for denial of summary judgment against Sun Capital. (*Id.*)

### IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that Defendant Sun Capital's Motion for Summary Judgment be denied. Plaintiffs have sufficient evidence to establish all four parts of the single employer test. At a minimum, material factual disputes exist which preclude summary judgment.

Respectfully submitted,


_/s/ Randolph H. Freking_____
Randolph H. Freking (0009158)
Kelly Mulloy Myers (0065698)
George M. Reul, Jr. (0069992)
FREKING & BETZ
Trial Attorneys for Plaintiffs
215 East Ninth Street
Fifth Floor
Cincinnati, OH 45202
(513) 721-1975


## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2003, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

_/s/ Randolph H. Freking_____

16