IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| ELMER CAMPBELL, et al., ) | |
| ) | CIVIL ACTION NO. C-1-01-527 |
| Plaintiffs, ) | |
| ) | JUDGE: BECKWITH |
| v. ) | MAGISTRATE JUDGE: HOGAN |
| ) | |
| INTERNATIONAL PAPER, ) | |
| SUN CAPITAL PARTNERS, INC., ) | |
| SMART PAPERS, LLC, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT SUN CAPITAL PARTNERS' REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Stanley F. Lechner
Margery Sinder Friedman
Laine S. Posel
Of Counsel
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202.739.3000
Facsimile: 202.739.3001

Robert J. Hollingsworth (0024559)
CORS & BASSETT, LLC
537 East Pete Rose Way
Suite 400
Cincinnati, Ohio 45202
Telephone: 513.852.8200
Facsimile: 513.852.8222

Date: November 21, 2003

Counsel For Defendant
Sun Capital Partners, Inc.

# SUMMARY

Plaintiffs' misrepresentations, unsupported allegations, and half-truths are not enough to overcome the simple fact that Sun Capital Partners, Inc. ("Sun Capital Partners"), a private investment firm, had no involvement in any of the employment decisions at issue in this case. Undisputed evidence clearly reveals that Sun Capital Partners played no role in the decisions to hire or not to hire any of the Plaintiffs in this litigation, or whether to place them into certain positions.

Plaintiffs' Opposition fails to identify any material factual evidence that would preclude this Court from granting Sun Capital Partners' Motion for Summary Judgment. Plaintiffs produce no evidence sufficient to establish that Sun Capital Partners and Smart Papers are a single employer. Most significantly, there is no evidence that Sun Capital Partners had control over Smart Papers' labor relations. The undisputed facts establish that Smart Papers' employees made and implemented all of the hiring decisions at issue in this litigation, and that no Sun Capital Partners' employees had *any* involvement in or control over those decisions.

Based on *thousands* of pages of documents and Appendices put into the record by Plaintiffs, International Paper ("IP"), and Smart Papers, it is clear beyond any reasonable doubt that the hiring decisions at issue in this case were made by Mary Rita Weissman of The Weissman Group, a professional human resources consulting firm retained by Smart Papers. Ms. Weissman was hired as the Acting Director of Human Resources of Smart Papers, to hire Smart Papers' initial workforce at the Hamilton Mill in February 2001. Indeed, Plaintiffs themselves admit this critical undisputed fact. (Plaintiffs' Memorandum in Opposition to Smart Papers' Motion for Summary Judgment at 31) (admitting that

*"Weissman, whose hiring decisions Dan Maheu accepted without exception,"* made all of the hiring decisions at issue in this litigation.) (emphasis added). Because the undisputed facts demonstrate that Sun Capital Partners and Smart Papers are not a single employer and that Sun Capital Partners was not a decision maker regarding the hiring decisions at issue in this case, Sun Capital Partners is entitled to summary judgment as a matter of law.

## ARGUMENT

I. **PLAINTIFFS DO NOT SATISFY THE SUMMARY JUDGMENT STANDARD**

To defeat a motion for summary judgment, the Plaintiffs here must show that a "genuine issue of material fact exists." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A fact is considered material if, when applied to the substantive law, it affects the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party." Black v. Columbus Pub. Schools, 124 F.Supp.2d 550, 561 (S.D. Ohio 2000).

Plaintiffs have not offered sufficient evidence such that a reasonable jury could find in its favor. Instead, they make conclusory assertions and misstatements of law and fact without any supporting evidence that is material to the resolution of their claims. Unsupported speculation or reliance on non-material factual disputes is insufficient to defeat a motion for summary judgment. Id.

**II. PLAINTIFFS HAVE FAILED TO REBUT THE RECORD EVIDENCE SHOWING THAT SUN CAPITAL PARTNERS AND SMART PAPERS ARE NOT A SINGLE EMPLOYER**

The law in the Sixth Circuit regarding the existence of a single employer relationship is clear. To find a single employer, courts examine: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations and personnel, and (4) common ownership and financial control.[1/] See Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993-94 (6th Cir. 1997); Armbruster v. Quinn, 711 F.2d 1332, 1337-38 (6th Cir. 1983). The single employer analysis "ultimately focuses upon whether the parent corporation was the final decision-maker with regard to the employment issue underlying the litigation." Takacs v. Hahn Auto. Corp., 1999 WL 33117265 (S.D. Ohio Jan. 4, 1999) (citing Swallows, 128 F.3d at 995). In this case, there is undisputed evidence that the "final decision-maker" was Smart Papers, with no involvement by Sun Capital Partners. This is fatal to Plaintiffs' position.

