IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ELMER CAMPBELL, et al., ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION NO. C-1-01-527 |
| ) | |
| v. ) | JUDGE: BECKWITH |
| ) | MAGISTRATE JUDGE: HOGAN |
| INTERNATIONAL PAPER, ) | |
| SUN CAPITAL PARTNERS, INC., ) | |
| SMART PAPERS, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### DECLARATION OF DORIS J. HAMPTON

I, Doris J. Hampton, declare as follows:

1. My name is Doris Hampton, and I am currently employed as the Employment Coordinator of Smart Papers LLC ("Smart Papers" or the "Company.") Prior to assuming this position, I was the Employee Information Systems Specialist for Smart Papers. I have been employed by Smart Papers since the Company acquired the Hamilton, Ohio B Street Mill in February 2001. As part of my duties as Smart Papers' Employment Coordinator, I am responsible for hiring hourly and salaried employees for the Mill.

2. I was deposed in this case on August 28, 2003, and generally described the process by which Smart Papers identified potential candidates for employment at the Mill after Smart Papers acquired the Mill in February 2001. Specifically, during 2001, Tina Laslo, Smart Papers' HR Generalist at the time, initially screened resumes of all applicants who applied for a position with the Company. If an applicant survived this initial screening process, I or another member of the HR Department then would conduct

a telephone interview of the applicant to ensure they possessed certain minimum qualifications required by Smart Papers.

3. The candidates who successfully met Smart Papers' qualifications during the telephone interview then were invited to participate in an on-site interview conducted by an interview team. During 2001, these teams were composed of between three and four people, and included hourly employees, HR personnel, and members of management. Following each such interview, the interview team would make a recommendation as to whether Smart Papers should offer employment to the applicant. Neither Mary Rita Weissman nor the Weissman Group played any role in this process.

4. Although I was asked during my deposition about Smart Papers' hiring process, and testified about how candidates were screened, interviewed by phone, interviewed in person, and ultimately evaluated by the interview team as to whether the applicant should be given an offer of employment by the Company, I was never asked how many applicants applied for positions with the Company after Smart Papers acquired the Mill in February 2001.

5. Smart Papers retained files on all applicants who ultimately were offered and accepted employment at the Mill, and provided all relevant files regarding these hires to Plaintiffs during the discovery process. It is my best estimate that Smart Papers, during 2001 and early 2002, invited approximately 800 candidates to the Mill to be interviewed personally by one of Smart Papers' interview teams. Of these candidates, Smart Papers hired approximately 195 individuals. Smart Papers has no record of applicants who may have submitted résumés or filled out applications for employment with the Company, or how many such applicants Smart Papers subsequently interviewed

by telephone or in person. Smart Papers did not keep records of such applicants who were not hired.

      I have reviewed the foregoing and declare under penalty of perjury that it is true and correct to the best of my knowledge, information, and belief.

_Doris J. Hampton_ (signature)        _Nov. 20, 2003_
Doris J. Hampton        Date