UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ELMER CAMPBELL, et al.,  :  | Case No. C-1-01-527 |
| : | J. Beckwith; Mag J. Hogan |
| Plaintiffs,       : | |
| : | |
| v.            : | **PLAINTIFFS' SUR-REPLY** |
| : | **MEMORANDUM IN OPPOSITION** |
| INTERNATIONAL PAPER,    : | **TO DEFENDANTS SMART PAPERS'** |
| SUN CAPITAL PARTNERS, INC.  : | **AND INTERNATIONAL PAPER'S** |
| SMART PAPERS      : | **MOTIONS FOR SUMMARY** |
| : | **JUDGMENT** |
| Defendants.     : | |
| : | **ORAL ARGUMENT REQUESTED** |

**I.    INTRODUCTION**

On September 30, 2003, all three Defendants, Smart Papers, International Paper, and Sun Capital Partners, Inc., filed summary judgment motions on all claims Plaintiffs had brought against them regarding how IP employees were selected for employment at SP after SP acquired IP. Plaintiffs opposed these motions regarding only the age discrimination claims against Defendants SP and Sun Capital, and Plaintiffs' WARN Act and defamation claims against Defendant IP. In its reply brief, Defendant SP raised the argument that 42 of the Plaintiffs, by claiming that Defendant IP defamed them by giving false references to SP, have admitted that SP relied on those references, and this Court invited Plaintiffs to file a sur-reply memorandum addressing this new argument.

The Court's request for a Sur-Reply recognizes the difficulties presented by this complex case involving highly individualized claims of defamation by 42 Plaintiffs, combined with less individualized claims of age discrimination by all 66[1] remaining Plaintiffs, all arising out of

---

[1] SP's argument that Plaintiffs have admitted it relied on the unfavorable references applies only to the 42 Plaintiffs who have alleged that IP defamed them with these false

hiring decisions as a result of a single plant closing by IP and sale to SP. This complex case does not involve a simple "Plaintiffs win" or "Defendants win" situation. In fact, several different trial scenarios are possible involving the 42 Plaintiffs with defamation claims:

(1) A jury could decide that some or all 42 Plaintiffs proved that IP made false and malicious publications, but all 42 failed to prove that SP's alleged reliance on the references is pretextual. Under this scenario, IP would lose the defamation claim, but SP would win the age discrimination claim. IP would be responsible for any damages.

(2) A jury could decide that some or all 42 Plaintiffs failed to prove that IP made false or malicious publications, but that Plaintiffs proved that SP's alleged reliance on the references is pretextual. Under this scenario, IP would win some or all of the defamation claims, but SP would lose the age discrimination claims of these 42 Plaintiffs. SP would be responsible for any damages.

(3) A jury could decide that some or all 42 Plaintiffs proved both that the publications were false and malicious, *and* that SP's alleged reliance on the references was pretextual. Under this scenario, both IP and SP are liable, essentially as joint tortfeasors.

(4) Finally, a jury could decide that all 42 Plaintiffs failed to prove that IP made false or malicious statements and that all 42 Plaintiffs failed to prove that SP's articulated reasons are pretextual. Obviously, under this scenario, Plaintiffs lose on both the defamation claims against IP and the age discrimination claims

---

references. These are the only Plaintiffs SP has alleged that it failed to hire because of the negative references from IP. The remaining Plaintiffs alleging age discrimination against SP are not in this group, because SP has alleged that it failed to hire them because of positive drug tests (18) or that it did not fail to hire them at all (6).

against SP.

## II. PLAINTIFFS HAVE NOT ADMITTED THEY CANNOT PROVE PRETEXT REGARDING THEIR AGE DISCRIMINATION CLAIMS AGAINST DEFENDANT SP.

### A. Regardless Of Whether The References Were True Or False, And Regardless Of SP's Articulated Reliance On The References, Plaintiffs Have Presented Substantial Evidence That Any Reliance On The Reference Checks Was Insufficient To Motivate SP's Decisions Not To Hire Plaintiffs.

Plaintiffs have never attempted to argue that Defendant SP failed to articulate a reason for failing to hire them, nor have they ever argued that the IP references did not happen or never existed. Therefore, Plaintiffs' arguments opposing Defendant IP's motion, acknowledging that SP did receive references (however true or false) from IP is not inconsistent with its arguments in opposition to Defendant SP's motion, nor are they any sort of admission that Plaintiffs cannot prove pretext regarding their age discrimination claims against SP.

