NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 01-00527

FILED
JUL 14 2005
LEONARD GREEN, Clerk

No. 04-3797

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

1:01cv527
(Beckwith)

|  |  |  |
|---|---|---|
| ELMER CAMPBELL ET AL., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| INTERNATIONAL PAPER | ) | COURT FOR THE SOUTHERN |
| COMPANY, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant, | ) | |
| | ) | OPINION |
| SUN CAPITAL PARTNERS, INC.; | ) | |
| SMART PAPERS, LLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: RYAN, MOORE, and COOK, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. The plaintiffs-appellants are thirty-eight individuals who had previously worked at the Hamilton B Street Paper Mill ("the Mill") but were terminated when the Mill was sold by International Paper, Inc. ("IP") to Defendant-Appellee Smart Papers, LLC ("Smart Papers"). The plaintiffs sued IP, Smart Papers, and Defendant-Appellee Sun Capital Partners ("Sun Capital")[1] alleging that they were terminated in violation of, inter alia, the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and Ohio age-

---

[1] Sun Capital Partners is an investment firm affiliated with companies that invest in or acquire other entities. One of its affiliates owns Smart Papers. There is therefore no need to refer to the plaintiffs' claims against Sun Capital separately from those against Smart Papers, as Sun Capital's liability is completely derivative of Smart Papers's liability.

discrimination law, Ohio Rev. Code Ann. § 4112.02. The district court granted the defendants' motion for summary judgment on the plaintiffs' age-discrimination claims, and the plaintiffs now appeal that judgment. For the reasons stated below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

IP sold the Mill to Smart Papers on February 9, 2001. Prior to the sale, the Mill had employed approximately 800 employees and was sustaining heavy financial losses. In order to make the Mill profitable, Smart Papers decided that it had to cut the workforce to 600 employees, consisting of 350 to 450 hourly employees and 150 salaried employees. Thus, under the sales agreement, IP agreed that all Mill employees would be terminated as of the date of sale and that the employees could then apply to be rehired by Smart Papers.

During February 2001, Smart Papers began the rehiring process. The process was structured such that former employees were not considered for any specified position at the Mill. Instead, the employees were to be rehired and later assigned to the proper skilled positions. The process included a reference check in which former supervisors and managers were asked to rate each former IP employee in the following categories: willingness and ability to learn, excellence orientation, productivity, dependability, team player, and safety awareness. The managers and supervisors also provided an overall ranking of each former employee consisting of either green (positive recommendation), yellow (neutral recommendation), or red (negative recommendation). Smart Papers declined to rehire any former employees who received red rankings. All of the plaintiffs, with the exception of plaintiff Donnie Adams, received red ratings by their former supervisors or managers. Smart Papers ultimately rehired 410 employees out of a total of 568 IP hourly employees.

After the rehiring process was completed, Smart Papers had approximately eighty vacant positions to fill. Thus, Smart Papers began to look for external candidates to fill the remaining positions. As part of this secondary hiring process, Smart Papers conducted background checks on all qualified external candidates but no reference checks were conducted. Smart Papers ultimately extended employment offers to 195 external candidates. Unlike the rehired IP employees, these new external hires were placed in entry-level Department Relief positions at the Mill.

On August 3, 2001, the plaintiffs filed suit against IP, Smart Papers, and Sun Capital asserting various employment-related claims. Following the completion of discovery, all of the plaintiffs' claims were either dismissed or settled except the plaintiffs' age-discrimination claims against Smart Papers and Sun Capital. Smart Papers and Sun Capital filed a motion for summary judgment on these claims, which the district court granted. The plaintiffs then filed this timely appeal.

## II. ANALYSIS

We review de novo a grant of summary judgment. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir.1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The plaintiffs allege that Smart Papers's decision not to rehire them was based on their age, thus violating the ADEA and Ohio age-discrimination law. Where, as here, a plaintiff attempts to establish an age-discrimination claim using circumstantial rather than direct evidence of discrimination, the three-part test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is employed.[2] *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003), *cert. denied*, 541 U.S. 1010 (2004). Under the *McDonnell Douglas* test, the plaintiff must first carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by the employer. *DiCarlo*, 358 F.3d at 414. If a plaintiff successfully establishes a prima facie case, the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (internal quotation marks and citation omitted). If the employer carries this burden, then the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Id.* While the burden of production shifts throughout this test, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff always remains with the plaintiff. *Id.*

The parties concede that the first two steps of the *McDonnell Douglas* test have been met in this case. Smart Papers does not dispute that the plaintiffs have established a prima facie claim of age discrimination. Similarly, the plaintiffs admit that Smart Papers has provided a legitimate non-discriminatory reason for its decision not to rehire each of the plaintiffs. Smart Papers's decision

---

[2] The same test applies to both the plaintiffs' ADEA and their Ohio age-discrimination claims. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357-58 (6th Cir. 1998). We therefore need not address these claims separately as the elements and burden of proof remain the same.

in each case, with the exception of Donnie Adams, was based on poor ratings by the plaintiffs' former managers and supervisors. Smart Papers contends that Donnie Adams was not rehired because of his poor attendance record. Thus, the only dispute is whether the plaintiffs have established a genuine issue of material fact regarding whether Smart Papers's asserted reasons for declining to rehire the plaintiffs were a pretext for discrimination. We conclude that the plaintiffs have not carried this burden.