**A.     Plaintiffs Have Not Established That Sun Capital Partners And Smart Papers Share Common Control Over Labor Relations**

Plaintiffs attempt to downplay the importance of control of labor relations in the single employer equation. (Plaintiffs' Memorandum in Opposition to Sun Capital Partners' Motion for Summary Judgment, hereinafter "Plaintiffs' Opp.," at 8) (stating that "[c]ontrol of labor relations is a *key concern*.") (emphasis added). Plaintiffs cannot escape the reality that control of labor relations is paramount to a finding of a single employer relationship. Swallows, 128 F.3d at 994. Indeed, the Sixth Circuit recognizes

---

1/     Although the Court's Order of March 25, 2003 (DKT #64) gave Plaintiffs an opportunity to seek discovery as to whether there is a "single employer," "joint venture," and/or "agency" relationship between Sun Capital Partners and Smart Papers, Plaintiffs' opposition brief addresses only the "single employer or integrated enterprise doctrine." Because Plaintiffs do not pursue any joint venture or agency theories, we do not address those theories in this reply.

3

1-WA/2086889.1

that common control over labor relations is "*the central concern.*" [2/] (Id.)  Although the Sixth Circuit has suggested that there may be situations where a single employer relationship could be found in the absence of common control of labor relations, the Sixth Circuit has *never* found a single employer relationship without evidence of common control of labor relations.

Plaintiffs' attempt to confuse the Court with immaterial and irrelevant information cannot obscure the fact that the focus on the "control over labor relations" prong is determined by who "made [the] final decision with regard to [the Plaintiffs'] employment."  Swallows, 128 F.3d at 995 (citing Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)) ("the critical question is '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination.'")  In this case, it is undisputed that all the hiring decisions were made by Mary Rita Weissman, Acting Director of Human Resources for Smart Papers, "whose hiring decisions Dan Maheu accepted without exception."  (Plaintiffs' Opp. to Smart Papers at 31.)  (See also Maheu Dep. at 40, 86)[3/] ("I took the recommendations of The Weissman Group."  . . . I hired everybody that was presented in the pool of those qualified for hiring.")  Neither Maheu nor Weissman are Sun Capital Partners employees, and Sun Capital Partners did

---

[2/]    Indeed, all the circuits that apply the integrated-enterprise test to determine whether a parent and subsidiary are a single employer, have held that control of labor relations is the most important factor.  See, e.g., Romano v. U-Haul Int'l, 233 F.3d 655, 666 (1st Cir. 2000) citing Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235 (2d Cir. 1995); Hukill v. Auto Care, Inc., 192 F.3d 437 (4th Cir. 1999); Lusk v. Foxmeyer Health Corp., 129 F.3d 773 (5th Cir. 1997); Lockard v. Pizza Hut, Inc., 162 F.3d 1062 (10th Cir. 1998); Llampallas v. Mini-Circuits, Lab, Inc., 63 F.3d 1236 (11th Cir. 1998).

[3/]    Plaintiffs have filed every deposition conducted in this case with the Court.  In an effort to limit the amount of material filed in support of this reply, Sun Capital Partners has not attached the specific deposition pages cited herein.

not have any involvement in the hiring decisions for Smart Papers.  (See Couch Decl. ¶¶ 7-11.)  Because Sun Capital Partners did not participate in, nor have any control over the hiring decisions, Plaintiffs cannot show that Sun Capital Partners had common control over labor relations.  See e.g., Swallows, 128 F.3d at 995; Trevino, 701 F.2d at 404.