To establish that Defendant SP's explanation for the termination is unworthy of belief, Plaintiff may show that (1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate the decision not to hire Plaintiffs, *or* (3) the proffered reasons were insufficient to motivate the decision not to hire Plaintiffs. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of proof requires that Plaintiffs show that SP's reasons never happened or are factually false. *Id.* The second type of proof consists of a demonstration that an illegal motivation was more likely than the reason SP offered. *Id.* The third type of proof consists of evidence that other younger employees otherwise similarly situated to Plaintiffs were hired instead of Plaintiffs. *Id.*

Defendant SP now argues in its Reply Memorandum that Plaintiffs, in their Memorandum opposing Defendant IP's Motion for Summary Judgment on the defamation claims, have admitted that Defendant SP relied on the unfavorable references from IP when it

3

decided not to hire them. While it is true that many Plaintiffs take the position that Defendant IP's false and defamatory statements about them caused harm when Defendant SP refused to hire them, this position is not dispositive of Plaintiffs' age discrimination claims against Defendant SP. Regardless of whether any particular Plaintiff prevails on the defamation claims, Plaintiffs still can prevail on their age discriminations claims under the possible scenarios identified on page 2. This is so because *Manzer* does not dictate that a defendant automatically prevails just because the plaintiff cannot show that the articulated reason for the adverse action was factually false. In fact, *Manzer* teaches that a plaintiff may establish pretext in one of *three* ways, not just by proving the articulated reason false. In their claims against SP, Plaintiffs never attempted to show that the articulated reason was false, just that SP's alleged reliance on the unfavorable reference checks was insufficient to motivate its decisions and that it treated younger, less qualified applicants differently. Either of these methods of proving pretext is sufficient on its own; Plaintiffs have presented substantial evidence under both methods.

For instance, Plaintiffs have presented substantial evidence that reliance on these negative references alone was insufficient to motivate Defendant SP's decision not to hire Plaintiffs. Such reliance on a bad employment reference alone, in the face of other, overwhelming evidence that Plaintiffs were good employees who should be preferred over untrained candidates, is insufficient. *See, King v. New Hampshire Dep't of Resources and Econ. Dev.*, 562 F.2d 80, 82-83 (1st Cir. 1977) (defendant's reliance on bad reference check is insufficient to overcome plaintiff's ample evidence she was reliable and responsible employee). Thus, this Court must consider the totality of Plaintiffs' evidence that they were more qualified than the untrained, "off-the-street" applicants, and that Defendant SP was more likely than not motivated by a desire to inject younger employees into the mill workforce.

One reason in particular that Defendant SP's reliance on the negative reference checks is

suspect is because it never conducted similar employment reference checks on the younger, "off-the-street" candidates. (Pl. Mem. Opp. Def. SP M.S.J. at 48.) When an employer waives a particular hiring criteria in favor of a non-protected candidate, a fact finder can (and should) conclude that the employer did not really rely on the criteria when making the hiring decision in question. *Kinsey v. First Regional Securities, Inc.*, 557 F.2d 830, 836 (D.C. Cir. 1977) ("non uniform and unequal application of criteria by an employer constitutes an unfair employment practice"). Obviously, Defendant SP did not consider an employment reference check necessary to its hiring decisions with respect to 198 "off-the-street" candidates, most of whom were substantially younger than Plaintiffs, and who had little or no paper industry experience. (*See*, Pl. Mem. Opp. Def. SP M.S.J. at 48, 50, 54.) Thus, SP considered it extremely important to evaluate the "kind" of employee each Plaintiff had been, demonstrated by its reliance on the reference checks that did not elicit any information about the technical capabilities of the applicants, but did not consider it necessary at all to make the same evaluation of the "off-the-street" hires. (*Id.*) It certainly could have conducted reference checks on these applicants, as SP required that they all have at least three years of prior work experience before being considered further. (Carpenter Dep. at 9.) In fact, this evaluation was so *unimportant* to SP that it hired 98% of the "off-the-street" applicants without any evaluation of their prior work history. (Pl. Mem. Opp. Def. SP M.S.J. at 50, n.22.) Not only does this evidence cast doubt on SP's stated reliance on the reference checks regarding Plaintiffs, making an unlawful motive more likely, but it is also differential treatment favoring the substantially younger class of "off-the-street" applicants. Thus, this evidence alone satisfies both the second and the third tests under *Manzer*, and is sufficient to allow a jury to conclude that Defendant SP lacks credibility and is covering up an unlawful motive, namely age discrimination.