The plaintiffs' evidence is insufficient to create a material question of fact as to whether age was a determining factor in Smart Papers's decision not to rehire the plaintiffs. *See Danielson v. City of Lorain*, 938 F.2d 681, 683-85 (6th Cir. 1991). On the contrary, the evidence strongly suggests that age was not a factor in Smart Papers's employment decision. The evidence indicates that Smart Papers's hiring process with reference to former IP employees was statistically age neutral. The average age of hourly employees at the Mill prior to Smart Papers's purchase of the Mill was 49.1 years old. Similarly, the average age of the former IP hourly employees who were rehired by Smart Papers was also approximately 49 years old. Thus, statistically there is nothing to suggest that Smart Papers's hiring process was motivated by age-based considerations.

The plaintiffs argue that an age-discriminatory motive can be inferred from the fact that the average age of the external candidates hired by Smart Papers was 38.1 years old. This evidence carries little probative weight, however, as we do not know the average age of the external applicant pool. Without this contextual information, we cannot know why the age of the external hires was lower than that of the former IP employees. The plaintiffs contend that we should assume that those external candidates not hired by Smart Papers were older, thus providing indirect evidence of discrimination, because the plaintiffs allege that Smart Papers destroyed the job applications which

would have provided this information. *See, e.g., Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.,* 174 F.3d 801, 804 (6th Cir. 1999) (indicating that under Ohio law if destruction of evidence is proven then the evidence is presumed to have been prejudicial to the spoliator). The plaintiffs, however, did not raise this argument before the district court, and thus we decline to address it on appeal. *See Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir. 1993).[3]

Additionally, there is no evidence to support the plaintiffs' conclusory allegations that Smart Papers employed ageist factors in the rating system it used. The criteria employed by Smart Papers in its hiring process were facially neutral. Former IP managers and supervisors were simply asked to rate employees based on characteristics relating to the employees' general proficiency, such as work record, safety awareness, customer orientation, analytical ability, dependability, excellence orientation, teamwork, integrity, flexibility, and overall interest in and fitness for employment. Furthermore, the statistical evidence does not indicate that the rating system had an age-discriminatory impact when applied by Smart Papers. Thus, the evidence does not support the plaintiffs' allegation that the rating system was meant to screen out older employees.

The plaintiffs also claim that the hiring of external candidates without a reference check is evidence that Smart Papers is merely using the plaintiffs' poor reference ratings as a pretext to justify its employment decisions. There is a legitimate non-discriminatory rationale, however, for Smart Papers's change in hiring practice. With respect to former IP employees, Smart Papers had easy access to former managers and supervisors, who could readily and accurately inform Smart Papers

---

[3]The plaintiffs were unaware of the alleged destruction of external candidate applications until the defendants' response to the plaintiffs' motion in opposition to summary judgment. Nonetheless, nothing prevented the plaintiffs from raising their spoliation claim in district court, *see* Fed. R. Civ. P. 56(f), or uncovering this information earlier during discovery. Thus, we decline to address this claim for the first time on appeal.

as to the skills and job performance of former IP employees. This information was weighed heavily in their hiring process as a good indicator of the applicant's likely future performance at the Mill. Such information was not available, however, with respect to external candidates.

The plaintiffs' remaining assertions, namely that Smart Papers's collection of age data during the hiring process and its hiring of allegedly less qualified external candidates are suggestive of pretext, are equally unpersuasive.[4] There is no evidence suggesting that Smart Papers used the age data it obtained in making its hiring decisions or even that those involved in the hiring process had access to this data. It was within Smart Papers's prerogative to conclude that external candidates with less experience were superior to former employees who had received poor reference ratings. *See Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 436 (6th Cir. 2002) (indicating that anti-discrimination laws "do[] not diminish lawful traditional management prerogatives in choosing among qualified candidates") (internal quotation marks and citation omitted). We therefore cannot conclude that the plaintiffs' qualifications were so superior to the external candidates as to create a genuine issue of material fact regarding pretext.

In sum, even reviewing the record in the light most favorable to the plaintiffs, we cannot conclude that the plaintiffs have submitted evidence sufficient to defeat the defendants' motion for summary judgment. The plaintiffs' evidence does not create a genuine issue of material fact regarding whether Smart Papers's reasons for declining to rehire the plaintiffs were pretextual. We

---

[4]In addition to the claims made by the plaintiffs generally, Donnie Adams claims that Smart Papers's reason for dismissing him was pretextual, because all the absences leading to his poor attendance record were justified under the Family Medical Leave Act ("FMLA"). While we agree that it would be improper to fire an employee for exercising his rights under the FMLA, this evidence does not suggest that Smart Papers's decision not to rehire Adams was impermissible as the result of *age-discriminatory* motives. This evidence is therefore insufficient to create a genuine issue of material fact as to pretext regarding age-discrimination claims.

therefore cannot conclude that the district court erred in granting the defendants' motion for summary judgment.

### III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's judgment granting the defendants' motion for summary judgment.