Significantly, in their opposition to IP's motion for summary judgment, Plaintiffs provide a 2-Volume Appendix setting forth their allegations and arguments as to the reason each of the Plaintiffs (other than the Plaintiffs who failed their pre-employment drug test) was denied employment *by Smart Papers*.  In each case, Plaintiffs summarize the negative employment references provided by IP *to Smart Papers* and the fact that *Smart Papers* relied on those statements in rejecting the Plaintiffs' application for employment.  (See, e.g., Appendix Volume I, at 2) (noting that "Defendant SP relied on these statements in rejecting Abner's application for employment" and that "Mary Rita Weissman, consultant to Defendant SP, admitted that these factors caused her not to recommend Abner for hiring.")  Similar admissions are made regarding each of the Plaintiffs discussed in the Appendices.

Of critical importance to Sun Capital Partners' motion for summary judgment is the undisputed fact that, even accepting the allegations in Plaintiffs' Appendices as true, there is not one scintilla of evidence that Sun Capital Partners had any involvement in any of the hiring decisions at issue in this case.  To the contrary, it is undisputed and admitted by Plaintiffs in the Appendices that all of the hiring decisions were made by Mary Rita Weissman of Smart Papers, relying primarily on the employment references provided by the supervisors and managers at IP.

Notwithstanding the above undisputed facts and admissions by the Plaintiffs in their Appendices submitted to the Court, Plaintiffs' opposition to Sun Capital Partners' motion for summary judgment contains several blatant misrepresentations that will be addressed in turn.

First, Plaintiffs assert, unsupported by any legal authority, that because the letter advising Plaintiffs that they would not be hired went out under Bud Terry's name, that this "fact alone is sufficient to establish a triable issue in regard to whether Sun Capital had control over labor relations." (Plaintiffs' Opp. at 12.) Plaintiffs' assertion misses the mark. It is undisputed that Bud Terry was acting as temporary CEO for Smart Papers at the time of the start-up of the mill, and although the letters went out under his name in this capacity, Mr. Terry had "no role in preparing the letters and was not involved in any way with the decisions to hire or not hire any of the employees for Smart Papers." (Couch Decl. at 15.) [4] (See also Plaintiffs' Opp. to Smart Papers at 31) (admitting that it was Weissman "whose hiring decisions Dan Maheu accepted without exception" who made all of the hiring decisions.) The fact that the rejection letters went out under Mr. Terry's name on behalf of "Smart Papers, LLC" clearly is not enough to create a

---

[4] Plaintiffs also argue that the fact that Terry was acting CEO when ads were run in the newspaper for open positions at the Mill is evidence of common control of labor relations. (Plaintiffs' Opp. at 12.) This argument is unavailing as it is undisputed that Terry was acting as temporary CEO of Smart Papers at the start-up until a permanent replacement was hired a few weeks later, and Plaintiffs produced no evidence that Terry was involved, in any way, in the decision to place ads in the newspapers. Plaintiffs have produced no sworn testimony or other evidence to refute the Declaration of Mr. Couch who stated that Mr. Terry "was not involved in any way with the decisions to hire or not hire any of the employees of Smart Papers," and after the sale of the mill to Smart Papers "Mr. Terry played no role in the day-to-day operations or management of Smart Papers, including but not limited to labor and employee relations.") (Couch Decl. ¶ 15.)

triable issue of fact.[5/] Cf. Lusk, 129 F.3d at 779 (no control over labor relations where subsidiary's termination letters sent on parent's letterhead).

Second, Plaintiffs argue that Sun Capital Partners had control over Smart Papers' labor relations because "Sun Capital's Liff hired Maheu, the COO and plant manager, and HR Director Weissman." (Plaintiffs' Opp. at 12.) This allegation establishes nothing. It is undisputed that Liff is a Vice President of Sun Capital Partners and is a Vice President of Smart Papers. Moreover, it is undisputed that Liff was acting in his capacity as Vice President of Smart Papers when he hired Maheu and Weissman, and that Maheu and Weissman (not Liff) were solely responsible for the hiring decisions at issue in this case. (Couch Decl. at ¶¶ 13-14.) The fact that Liff, acting as Vice President of Smart Papers, hired Maheu and Weissman is insufficient to establish a single employer relationship between Sun Capital Partners and Smart Papers. See e.g., Lusk, 129 F.3d at 779-80 (no single employer relationship where officers of parent and subsidiary "can and do 'change hats' to represent the two corporations separately."). Moreover, Smart Papers was a new company with no employees. Liff, as Vice President of Smart Papers, hired the first two Smart Papers' employees—Weissman and Maheu—and then did not have "any role in the decisions to hire or not hire any of the employees of Smart Papers, including the Plaintiffs in this litigation." (Couch Decl. ¶ 13.) Liff's limited role in the start-up of Smart Papers is not sufficient to establish a single employer relationship. See