Furthermore, ignoring Plaintiffs' superior qualifications for mill jobs, by virtue of their

average 29 years of experience, lack of substantial discipline, (*id.* at 52,) and leadership and team activities during their employment with IP and Champion, (*id.* at 53,) and relying only on the references that *did not render them unqualified*,[2] while favoring candidates who had absolutely no qualifications for the jobs,[3] also undermines the credibility of SP's stated justification for its decisions. SP also ignored the fact that Plaintiffs required no training, while all the new hires required extensive training. (*Id.* at 55-57.) All of this evidence is probative of whether SP's proffered reason for not hiring Plaintiffs was pretextual, because a jury could reasonably infer that employers usually do not hire substantially less qualified candidates unless some other strong consideration, such as age discrimination, is taken into account. (*See* Pl. Mem. Opp. Def. SP M.S.J. at 45-47, 50-55, and cases cited therein.)

Plaintiffs also presented evidence that the hiring process with respect to Plaintiffs was so flawed that it destroyed the credibility of Defendant SP's legitimate nondiscriminatory reason for its hiring decisions. SP had the opportunity to directly obtain accurate and current information about the applicants who had previously worked for IP from personnel files and attendance records. These records documented any relevant evidence of unsatisfactory work, safety issues, or violations of work rules or policies. (Maheu Dep. at 72-77.) Instead, SP ignored these more reliable sources of information about Plaintiffs, and made its hiring decisions based on less reliable reference checks from supervisors whose knowledge about Plaintiffs was very limited. A jury could conclude that SP's reference-checking process was designed to be unreliable, and

---

[2] SP's intent when negotiating the purchase of IP's assets was to limit its obligation to hire only those IP employees who were qualified and necessary to run the mill. (Couch Dep. at 79.) None of the unfavorable references about Plaintiffs rendered them unqualified, and as evidenced by the hiring of 198 new employees after rejecting them, SP had openings at the mill for *all* the Plaintiffs.

[3] Indeed, many new hires had no high school diplomas or GEDs, while others had significant criminal records. (Pl. Mem. Opp. Def. SP M.S.J. at 55.)

was therefore insufficient to motivate SP's decision not to hire these well-qualified Plaintiffs.

In addition to being unreliable, the reference check process SP employed allowed SP to base its hiring decisions on negative age stereotypes, in violation of the ADEA. "It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). For instance, during the interview and reference checking process, SP gave negative marks to candidates who it perceived to be inflexible or unwilling or unable to learn. (Pl. Mem. Opp. Def. SP M.S.J. at 49-50.) Both are classic stereotypes of older workers. These negative stereotypes influenced SP's hiring decisions with respect to many of the Plaintiffs in this case. (*Id.*) Inclusion of these negative age stereotypes in the reference checks is further evidence that the reference checks did not actually motivate SP's hiring decisions.

Additional evidence that the Plaintiffs' ages, rather than the unfavorable reference checks, actually motivated SP's hiring decision is the fact that SP obtained age data on all of the IP applicants *before* making hiring decisions. (Pl. Mem. Opp. Def. SP M.S.J. at 17, 57.) This is highly suspect, as there is no legitimate need for an equal opportunity employer to solicit this data before making such decisions. Similarly, SP collected age data on the "off-the-street" applicants. (*Id.* at 20, 57.) SP acknowledged that there was no legitimate need for such information. (Johnson Dep. at 58; Lewis Dep. at 97.) This conduct is similarly suspect, and one obvious inference is that SP was zealously attempting to identify older applicants, since it had earlier rejected IP's suggestion to hire all of its (older) workers. (Couch Dep. at 78-79.)

Finally, Plaintiffs have produced circumstantial, numerical evidence that tends to prove that SP's reliance on the unfavorable reference checks did not actually motivate its hiring decisions. (*Id.* at 38-40.) For instance, the average age of the mill hourly workforce on 2/1/01 was 49.1, and the average age of the applicants hired after that date was 38.1. (*Id.* at 39.)

Further, the number of over-50 and over-40 employees declined after these hiring decisions, and the number of under 40 employees increased. (*Id.*) Indeed, when the data concerning the off-the-street hires is examined, a picture of SP's hiring process emerges that suggests a desire to reduce the number of older workers. At a minimum, this data creates a genuine issue of material fact regarding whether Plaintiffs can prove that SP's reliance on the reference checks was a pretext for age discrimination.

### B. Alternatively, Plaintiffs Have Presented Sufficient Circumstantial Evidence to Trigger A "Mixed Motives" Analysis.