---

[5/]   Plaintiffs' attempt to cast doubt on the fact that Weissman was solely responsible for developing the hiring process for Smart Papers is unfounded. (Plaintiffs' Opp. at 3, n.1.) Although Weissman did not sign her formal employment agreement with Smart Papers until January 11, 2001, she was retained by Smart Papers as a consultant in mid-December 2000 and completed all of the hiring process documents by January 5, 2001. (See Second Declaration of Weissman, attached as Exhibit 1.) Accordingly, Plaintiffs' claim that Weissman could not have been involved in the January 8, 2001 letter sent out to all employees under Bud Terry's name is not based in fact.

e.g., Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357, 367 (E.D. Penn. 1998) (evidence of some interrelation of operations at start up of a new company is insufficient for a finding of a single employer relationship.)[6/]

Plaintiffs incorrectly cite Swallows to support their position, but once again disregard the fact that the court in Swallows found that the parent company controlled labor relations of their subsidiary where the parent hired the subsidiary president and plant manager and *approved plaintiff's hiring and was involved in her termination*. 128 F.3d at 995 (emphasis added). It is undisputed that neither Liff nor any person from Sun Capital Partners approved the employment decisions at issue in this litigation, or had "any role in the day-to-day operations or management of Smart Papers, including but not limited to labor and employee relations." (Couch Decl. ¶ 13.)

Third, Plaintiffs mischaracterize Mary Rita Weissman's deposition when they state that "Liff was instrumental in developing the hiring process that directly affected the Plaintiffs." (Plaintiffs' Opp. at 12.) In her deposition, Weissman stated that "she can't speak for how actively involved [Liff and Maheu] were. I can tell you I submitted [the applicant profile] to them, they made some modifications, and approved it as an accurate depiction of what they were looking for." (Weissman Dep. at 37-38.) In fact, Weissman testified that she had never seen or met Liff in person. (Id. at 16.) Moreover, as noted above, there is voluminous undisputed evidence showing that Weissman effectively made

---

6/    Plaintiffs assert, unsupported by any record evidence, that "there is no doubt that Sun Capital principals were also responsible for selecting Smart Paper's [sic] current CEO Tim Needham." (Plaintiffs' Opp. at 12.) Ironically, Plaintiffs cite Deryl Couch's affidavit at paragraph 15, which specifically states "on or about February 26, 2001 Smart Papers hired Timothy Needham as its CEO . . . ." (emphasis added).

all of the hiring decisions at issue in this case, and that Liff and Sun Capital Partners were not players in that process.

In summary, Plaintiffs do not dispute, because they cannot, that Smart Papers determined how many employees to hire, who should be offered jobs, what functions they would perform, and what their terms and conditions of employment would be. Sun Capital Partners had no role in the day-to-day labor relations or employment policies of Smart Papers and did not exercise any role in making decisions whether to hire or where to place any of the Plaintiffs. Because common control of labor relations is "the central concern" for finding a single employer relationship, summary judgment is proper

> **B.    Plaintiffs Fail To Demonstrate That Sun Capital Partners And Smart Papers Have Interrelated Operations**

Plaintiffs claim that the "same interrelation of operations [that indicated a single employer relationship in Armbruster] is present" in this case. (Plaintiffs' Opp. at 8.) Plaintiffs misstate the law and the facts. In Armbruster, interrelation of operations was found where, among other things, the parent "handled [the subsidiary's] accounts receivable, provided [the subsidiary] with administrative back up, handled [the] payroll and cash accounting, and monitored all sales shipments." 711 F.2d at 1138. In addition, the subsidiary's employees used the parent's credit cards and aircraft. Id. In contrast, it is undisputed here that Sun Capital Partners does not handle Smart Papers' accounts receivable, payroll, or bank account. According to the unrebutted Declaration of Mr. Couch, "there are no common offices, no common record keeping, no shared bank accounts, no common payroll and accounting, no common equipment, and no interchange of equipment between Sun Capital Partners and Smart Papers." (Couch Decl. ¶ 8.)