Finally, SP's alleged reliance on unfavorable employment references is clearly not the *only* reason SP relied upon, triggering a mixed motives analysis. The Age Discrimination in Employment Act prohibits employers from making adverse employment decisions taken *because of* an employee's age. 29 U.S.C. §623(a). Such an unlawful employment practice is established when the employee demonstrates that his age was a motivating factor for the employment action, even though other, lawful factors may have also motivated the decision. *See, Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571-72 (6th Cir. 2003) (applying mixed motive analysis to ADEA claim). To trigger a "mixed motives" analysis, an employee need only present sufficient direct *or circumstantial* evidence for a reasonable jury to conclude, by a preponderance of the evidence, that his age was a motivating factor in the challenged employment decision. *Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148, 2155, 156 L.Ed.2d 84, 96 (2003) (holding that direct evidence of the unlawful motive in a mixed motives analysis was not required, and that circumstantial evidence is sufficient).

The practical effect of a finding of mixed motives is to create an affirmative defense that will shield an employer from certain types of remedies *if* it can prove by a preponderance of the evidence that it would have taken the same action absent the discriminatory motive. *Price*

*Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *see also* 42 U.S.C. §2000e-5(g)(2)(B). In other words, if mixed motives is established and the employer has established it would have taken the same action in the absence of an unlawful motive, it has still violated the law and will be liable for declaratory and injunctive relief, as well as attorney's fees. *Id.* Further, if the employer cannot prove the affirmative defense, the full array of remedies for an ADEA violation is available to the employee.

However, all these affirmative defense and damages issues are for a jury to resolve. If Plaintiffs can establish at least a genuine issue of material fact as to whether SP was motivated, *at least in part*, by a discriminatory intent, summary judgment is not appropriate. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571-72 (6th Cir. 2003).

Plaintiffs have presented substantial circumstantial evidence that SP was motivated by age in making these hiring decisions. In particular, SP's reliance on stereotypical notions that older workers are inflexible and incapable of learning justify a mixed motives analysis. *See Wexler*, 317 F.3d at 571-572 ("Criticism of an employee's performance, even if true, which is linked to stereotypes associated with a plaintiff's membership in a protected class is therefore squarely within the rubric of a mixed-motive analysis. . . . The association of these stigmatizing beliefs with an adverse employment decision creates a genuine issue of material fact as to whether the employer was motivated, at least in part, by discriminatory intent based on those stereotypes."). SP's failure to evaluate the flexibility and ability to learn of the much younger, "off-the-street" applicants reinforces the conclusion that it was motivated by a desire to weed out as many older workers as possible. SP's refusal of IP's recommendation to hire the entire IP workforce, knowing that it was an older workforce, also bolsters this conclusion. (Couch Dep. at 78-79.)

Defendant SP's more favorable treatment of the younger, "off-the-street" hires, by not

requiring a reference check, is additional evidence of SP's discriminatory motive. The significant decrease in the number of older workers, while the number of younger workers increased, contributes to the inference that SP was motivated by age in making its hiring decisions. So, too, does the evidence that SP preferred, in defiance of all reason, untrained and inexperienced workers (some with no education and/or criminal records) over the Plaintiffs, who had extensive experience in the very jobs, in the very mill, for which SP was hiring.

All this evidence, as well as all the evidence Plaintiffs presented in their Memorandum Opposing Defendant SP's Motion for Summary Judgment, is sufficient circumstantial evidence of SP's discriminatory motive to trigger a mixed motives analysis and to deny SP's Motion. *See Desert Palace, Inc. v. Costa*, 123 S.Ct. 2148, 2155, 156 L.Ed.2d 84, 96 (2003) (stating that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence," while affirming court of appeals decision upholding jury verdict for plaintiff based on circumstantial evidence that she was stalked by one of her supervisors, received harsher discipline than men, received less overtime than men, and that supervisors "stacked" her disciplinary record and used or tolerated sex-based slurs against her); *Wexler*, 317 F.3d at 572 (finding that a jury could conclude that several statements made by the decision-maker indicating a belief that a person's capabilities diminish with age, which were directed at the plaintiff at the time he was being demoted, evinced a discriminatory motive, and reversing trial court's grant of summary judgment to employer). Therefore, Defendant SP's Motion for Summary Judgment on Plaintiffs' age discrimination claims must be denied.

    **C.**    **Defendant Smart Papers' and Defendant International Paper's Arguments Regarding the Reference Checks Are Irreconcilable.**

In its Reply Memorandum, Defendant International Paper argues that there was no publication of the defamatory statements Plaintiffs attribute to IP because 1) the reference check

forms on which the defamatory statements were recorded allegedly constitute inadmissible hearsay; and 2) the IP supervisors who gave the references were acting as agents of Defendant Smart Papers, not IP, at the time the statements were made. (Def. IP Reply Mem. at 25-35, 36-39.) At the same time, Defendant Smart Papers argues repeatedly in its Reply Memorandum that the employment references were provided by IP. (Def. SP Reply Mem. at 3-23.) These arguments are inherently conflicting, and both Defendants cannot be correct.