Plaintiffs attempt to mislead the Court by stating that Liff was responsible for arranging Smart Papers' banking and insurance contacts and that this is evidence of interrelation of operations. (Plaintiffs' Opp. at 9.) The record evidence is clear that Liff, acting in his role as Vice President of Smart Papers, merely provided banking and insurance *contact information* to Smart Papers during the initial start-up of the mill. (See e.g. Maheu Dep. at 107) ("we got that information, names, from Steve Liff.")

The fact that there may have been evidence of some interrelation in the administration of two companies at the start up of a new company is insufficient for a finding of a single employer relationship. See e.g. Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357, 367 (E.D. Penn. 1998) ("At most what has been shown is that a majority stockholder and sole investor took an active interest in getting its investment off the ground.")

Moreover, Plaintiffs do not cite any legal authority for their assertion that "Sun Capital's claim that Smart Papers has separate bank accounts, record keeping, and offices is not enough to demonstrate as a matter of law that the two *do not* have an interrelation of operations."[7] (Plaintiffs' Opp. at 9.) In fact, the Sixth Circuit has specifically found that two corporations lacked interrelated operations where they had separate bank accounts, record keeping, and offices. Swallows, 128 F.3d at 994. Moreover, in a desperate attempt to rebut Sun Capital Partners' argument that it and Smart Papers "have completely different missions and purposes," Plaintiffs argue that the two entities have

---

[7] Plaintiffs attempt to mislead this Court by arguing that Sun Capital Partners and Smart Papers share some offices because Smart Papers held some of its quarterly Board meetings at Sun Capital Partners' offices. (Plaintiffs' Opp. at 9.) The very evidence that Plaintiffs cite for this proposition also states that Smart Papers' Board meetings also are held at the Mill in Hamilton, Ohio, and at the Hilton in Chicago, Illinois. (Maheu Dep. at 31-32); Couch Decl. ¶ 11.)

the exact same charge—"to make money." (Plaintiffs' Opp. at 9.) Plaintiffs' argument is absurd. Under Plaintiffs' theory, all for-profit companies in the United States together would constitute one single employer since every company's charge is "to make money."

Plaintiffs also incorrectly assert that the fact that Messers. Leder, Krouse, and Terry receive monthly financial reports for Smart Papers leads to a finding of interrelation of operations. (Plaintiffs' Opp. at 9.) The undisputed evidence establishes that these individuals are on the Board of Smart Papers and receive financial and operational reports from Smart Papers in this capacity. (Couch Decl. at ¶ 11.) As members of the Board of Smart Papers, it is understandable why these individuals take an "active interest in the operation and activities of [Smart Papers]." Martin, 17 F. Supp. 2d at 367. This is insufficient to establish interrelation of operations or a single employer relationship. Id.

### C. Plaintiffs Fail To Establish That Sun Capital Partners And Smart Papers Have Common Day-To-Day Management

Plaintiffs do not rebut the fact that Smart Papers has, and has always had, independent managers responsible for determining, among other things, what products to produce, what level of production is appropriate, what equipment to purchase, how much and what type of inventory to maintain, which functions to perform in-house and which to subcontract, staffing levels, whether new hires, terminations, disciplines or layoffs are necessary, and all day-to-day operations, business, and employment decisions. (Couch Decl. ¶ 10); See e.g., Johnson v. Flowers Industries, Inc., 814 F.2d 978 (4th Cir. 1987) (no single employer relationship where one company's own management is responsible

for the daily decisions of the company "in such vital areas as production, distribution, marketing, and advertising.").

Although four officers of Sun Capital Partners are on the Board of Managers of Smart Papers, they do not control or participate in the day-to-day labor and employment decisions. Rather, they perform traditional functions of a board of directors. The exercise of traditional "oversight" does not establish a single employer relationship. See e.g., Johnson, 814 F.2d at 982. Indeed, interrelated boards do not suffice to demonstrate that the two corporations are single employers. See e.g., Martin, 17 F. Supp. 2d at 367; see also, Beckwith v. Int'l Mill Services, Inc., 617 F.Supp. 187, 189-90 (E.D. Penn. 1985) (fact that executive vice president of parent company is also chairman of the board of the other company is not enough to show integrated enterprises, even where there were regularly scheduled meetings between the two companies to review business results, plans and objectives, where there was no evidence that the second company was merely "a puppet organization whose every movement is controlled by the puppet master," and where the parent had no involvement in the termination in question)[8/]; Angel Perez-Huerta v. Piedmont Health Care Corp., 1981 WL 292 at * 6 (S.D.S.C. Aug. 13, 1981) (unpublished opinion attached to Sun Capital Partner's Motion For Summary Judgment as SCP Exh. 2) (no common management where CEO of defendant company had total responsibilities and control over operations except for the normal approval required by