Essentially, IP argues that the statements recorded in the reference check forms are hearsay, and therefore Plaintiffs cannot prove who actually made the statements. It then goes one step further and argues that its own supervisors were acting as agents of *SP* at the time they made these reference statements, because Defendant IP derived no benefit from the statements. Aside from incorrectly applying the hearsay rule[4] as well as a novel, if not ridiculous, extension of

---

[4]    Fed.R.Evid. 802 prohibits admission of "hearsay," defined in Rule 801(c) as out-of-court statements offered for the truth of the matter asserted. Plaintiffs are clearly not offering the reference check statements for the truth of the matter asserted; Plaintiffs are arguing that these statements were *false*. Moreover, Rule 801(d)(2) lists several types of statements that are not hearsay at all, including statements offered against a party opponent that is either (A) "the party's own statement, in either an individual or representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . ."

Clearly, statements made by Defendant IP supervisors to the agents of Defendant SP during the course of providing employment references which IP agreed to give to SP are admissions by a party-opponent under 801(d)(2)(A), (C) and/or (D), and not hearsay and not excludable. Further, IP has manifested its belief in the truth of these statements under Rule 801(d)(2)(B) by arguing that the statements are not defamatory because they are true. (Def. IP Mem. Supp. M.S.J. at 40-42.) Similarly, Defendant SP has adopted these statements as true under Rule 801(d)(2)(B) by asserting its position that it relied on these IP reference checks when selecting employees to hire from IP. (Def. SP Mem. Supp. M.S.J. at 11, 28-33.) Indeed, SP directly admitted that "Smart Papers legitimately relied on these negative references from IP supervisors and managers who worked at the Hamilton Mill in making its decision not to hire each of these Plaintiffs." (*Id.* at 31.) Therefore, the statements on the reference check

agency law, IP is attempting to shift all responsibility to SP for the negative references by alleging that some or all of the statements are those of SP agents (the interviewers conducting reference check interviews and the IP supervisors giving the references), and there is no clear indication on the forms regarding which statements, if any, are directly attributable to IP. This is sheer nonsense, because there is no dispute that the SP interviewers were simply recording statements they received from the IP supervisors, (Weissman Dep. at 110, 113,) and that they were not providing information based on their own knowledge about the IP employees. Defendant SP, therefore, could not have made any statements about the IP employees.

However, assuming *arguendo* that these statements are attributable to SP's agents and not to IP, Defendant IP's argument, taken to its natural extension, necessarily means that Defendant SP could not have reasonably relied on reference statements it made *to itself,* through its own agents. This is so because SP is claiming that it had a reasonable, good faith belief that these references, *because they came from IP*, were reliable and accurate. SP cannot claim these references were reliable and accurate if the source was its own agents who knew nothing about these IP employees. Therefore, if this Court finds that IP's argument has merit, and that the statements are not attributable to IP, then Defendant SP's reliance on these references was not reasonable, and Plaintiffs therefore have raised a genuine issue of material fact regarding whether Defendant SP's articulated reason for not hiring Plaintiffs is pretext.

Alternatively, if this Court finds that reliance on these negative references is a legitimate, nondiscriminatory reason for Defendant SP's actions, then it must find that Defendant IP necessarily made these statements, eliminating this particular IP argument that the defamation claims must be dismissed.

---

documents, to the extent that they are the out-of-court statements of Defendant SP's agents, are also not hearsay and are admissible.

### III. CONCLUSION

For all the foregoing reasons, Plaintiffs have made no admission that precludes a finding of pretext on their age discrimination claims against Defendant SP. In fact, Plaintiffs have presented at least genuine issues of material fact with respect to all elements of their claims of age discrimination, including pretext, against SP. Therefore, SP's Motion For Summary Judgment must be denied.

Plaintiffs respectfully request oral argument on these motions to discuss and clarify the complex issues presented, if deemed necessary.

Respectfully submitted,

    /s/ Randolph H. Freking
Randolph H. Freking (0009158)
Sheila M. Smith (0065115)
Kelly Mulloy Myers (0065698)
George M. Reul, Jr. (0069992)
FREKING & BETZ
Trial Attorneys for Plaintiffs
215 East Ninth Street
Fifth Floor
Cincinnati, OH 45202
(513) 721-1975

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 22, 2003, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

                           /s/ Randolph H. Freking