---

8/     The court in Beckwith noted that the subsidiary company was "but one of over one hundred (100) subsidiaries that are owned by the parent corporation" and that the subsidiary company employed many more personnel than did the parent corporation. 617 F.Supp. at 189. Similarly, Sun Premium Paper Partners, L.P., which owns 100% of Smart Papers, is but one of over 225 affiliated companies of Sun Capital Partners. (Couch Decl. at ¶ 5.) Frankly, it would be impossible for Sun Capital Partners, with merely 35 employees, to manage the daily operations of Smart Papers (which has over 500 employees) plus 225 other affiliated companies.

the board of directors); Lusk, 129 F.3d at 779-80 (no common management where President, co-CEO's, and co-Chairmen were the same in both parent and subsidiary because officers "can and do 'change hats' to represent the two corporations separately" and were not involved in daily labor relations.)

Even if Sun Capital Partners and Smart Papers were in a parent-subsidy relationship, which they are not,[9/] and even if Plaintiffs were to establish common management, it is insufficient to establish single employer status because common management and ownership are ordinary aspects of a parent-subsidiary relationship. See e.g., Lusk, 129 F.3d at 778. A parent's controlling interest in the subsidiary entitles it to select the board of directors and set broad policy without losing limited liability protection. See also Takacs v. Hahn Automotive Corp., 1999 WL 33117265, *5 (S.D. Oh. 1999) (citing Wood v. Southern Bell Teleph. & Telegraph. Co., 725 F.Supp. 1244, 1249 (N.D. Ga. 1989)) ("[o]wnership of a controlling interest in a given corporation enables the owner to exercise control of the normal incidents of stock ownership, such as the right to choose directions and set general policies, without forfeiting the protection of limited liability.").

The real question in a single employer analysis is whether the parent corporation controlled the employment decisions at issue. See, e.g., Swallows, 128 F.3d at 995; Takacs, 1999 WL 33117265 at *4 ("'integrated enterprise' analysis ultimately focuses on whether the parent corporation was the final decision-maker with regard to the employment issue underlying the litigation"). See also Herman v. Blockbuster, 18

---

9/    Smart Papers is owned 100 percent by Sun Premium Paper Partners, L.P., which is a passive investment partnership consisting of over 30 partners (both individuals and entities) including the two individuals who own Sun Capital Partners. (Couch Decl. ¶ 6.)

F.Supp.2d 304 (S.D.N.Y. 1998) aff'd 182 F.3d 899 (2d Cir. 1999) (unpublished) (no common management where CEO and CFO were same for parent and subsidiary because officers did not participate in employment decisions); Lockard v. Pizza Hut, Inc., 162 F.3d 1062 (10th Cir. 1998) (no common management where individual was vice-president of parent and subsidiary because no evidence that parent controlled subsidiary's day-to-day employment decisions). In this case, there is undisputed evidence that Sun Capital Partners did not control or play a role in Smart Papers' employment decisions regarding each of the Plaintiffs.

### D. Plaintiffs Fail To Demonstrate That Sun Capital Partners And Smart Papers Have Common Ownership

In an attempt to sidestep the fourth prong of the single employer test, which Plaintiffs know that they cannot overcome, Plaintiffs assert that "[i]n A*rmbruster,* the court held that the fourth factor of the integrated enterprise test could be demonstrated by showing that one company owned the other." (Plaintiffs' Opp. at 13.) Plaintiffs disregard the clear directive from this Circuit that "if neither of the entities is a sham then the fourth test is not met." Swallows, 128 F.3d at 995 (citing EEOC v. Wooster Brush Co. Employees Relief Ass'n, 727 F.2d 566 (6th Cir. 1984)) (the fourth prong is an "inquiry into the legitimacy of the entities. If neither of these entities is a sham then the fourth test is not met.").

It is undisputed that Sun Capital Partners and Smart Papers are separate companies, with separate employees, products, missions, offices and purposes. (Couch Decl. ¶¶ 7-8.) Sun Capital Partners is a private investment firm headquartered in Boca Raton, Florida with 35 employees, and Smart Papers is an independent affiliate that

operates a paper mill in Hamilton, Ohio with over 500 employees. (Couch Decl. ¶ 8.) It also is undisputed that Sun Capital Partners and Smart Papers each is its own separate legal identity and are separate entities for tax purposes. Accordingly, neither entity is a "sham." (Couch Decl. ¶ 8.)[10] This separate legal identity is the important element under the single employer analysis. See Wooster, 727 F.2d at 573 and n.2 (neither company is a sham where each entity is a separate entity for tax purposes); Bielawski, 870 F.Supp. at 775 (no common ownership where each entity retained separate legal identity and could therefore not be considered a sham).

Moreover, even assuming that common ownership existed in this case, which it does not, it is insufficient to defeat summary judgment because common ownership alone cannot show anything but a normal parent-subsidiary relationship. See e.g., Lusk 129 F.3d at 778. Indeed, "common ownership" is the least important of the four prongs, if not entirely meaningless when examining parent / subsidiary relationships. Papa v. Katy, 166 F.3d 937 (7th Cir. 1999) (common ownership prong "is useless"). This is because in every case of the creation or acquisition of a subsidiary by a parent, there will be

---

[10] Plaintiffs assert that the deposition of Deryl Couch is "another example of why these two entities are a single employer". (Plaintiffs' Opp. at 14-15.) Again, Plaintiffs are wrong and misrepresent the facts. Plaintiffs noted a 30(b)(6) deposition of Sun Capital Partners and Mr. Couch appeared as the witness. Mr. Couch is the Senior Vice President and General Counsel of Sun Capital Partners, and the Vice President and Assistant Secretary of Smart Papers. (Couch Dep. at 10, 36.) Because Smart Papers, and not Sun Capital Partners, purchased the Hamilton mill from IP, negotiated the asset purchase agreement, and conducted the hiring process, Sun Capital Partners did not have information responsive to the 30(b)(6) notice.

Because Mr. Couch had general knowledge of Smart Papers' purchase of the mill, based on his role as Vice President and Assistant Secretary of Smart Papers, all parties consented to designating Mr. Couch as a 30(b)(6) witness on behalf of Smart Papers. Mr Couch then testified that he had "limited knowledge, on behalf of Smart Papers, with respect to . . .the hiring of former IP employees to work at the Hamilton mill" and had "no knowledge with respect to hiring of additional hourly employees to work at the Hamilton mill after February 9, 2001." (Couch Dep. at 37.) This proves nothing for Plaintiffs. In fact, Mr. Couch testified that Sun Capital Partners had "no involvement in" the hiring process at the Hamilton mill. (Id. at 16.)

common ownership. <u>Lockard v. Pizza Hut, Inc.</u>, 162 F.3d 1062 (10th Cir. 1998) (status as wholly-owned subsidiary, standing alone, can never be sufficient to establish parent liability); <u>United Telegraph Workers v. NLRB</u>, 571 F.2d 665 (D.C. Cir 1978) ("common ownership is necessarily a feature of any conglomerate organization [and] is not determinative where common control is not shown.").

### III.   PLAINTIFFS' ATTEMPT TO RELY ON THE WEBSITE OF SUN CAPITAL PARTNERS TO ESTABLISH A SINGLE EMPLOYER RELATIONSHIP IS WITHOUT MERIT

In Plaintiffs' Opposition brief, they attempt to rely on excerpts from Sun Capital Partners' website to support their single employer argument. (<u>See</u> Plaintiffs Opp. at 2, 14.) Statements on a corporation's web site about its relationship with other entities cannot justify a legal conclusion about the corporation. Many courts have held that a failure to distinguish between two corporations in marketing materials such as web sites cannot justify a finding that the corporations lack separate legal identities. <u>See</u>, <u>e.g.</u>, <u>Fletcher v. Atex</u>, 68 F.3d 1451 (2d Cir. 1995) (descriptions of corporate relationships in promotional literature that suggest that parent dominated subsidiary do not justify piercing corporate veil); <u>Paredes v. AKI</u>, 81 F. Supp. 2d 162 (D.Mass. 1999) (failure of parent to distinguish itself from subsidiary in marketing materials "insufficient to impute liability to" parent); <u>Howard v. Klynveld</u>, 977 F. Supp. 654 (S.D.N.Y. 1997) (general public statements in marketing documents not enough to justify legal finding of partnership); <u>Carte Blanche v. Diners Club</u>, 758 F. Supp. 908 (S.D.N.Y. 1991) ("while the language of the press release is...suggestive [of an agency relationship], in such a document released to the general public, oversimplification of corporate relationships is often excused by courts"); <u>Reingold v. Deloitte</u>, 599 F. Supp. 1241 (S.D.N.Y. 1984) (statements in brochures and pamphlets that corporations were "single cohesive

worldwide organization" cannot contradict plain meaning of corporations' legal agreements); Japan Pet. Co., v. Ashland, 456 F. Supp. 831 (D.Del. 1978) ("representations [in annual reports] may result from public relations motives or an attempt at simplification" and thus do not justify finding of agency relationship between corporations); American Trading and Prod. Corp. v. Fischbach, 311 F. Supp. 412 (N.D.Il. 1970) ("nor does boastful advertising [in which parent took credit for subsidiary's developments] show in any way that corporate identities were otherwise ignored by participants in the conduct of their enterprises").

Website statements suggesting that a parent and subsidiary are the same company do not justify a legal finding that the two companies are a single entity because of the websites' intended audience and the complexity of today's corporate form. See Meteoro v. Six Flags, 267 F. Supp. 2d 263 (N.D.N.Y. 2003) ("the failure to distinguish between a parent and subsidiary on a web page is [not] sufficient to show that the parent controls the subsidiary's...operational policies"); Aerotel v. Sprint Corp., 100 F. Supp. 2d 189, 193 (S.D.N.Y. 2000) (website statements indicating subsidiaries were 'mere departments' of parent were "meant to be read by the consuming public [and] cannot create a single entity structure given the sophistication and complexity of today's corporate world."). (See also Couch Dep. at 104-109) (stating that many newspaper articles about the acquisition of the mill on Sun Capital Partners' website "erroneously assert or make reference to Sun Capital's acquisition of Hamilton Mill.")

## CONCLUSION

Sun Capital Partners did not control Smart Papers' labor relations and had no involvement in the decision to hire or not to hire Plaintiffs, or where to place them in the

Hamilton B Street Mill. Control of labor relations is "the central concern" for finding a single employer relationship, and the Sixth Circuit has never found a single employer relationship where common control of labor relations was lacking. Because there is undisputed factual evidence showing that Sun Capital Partners was not involved in the employment decisions regarding the individual Plaintiffs in this case, Plaintiffs cannot establish a single employer relationship between Sun Capital Partners and Smart Papers, and Sun Capital Partners' Motion for Summary Judgment should be granted in its entirety.

Respectfully Submitted,

s/ Robert J. Hollingsworth by Stanley F.
Lechner per telephone authorization

Robert J. Hollingsworth (0024559)
Trial Attorney
CORS & BASSETT, LLC
537 East Pete Rose Way
Suite 400
Cincinnati, Ohio 45202
Telephone: 513.852.8200
Facsimile: 513.852.8222

Stanley F. Lechner
Margery Sinder Friedman
Laine S. Posel
Of Counsel
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202.739.3000
Facsimile: 202.739.3001

Counsel for Defendant Sun Capital Partners, Inc.        Dated: November 21, 2003

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Defendant Sun Capital Partners' Reply Brief to Plaintiffs' Consolidated Memorandum In Opposition To Sun Capital's Motion For Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randolph H. Freking, Esq.
George M. Reul, Jr., Esq.
Freking & Betz
215 East 9th Street, 5th Floor
Cincinnati, OH  45202

Michael A. Roberts, Esq.
Graydon Head & Ritchey LLP
1900 53rd Center
511 Walnut Street
Cincinnati, OH  45202

and I hereby certify that I have sent this document by First Class Mail, postage prepaid, on this 21st day of November, 2003, to the following non CM/ECF participants:

W. Carter Younger, Esq.
Vincent Miraglia, Esq.
McGuire Woods LLP
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036

                                                             s/_____Laine S. Posel_____
                                                                Laine S. Posel